**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>*Plaintiff*,<br><br>v.<br><br>Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi,<br><br>*Defendants*. | Case No.: 3:23-cv-11808<br><br>**Oral Argument Requested** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY ORDER GRANTING PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF**

Anthony J. Staltari (Attorney ID. No. 233022017)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (415) 875-6600
anthonystaltari@quinnemanuel.com

Dakota Speas (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

Michael Shaheen, III (*pro hac vice* pending)
Robert A. Zink (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY ....................................3

III.    ARGUMENT ........................................................................................................7

    A.    Legal Standards....................................................................................7

    B.    Neither the CEA Nor the Fifth Amendment Permits the Temporary Receiver to Seize All of Defendants' Assets Without a Prior Hearing ...................8

    C.    Defendants Should Be Granted the Ability to Review and to Dispute Credit Card Chargebacks in Order to Avoid Millions of Dollars in Losses ..........10

    D.    The CFTC Has Not Shown Why All of Defendants' Assets Need to Remain Frozen ...................................................................................................11

    E.    Contrary to the CEA, The SRO Is Not Limited to Assets Which Are Allegedly Disgorgeable ........................................................................................11

    F.    The SRO Should Make a Reasonable Allowance to Pay Defendants' Staff.........12

    G.    The SRO Should Make a Reasonable Allowance to Pay for the Living Expenses of Mr. Kazmi's Family ..........................................................................13

    H.    The SRO Should Make a Reasonable Allowance for Legal Defense Fees ...........13

IV.    CONCLUSION.................................................................................................14

# **TABLE OF AUTHORITIES**

## **Cases**

*Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*,
   991 F.2d 71 (3d Cir. 1993) ................................................................................ 7, 8, 9, 11

*Commodity Futures Trading Comm'n v. Battoo*,
   790 F.3d 748 (7th Cir. 2015) ........................................................................................ 8

*Commodity Futures Trading Comm'n v. Fin. Tree*,
   No. 2:20-CV-01184-TLN-AC, 2020 WL 5995176 (E.D. Cal. Oct. 9, 2020) ........................ 8, 9

*Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*,
   496 F.3d 769 (7th Cir. 2007) ........................................................................................ 8

*Commodity Futures Trading Comm'n v. Levy*,
   541 F.3d 1102 (11th Cir. 2008) ............................................................................ 11, 12

*Commodity Futures Trading Comm'n v. Next Fin. Servs. Unlimited, Inc.*,
   No. 04-80562-CIV, 2005 WL 6292467 (S.D. Fla. June 7, 2005) ......................... 7, 9

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) .................................................................................................. 8, 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc.*,
   No. 70 of Alameda Cnty., 415 U.S. 423 (1974) .......................................................... 9

*Liberte Cap. Grp., LLC v. Capwill*,
   462 F.3d 543 (6th Cir. 2006) ...................................................................................... 10

*S.E.C. v. Dowdell*,
   175 F. Supp. 2d 850 (W.D. Va. 2001) ....................................................................... 14

*S.E.C. v. ETS Payphones, Inc.*,
   408 F.3d 727 (11th Cir. 2005) ................................................................................... 12

*S.E.C. v. Yun*,
   327 F.3d 1263 (11th Cir. 2003) ................................................................................. 12

*U.S. Commodity Futures Trading Comm'n v. Dinar Corp*,
   No. 1:15-CV-538-WKW, 2016 WL 814893 (M.D. Ala. Feb. 29, 2016) ................. 14

*U.S. Commodity Futures Trading Comm'n v. Escobio*,
   946 F.3d 1242 (11th Cir. 2020) ........................................................................... 11, 12

*U.S. Commodity Futures Trading Comm'n v. Tmte, Inc.*,
   No. 3:20-CV-2910-L, 2022 WL 1321572 (N.D. Tex. May 3, 2022) ................. 8, 11

**Statutory Authorities**

Section 6c(a) of the CEA, 7 U.S.C. § 13a-1(a) .......................................................................... 3, 7

7 U.S.C. § 13a-1(a) ......................................................................................................................... 7

28 U.S.C. 1746 ................................................................................................................................ 2

**Rules and Regulations**

Fed. R. Civ. P. 65 ................................................................................................................... passim

Rule 65 ............................................................................................................................................ 8

**Constitutional Provisions**

U.S. Const. amend. V ..................................................................................................................... 8

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY ORDER GRANTING PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF

I. **INTRODUCTION**

Mr. Murtuza Kazmi is the chairman and chief executive of My Forex Funds,[1] an innovative online talent acquisition company that evaluates individuals to trade proprietary capital. Kazmi Decl. ¶ 2. On August 28, 2023, Plaintiff Commodity Futures Trading Commission (the "CFTC") initiated this lawsuit and moved under seal, without notice to Defendants, for an order freezing **all** of Defendants' assets, including Mr. Kazmi's personal home and bank accounts, and appointing a Temporary Receiver **to seize** them—without Defendants having a prior opportunity to be heard. The next day, the CFTC's motion was granted, without any substantive modification to the order the CFTC proposed. The scope of this *ex parte* statutory restraining order (the "SRO") is shocking: not only does it apply to all of Defendants' assets, without regard to whether any of them are traceable to the wrongdoing the CFTC alleges, it does not allow Mr. Kazmi to pay his family's living expenses, his staff's payroll, or legal expenses to defend against the CFTC's serious allegations. An *ex parte* property freeze and seizure order of this extraordinary scope is not authorized under the Commodities Exchange Act (the "CEA") and violates the most basic tenets of due process guaranteed by the U.S. Constitution. Moreover, the Temporary Receiver appointed under the SRO has failed to preserve the value of the interim receivership estate ("Receivership Estate") by failing to respond to thousands of credit card chargeback requests that have been initiated against Defendants' accounts after the CFTC filed its specious allegations. As a result, the Temporary

---

[1] Defendants Traders Global Group Incorporated (a New Jersey Corporation) and Traders Global Incorporated (a Canadian business organization) do business as "My Forex Funds" ("MFF").

1

Receiver has put millions of dollars of Defendants' assets at risk.  For these reasons, Defendants respectfully request the following emergency modifications to the SRO:

1. The Receiver shall have no authority to seize Defendants' assets;

2. Defendants shall be granted immediate access to all systems and platforms that are necessary to review and to dispute credit card chargeback requests, including FPFX, Metatrader, and systems managed by WooCommerce and Stripe;

3. The SRO shall only apply to Defendants' assets that are traceable to allegedly disgorgeable ill-gotten gains, not all of Defendants' assets, and the CFTC shall be required to make this showing for any of Defendants' assets to remain frozen;

4. Defendants shall be granted a reasonable exemption under the SRO to pay their staff, none of whom are named defendants in this case;

5. Mr. Kazmi shall be granted a reasonable exemption under the SRO to pay his family's living expenses; and

6. Defendants shall be granted a reasonable exemption under the SRO to pay the costs of their legal defense.

Subject to the reasonable exemptions above, Defendants shall continue to refrain from withdrawing, transferring, removing, dissipating or otherwise disposing of any assets, wherever located, pending the Court's decision on Plaintiff's Motion for a Preliminary Injunction (ECF 14).  By moving for these limited, emergency modifications on an interim basis, Defendants reserve all rights to oppose Plaintiff's Motion for a Preliminary Injunction, either in whole or in part.

## II.     **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

On August 28, 2023, without any prior warning or communications with Defendants, Plaintiff filed this action under seal, alleging violations of the CEA and CFTC regulations. The same day, Plaintiff moved for an *ex parte* statutory restraining order under Section 6c(a) of the CEA, 7 U.S.C. § 13a-1(a), and Rule 65 of the Federal Rules of Civil Procedure, seeking a freeze of *all* of Defendants' assets and the appointment of a Temporary Receiver to seize them, before Defendants even knew this action existed. ECF 7. Plaintiff's request was granted the next day, apparently without a hearing, and the 23-page *ex parte* restraint and seizure order Plaintiff proposed was adopted in full. ECF 13. Plaintiff also moved for a preliminary injunction, which is scheduled to be heard on October 11, 2023. ECF 37. The SRO shall remain in effect until October 13, 2023. *Id.*

As written, the SRO applies to *all* of Defendants' assets, whether personal or corporate, regardless of their source, all around the world, without exception. ECF 13 ("SRO") ¶¶ 15, 18, 20.[2] The SRO is not limited to assets that are allegedly disgorgeable or illicitly obtained. The SRO makes no attempt to distinguish between personal income Mr. Kazmi received from MFF and income he received from wholly independent sources, such as income from investments that have nothing to do with MFF. Kazmi Decl. ¶ 5. There are no allowances for housing, groceries, clothing, medical care, school tuition, childcare, utilities, insurance, or other fundamental living

---

[2] The SRO broadly defines "assets" to "encompass[] any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States." SRO ¶ 15. The assets subject to the SRO include "existing assets and assets acquired after the effective date of [the SRO]." *Id.* ¶ 20.

3

expenses. Nor are there any allowances for innocent third parties on Defendants' payroll. It gets even worse. On top of freezing all of Defendants' assets under the sun without prior notice, the SRO permits the Temporary Receiver *to seize* the assets, without due process or a prior hearing, unless the asset is real property or subject to a foreign freeze order. *Id.* ¶¶ 19, 28b, 30b, 30i, 31b, 34a, 34c. At all times, the Temporary Receiver is required "to conserve, hold, manage, and preserve the value of the Receivership Estate," *id.* ¶ 30c, and to "[p]revent the withdrawal or misapplication of assets entrusted to the Receivership Defendants," *id.* ¶ 30d.

Notwithstanding the SRO's staggering breadth, Defendants have diligently followed the SRO and preserved the *status quo*, and they have refrained from withdrawing, transferring, removing, dissipating or otherwise disposing of their assets. *Id.* ¶ 18; Kazmi Decl. ¶ 4. They have similarly refrained from destroying, altering, or disposing of their business and financial records, as the SRO commands. SRO ¶ 19; Kazmi Decl. ¶ 4. Defendants have also provided, at the Temporary Receiver's request, schedules of Defendants' accounts, along with online login credentials, among other information, so that the Temporary Receiver can monitor and account for Defendants' assets. Speas Decl. ¶ 3. Defendants are continuing to respond to the Temporary Receiver's informational requests on a rolling basis. *Id.* ¶ 4.

This all-encompassing asset freeze and seizure order has left Mr. Kazmi without any funds to pay living expenses for himself, his wife, his two young children, and his elderly parents—including cancer treatment medicine for his mother-in-law. Kazmi Decl. ¶ 6. Defendants' staff—none of whom are charged with wrongdoing—have been suffering without pay since the SRO was entered. *Id.* ¶ 7. Defendants have also been prohibited from paying legal

fees to defend against Plaintiff's serious and misleading claims.³  *Id.* ¶ 8.  In sum, the SRO has indiscriminately punished not only Mr. Kazmi, but also his family and his staff, before any of the Plaintiff's allegations have been tested in a court of law, and before Defendants have had any opportunity to be heard.

Neither Plaintiff nor the Temporary Receiver has articulated a lawful basis for this *ex parte*, universal asset freeze and seizure order.  In response to the Temporary Receiver's repeated demands for Defendants' money, defense counsel asked the Temporary Receiver if he was aware of any legal authority permitting pre-hearing, *ex parte* asset seizures by a receiver appointed under the CEA.  Speas Decl. ¶ 6.  The Temporary Receiver was unable to identify such authority, responding that he was "solely relying on the [SRO]," without regard to constitutional or statutory mandates.  *Id.* ¶ 7.

On top of ignoring valid due process concerns, the Temporary Receiver has failed to preserve the assets of the Receivership Estate.  Specifically, the Temporary Receiver has made no effort to review or to dispute millions of dollars in credit card chargebacks that have been issued against Defendants' accounts since the CFTC filed its spurious claims against Defendants.  *Id.* ¶¶ 16, 18.  As a result, the Receivership Estate risks losing millions of dollars in protected assets with each passing day.  *Id.* ¶ 17.  MFF never had chargeback requests of this volume before the CFTC filed its claims and shut down MFF's business.  Kazmi Decl. ¶ 11.

MFF relies on WooCommerce and Stripe to process credit card transactions initiated on its website.  Kazmi Decl. ¶¶ 9, 10.  WooCommerce provides an online dashboard through which MFF can dispute chargeback requests that may be initiated by cardholders and their issuing

---

³  Defense counsel's retainer was paid by a personal friend of Mr. Kazmi, as a loan.  Kazmi Decl. ¶ 8.  In an abundance of caution to comply with the SRO, the retainer has been frozen in defense counsel's trust account.  Speas Decl. ¶ 22.

5

banks, subject to card network rules. Speas Decl. ¶ 11. Stripe provides chargeback data through this dashboard and also maintains a reserve account, which is funded by a percentage of MFF's credit card transactions, in order to cover potential chargebacks against MFF. *Id.* ¶ 11. Depending on the card network (*e.g.*, Visa, Mastercard, AmEx), MFF has only a matter of days to dispute a chargeback request after it is initiated, and if the period to dispute the chargeback lapses without a response, the amount at issue will be debited from the reserve account. *Id.* ¶ 12. Currently, MFF's reserve account with Stripe holds about $6 million. *Id.* ¶ 13.

After they were served with the SRO, WooCommerce and Stripe shut down MFF's accounts and denied MFF access to the online dashboard through which MFF can review and dispute chargebacks. *Id.* ¶ 14. However, WooCommerce and Stripe do not control the initiation of chargeback requests, and they cannot suspend the period to dispute them. *Id.* ¶ 15. From the entry of the SRO on August 29, 2023 through September 14, 2023, approximately $2.2 million in chargeback requests have been initiated against MFF, and MFF has not been able to review or to dispute them while its accounts remain frozen. *Id.* ¶ 16. Given the relative spike in chargeback requests after the CFTC initiated this case, Defendants suspect that many of the pending requests are opportunistic and unsubstantiated. Kazmi Decl. ¶ 12. With each day that passes, potentially all of the $2.2 million, and more, could be lost, unless the chargeback requests are diligently reviewed and disputed. Speas Decl. ¶¶ 16, 17.

WooCommerce and Stripe offered to help the Temporary Receiver dispute pending chargebacks. *Id.* ¶ 18. Despite this offer of assistance, the Temporary Receiver has not mitigated chargeback losses. *Id.* Even if the Temporary Receiver was willing to dispute the chargebacks, it is doubtful the Temporary Receiver has the necessary resources to do so effectively and timely, considering that he is not familiar with MFF's business, customers, or the

6

chargeback dispute systems managed by WooCommerce and Stripe. *Id.* ¶ 19. In contrast, MFF has a dedicated team of at least ten professionals familiar with WooCommerce's and Stripe's systems who are standing at the ready to review and to dispute the thousands of chargeback requests that are pending—if the Court allows it. Kazmi Decl. ¶ 14. The Temporary Receiver has indicated he is open to working with Defendants' specialists to address the chargeback issue. Speas Decl. ¶ 20.

III. **ARGUMENT**

    A. **Legal Standards**

A court's power to grant *ex parte* relief under the CEA is narrow and constrained. 7 U.S.C. § 13a-1(a). The general rule is that no restraining order shall be issued *ex parte*, with three exceptions: (1) to prohibit the destruction or withholding of books and records; (2) to prohibit the transfer or dissipation of funds; or (3) to appoint a temporary receiver to administer the order. *Id.* The plain language of the statute does **not** permit a temporary receiver **to seize** assets on an *ex parte* basis. *Id.*

Under the CEA, "a court may exercise its equitable power only over the property causally related to the wrongdoing." *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 78–79 (3d Cir. 1993) (cleaned up). Therefore, a claim for equitable relief "will only warrant imposition of a pre-judgment asset freeze when the freeze bears a sufficient nexus to both the merits of the action and the particular property sought." *Commodity Futures Trading Comm'n v. Next Fin. Servs. Unlimited, Inc.*, No. 04-80562-CIV, 2005 WL 6292467, at *12 (S.D. Fla. June 7, 2005). The purpose of an asset freeze is to "preserve the status quo by preventing the dissipation and diversion of assets," *Am. Metals Exch. Corp.*, 991 F.2d at 79, and therefore a freeze is "appropriate only if the evidence suggests that customers' financial interests otherwise

7

would be in jeopardy," *Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 773 (7th Cir. 2007).

The Court "has the discretion to unfreeze [] assets when equity requires." *U.S. Commodity Futures Trading Comm'n v. Tmte, Inc.*, No. 3:20-CV-2910-L, 2022 WL 1321572, at *2 (N.D. Tex. May 3, 2022) (cleaned up); *see Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015) (explaining that a court may modify preliminary injunctive relief when the change "ha[s] benefits for the parties and the public interest."). This includes the un-freezing of assets so that a defendant may pay for living expenses and attorneys' fees. *See, e.g.*, *Commodity Futures Trading Comm'n v. Fin. Tree*, No. 2:20-CV-01184-TLN-AC, 2020 WL 5995176, at *2 (E.D. Cal. Oct. 9, 2020) (modifying preliminary injunction to permit defendant to pay for reasonable living expenses and legal fees).

B.  **Neither the CEA Nor the Fifth Amendment Permits the Temporary Receiver to Seize All of Defendants' Assets Without a Prior Hearing**

The Fifth Amendment to the U.S. Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is therefore axiomatic that *before* the government deprives a person of property,[4] the person must have "the right to notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Civil enforcement actions under the CEA are no exception, and even "a temporary, nonfinal deprivation of property is nonetheless a deprivation" of constitutional significance. *Id.* at 85. "The stringent restrictions imposed [by Rule 65] on the availability of *ex parte* temporary restraining orders reflect the fact that our

---

[4] "Property" is defined generally, and "it is not the business of a court adjudicating due process rights to make its own critical evaluation of [a person's] choices and protect only the ones that, by its own lights, are 'necessary.'" *Fuentes*, 407 U.S. at 90.

8

entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974). To pass constitutional muster, an *ex parte* restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as [it] is necessary to hold a hearing, and no longer." *Id.*

"Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights," *Fuentes*, 407 U.S. at 81, yet that is exactly how the CFTC obtained the SRO. ECF 4, 7, 12, 13. To make matters worse, the SRO not only exceeds the injunctive relief permitted under the CEA, it runs afoul of the Due Process clause of the Fifth Amendment. Nothing in the plain language of Section 6c(a) permits a court to direct a Temporary Receiver to seize all of Defendants' assets, on an *ex parte* basis, without a prior hearing. While a pre-hearing *freeze* order may be constitutionally permissible if it is narrowly tailored to "preserving the status quo"[5] and "bears a sufficient nexus to both the merits of the action and the particular property sought,"[6] the SRO here, which directs the Temporary Receiver *to seize* virtually *all* of Defendants' assets without a hearing, is not. *See Fuentes*, 407 U.S. at 81 ("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented."); *Am. Metals Exch. Corp.*, 991 F.2d at 78–79 ("[A] court may exercise its equitable power only over the property causally related to the wrongdoing."). For these reasons, the SRO should be modified immediately to remove the authority of the Temporary Receiver to seize Defendants' assets.

---

[5] *Granny Goose*, 415 U.S. at 439.
[6] *Next Financial Services*, 2005 WL 6292467, at *12.

9

C. **Defendants Should Be Granted the Ability to Review and to Dispute Credit Card Chargebacks in Order to Avoid Millions of Dollars in Losses**

Fundamentally, it is a receiver's duty to safeguard the assets of the receivership. *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also* SRO ¶¶ 30c, 30d. The Temporary Receiver here has abdicated that duty by failing to take any action to mitigate the potential loss of millions of dollars in credit card chargebacks that are pending against Defendants' accounts. Speas Decl. ¶ 18. Even after WooCommerce and Stripe offered the Temporary Receiver opportunities to review and to dispute the chargebacks, the Temporary Receiver has not begun that process. *Id*. This is a failure of the Temporary Receiver to preserve the Receivership Estate and to prevent dissipation of funds—the very purpose of appointing a Temporary Receiver pursuant to Section 6c(a). *See* SRO ¶ 11. Even if the Temporary Receiver was willing to address this critical issue, it is doubtful the Temporary Receiver has the necessary personnel, resources, or information to adequately address the pending chargeback requests on a timely basis. Speas Decl. ¶ 19. On the other hand, Defendants are in the best position to review quickly and to dispute unmeritorious chargeback requests with supporting evidence (*e.g.*, proof that a person received the service paid for). Kazmi ¶ 14. Defendants have a team of dedicated professionals familiar with Stripe's system who are ready and willing to address the pending chargebacks with the Court's permission. *Id*. With each passing day that the chargeback requests go unanswered, the Receivership Estate is losing money. Speas Decl. ¶¶ 17, 18.

Considering that millions of dollars in chargeback requests will be automatically granted if no one disputes them, Defendants should immediately be granted access to all necessary systems to dispute the chargebacks, including those provided by WooCommerce and Stripe. Defendants should also be given access to FPFX (MFF's client dashboard) and Metatrader in

order to obtain relevant evidence to assess the merit of each chargeback request. Defendants can use the information from FPFX and Metatrader, which would demonstrate proof of trading, to dispute meritless chargebacks. Kazmi Decl. ¶ 13.

### D. The CFTC Has Not Shown Why All of Defendants' Assets Need to Remain Frozen

Neither the CEA nor the Due Process clause permits the CFTC to freeze—much less seize—assets that have no relation to the CFTC's investigation. *See Am. Metals Exch. Corp.*, 991 F.2d at 78–79; *Tmte*, 2022 WL 1321572, at *5. Currently, the SRO applies to *all* of Defendants' assets, without any attempt to tie certain assets to alleged misconduct. This is a gross overreach not permitted under the CEA. As currently written, the SRO covers personal assets that Mr. Kazmi has obtained through activities that have nothing to do with MFF, including investment income from rental properties. The notion that every asset Mr. Kazmi owns derives exclusively from MFF is implausible on its face. Kazmi Decl. ¶ 5. Nevertheless, if the CFTC maintains that *all* assets currently subject to the SRO bear the requisite nexus to the CFTC's claims, the CFTC should be ordered to identify the causal connection to each of Defendants' assets—both physical and intangible property, as well as financial accounts—that are currently frozen. Otherwise, the assets should be released from the SRO.

### E. Contrary to the CEA, The SRO Is Not Limited to Assets Which Are Allegedly Disgorgeable

Under the CEA, a court may "freeze a defendant's assets to ensure the adequacy of a disgorgement remedy," *Commodity Futures Trading Comm'n v. Levy*, 541 F.3d 1102, 1114 (11th Cir. 2008), but not civil monetary penalties or restitution. *See U.S. Commodity Futures Trading Comm'n v. Escobio,* 946 F.3d 1242, 1254 (11th Cir. 2020) ("Restitution under the CEA

11

must consider customer losses and therefore cannot be equitable restitution."). Accordingly, the scope of the asset freeze must be limited to the amount of disgorgement claimed by the CFTC. When determining the amount of assets subject to equitable injunctive relief under the CEA, legal damages, such as potential civil monetary penalties, cannot be taken into account. *See S.E.C. v. Yun*, 327 F.3d 1263, 1269 n.10 (11th Cir. 2003) (distinguishing between legal relief, including civil penalties, and equitable disgorgement). "Any further sum [beyond the disgorgement remedy] would constitute a penalty assessment." *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005).

Clearly, the SRO is not currently limited to disgorgeable remedies because it purports to cover every asset Defendants have ever owned and may own in the future. SRO ¶¶ 15, 20. The SRO itself indicates that it is designed to "assure payment of restitution," which is improper. SRO ¶ 13; *see Levy*, 541 F.3d at 1114; *Escobio,* 946 F.3d at 1254; *ETS Payphones*, 408 F.3d at 735.

To justify the scope of the asset freeze, the CFTC should be ordered to quantify its claimed disgorgement remedy; any amount above that should be released from the SRO.

F. **The SRO Should Make a Reasonable Allowance to Pay Defendants' Staff**

The SRO does not allow any money to be paid to Defendants' staff members. Defendants have 56 staff members who have not been paid since the SRO was entered. Kazmi Decl. ¶ 7. None of these individuals are defendants in this case, yet their paychecks have been arbitrarily cut off. As monthly bills come due, these people and their families will continue to suffer through no fault of their own. Defendants respectfully request the Court to permit a reasonable exemption to the SRO for withdrawals from MFF's corporate account to pay Defendants' staff members, so that they can continue to provide for their families. Defendants

12

will negotiate in good faith with the Temporary Receiver to set an amount for this exemption, while reserving the right to seek judicial relief if they are unable to agree on the amount.

G. **The SRO Should Make a Reasonable Allowance to Pay for the Living Expenses of Mr. Kazmi's Family**

The SRO makes no provision for Mr. Kazmi to pay living expenses for himself, his wife, his two young children, and his elderly parents. Since the SRO has been in effect, Mr. Kazmi has been completely cut off from his personal accounts, even though hundreds of thousands of dollars in his personal accounts have nothing to do with MFF.[7] While some of Mr. Kazmi's monthly expenses are quite literally necessary to live (*e.g.*, food, medicine, etc.), others are also necessary to preserve the value of the Receivership Estate (*e.g.*, mortgage, insurance etc.). Mr. Kazmi's recurring monthly payments for personal expenses include his home mortgage, telecommunications, gas, school tuition for his children, insurance, house maintenance, security, childcare, parental support, and utilities. Defendants respectfully request the Court to permit a reasonable exemption to the SRO for monthly withdrawals from Mr. Kazmi's personal accounts for his family's monthly expenses. Defendants will negotiate in good faith with the Temporary Receiver to set an amount for this exemption, while reserving the right to seek judicial relief if they are unable to agree on the amount.

H. **The SRO Should Make a Reasonable Allowance for Legal Defense Fees**

The CFTC has levied grave allegations against Defendants that have put their entire business in jeopardy. This is a complex litigation matter, and Defendants need legal representation in order to present a proper defense. If Defendants are not allowed to pay

---

[7] Prior to working for MFF, Mr. Kazmi sold some real property for about $538,000 Canadian dollars. Kazmi Decl. ¶ 5.

13

reasonable expenses for their legal defense, they are functionally denied due process. *See S.E.C. v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001) (court would approve reasonable attorney's fees because its "central concern is the fairness of the proceedings" and it "d[id] not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel" in the "complex legal matter"). Defendants are also facing a parallel proceeding in Canada involving the Ontario Securities Commission, and they engaged Canadian counsel to represent them in that matter. Kazmi Decl. ¶ 8. Accordingly, Defendants respectfully request that the Court permit a reasonable exemption to the SRO for withdrawals from Defendants' accounts for legal defense costs. *See U.S. Commodity Futures Trading Comm'n v. Dinar Corp*, No. 1:15-CV-538-WKW, 2016 WL 814893, at *3 (M.D. Ala. Feb. 29, 2016) ("Corollary to the court's equitable discretionary authority to temporarily freeze personal assets, the court also has discretion to release some frozen assets for payment of reasonable attorney's fees in civil cases."). Defendants will negotiate in good faith with the Temporary Receiver to set an amount for this exemption, while reserving the right to seek judicial relief if they are unable to agree on the amount.

IV. **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to modify the SRO.

14

Dated:  September 18, 2023             Respectfully submitted,

                                                   By */s/ Anthony J. Staltari*
                                                           Anthony J. Staltari (Attorney ID. No. 233022017)
                                                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                           51 Madison Avenue, 22nd Floor
                                                           New York, NY 10010
                                                           Tel.: (415) 875-6600
                                                           anthonystaltari@quinnemanuel.com

                                                           Michael Shaheen, III (*pro hac vice* pending)
                                                           Robert A. Zink (*pro hac vice* pending)
                                                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                           1300 I Street, NW, Suite 900
                                                           Washington, D.C. 20005
                                                           Tel.: (202) 538-8000
                                                           michaelshaheen@quinnemanuel.com
                                                           robertzink@quinnemanuel.com

                                                           Dakota Speas (*pro hac vice* pending)
                                                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                           865 S. Figueroa St., 10th Floor
                                                           Los Angeles, CA 90017
                                                           Tel.: (213) 443-3000
                                                           dakotaspeas@quinnemanuel.com

                                                           *Attorneys for Defendants*