Anthony J. Staltari (Attorney ID. No. 233022017)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (415) 875-6600
anthonystaltari@quinnemanuel.com

Michael Shaheen, III (*pro hac vice* pending)
Robert A. Zink (*pro hac vice* pending
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

Dakota Speas (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Commodity Futures Trading Commission, | Case No.: 3:23-cv-11808 |
| *Plaintiff*, | **DECLARATION OF DAKOTA SPEAS IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY ORDER GRANTING PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF** |
| v. | |
| Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi, | |
| *Defendants*. | |

I, Dakota Speas, declare pursuant to 28 U.S.C. § 1746 that:

1

1. I am a member of the bar of the State of California and an associate at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I have applied for admission *pro hac vice* to practice before this Court in this case, and my application is pending. I am one of the attorneys representing defendants Traders Global Group Incorporated, a New Jersey corporation doing business as "My Forex Funds," Traders Global Group Incorporated, a Canadian business organization, and Murtuza Kazmi (collectively, "Defendants").

2. On behalf of Defendants, I have communicated with the Temporary Receiver regarding the Temporary Receiver's requests pursuant to the Statutory Restraining Order ("SRO") entered in this case. ECF 13.

3. At the Temporary Receiver's request, Defendants have provided schedules of Defendants' accounts, along with online login credentials, among other information, so that the Temporary Receiver can monitor and account for Defendants' assets.

4. Defendants are continuing to respond to the Temporary Receiver's requests on a rolling basis.

5. The Temporary Receiver has repeatedly demanded Defendants' money, including by pressing Defendants to transfer their funds to the Temporary Receiver. Ex. 1 at 3 (September 14–15, 2023 email chain between A. Sodono and D. Speas). The Temporary Receiver has already withdrawn some funds from Defendants' accounts without Defendants' knowledge or consent, and he has not disclosed where those withdrawn funds are being stored.

6. In response to the Temporary Receiver's repeated demands, I asked the Temporary Receiver if he was aware of any legal authority holding that pre-hearing, *ex parte* asset seizures by a receiver are permissible under the CEA. *Id.* at 2.

7. The Temporary Receiver was unable to identify such authority, responding that he was "solely relying on the [SRO]," without regard to constitutional or statutory mandates. *Id.* at 2.

8. Traders Global Group, Inc. (US) and Traders Global Group, Inc. (Canada) (collectively, "MFF") hold accounts with WooCommerce, a subsidiary of Automattic.

2

WooCommerce provides an e-commerce platform to MFF through which individuals can pay MFF by credit card.

9. On September 14, 2023, I had a call with WooCommerce's in-house counsel to discuss the SRO. On September 15, 2023, I had a call with Stripe's outside counsel to discuss the SRO.

10. I was informed that WooCommerce partnered with Stripe to process these credit card transactions.

11. I was informed that WooCommerce provides an online dashboard through which MFF can dispute chargeback requests that may be initiated by cardholders and their issuing banks, subject to card network rules. Stripe provides chargeback data through this dashboard and also maintains a reserve account, which is funded by a percentage of MFF's credit card transactions, in order to cover potential chargebacks against MFF.

12. I was informed that depending on the card network (*e.g.*, Visa, Mastercard, AmEx), MFF only has a matter of days to dispute a chargeback request after it is initiated, and if the period to dispute the chargeback lapses without a response, the amount at issue will be debited from the reserve account.

13. I was informed that as of September 15, 2023, MFF's reserve account held approximately $6 million, according to Stripe.

14. I was informed that after WooCommerce and Stripe were made aware of the SRO, they shut down MFF's accounts and denied MFF access to them, including the dashboard through which MFF can review and dispute chargebacks.

15. I was informed that WooCommerce and Stripe have no control over the initiation of chargeback requests, and they cannot suspend the period to dispute them.

16. I was informed that since the entry of the SRO on August 29, 2023, approximately $2,223,916.21 in chargeback requests have been initiated against MFF, and MFF has not been able to review or to dispute them while its accounts remain frozen.

17. I was informed that with each day that passes, potentially all of this money, and

more—which would otherwise be owed to Defendants (or the receivership estate)—could be lost, unless these chargeback requests are diligently reviewed and disputed.

18. I was informed that WooCommerce and Stripe offered the Temporary Receiver the opportunity to review and to dispute the chargebacks pending against MFF's accounts. However, to my knowledge, the Temporary Receiver has not reviewed or disputed any chargeback requests.

19. It is doubtful that the Temporary Receiver has the necessary personnel, resources, or information to adequately address the pending chargeback requests effectively or on a timely basis. On September 15, 2023, I sent a letter to the Temporary Receiver as a matter of urgency asking whether he had taken action to review and to dispute the chargebacks, contrary to the assertions of WooCommerce and Stripe. Ex. 2 (September 15, 2023 Letter from D. Speas to A. Sodono).

20. On September 18, 2023, I had a call with the Temporary Receiver to discuss the letter I sent on September 15, 2023. The Temporary Receiver informed me that he agreed the charge backs needed to be addressed urgently, and the Temporary Receiver indicated he was open to permitting Defendants' specialists to review and to dispute the chargebacks. I informed the Temporary Receiver that Defendants would file this motion imminently given the emergency nature of the relief sought. However, we agreed to continue negotiating a practical solution in good faith.

21. A third party paid Quinn Emanuel Urquhart & Sullivan, LLP a retainer for legal services to Defendants in this action.

22. Out of an abundance of caution, Defense counsel have frozen this retainer in defense counsel's trust account.

23. Defendants are facing a parallel proceeding in Canada involving the Ontario Securities Commission, and they have Canadian counsel to represent them in that matter.

24. Defendants bring this motion on an emergency basis because millions of dollars may be lost in the coming days if the requested relief is not granted immediately. Accordingly, Defendants request a hearing upon 2 days' notice, pursuant to Rule 65(b)(4) of the Federal Rules

of Civil Procedure.

    I declare under the penalty of perjury that the foregoing statements are true and correct.

Executed in Los Angeles, California, United States on this 18th day of September 2023.

_____

Dakota Speas