Anthony J. Staltari (Attorney ID. No. 233022017)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (415) 875-6600
anthonystaltari@quinnemanuel.com

Michael Shaheen, III (*pro hac vice* pending)
Robert A. Zink (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

Dakota Speas (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Commodity Futures Trading Commission, | Case No.: 3:23-cv-11808 |
| *Plaintiff*, | **DECLARATION OF MURTUZA KAZMI IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY ORDER GRANTING PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF** |
| v. | |
| Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi, | |
| *Defendants*. | |

1

I, Murtuza Kazmi declare pursuant to 28 U.S.C. § 1746 that:

1. I am a Canadian citizen and reside in Ontario, Canada. I am a defendant in this lawsuit.

2. I am the chairman and chief executive of My Forex Funds ("MFF"),[1] an innovative online talent acquisition company that evaluates individuals to trade proprietary capital.

3. Before Plaintiff Commodity Futures Trading Commission (the "CFTC") initiated this lawsuit against Traders Global Group Inc., a New Jersey corporation doing business as "My Forex Funds," Traders Global Group Inc., a Canadian business organization, and me (collectively, "Defendants") and moved for an *ex parte* order freezing all of Defendants' assets, including my personal home and bank accounts, and appointing a temporary receiver to seize them, I did not receive any notice or warning of this lawsuit.

4. Since receiving notice of the *ex parte* statutory restraining order (the "SRO"), Defendants have diligently preserved the *status quo* and have refrained from withdrawing, transferring, removing, dissipating or otherwise disposing of their assets. Defendants have similarly refrained from destroying, altering, or disposing of their business and financial records.

5. The SRO does not distinguish between my personal income received from MFF and other income I have received from sources independent of MFF, such as investments that have no connection with MFF. For example, before I started working for MFF, I sold some properties for approximately $538,000 Canadian dollars.

6. The SRO has left me without any funds to pay living expenses for myself, my wife, two young children, and parents. Since the SRO was entered, I have been completely cut off from my personal assets. While some of my monthly expenses are quite literally necessary to live (*e.g.*, food, cancer treatment medicine for my mother-in-law, etc.), others are also necessary to preserve the value of my assets (e.g., mortgage, insurance, etc.).

---

[1] Defendants Traders Global Group Incorporated (a New Jersey Corporation) and Traders Global Group Incorporated (a Canadian business organization) do business as "My Forex Funds."

7. The SRO has left me without any funds to pay MFF's staff—none of whom are charged with wrongdoing. MFF employs 56 staff members who have not been paid since the SRO was entered.

8. The SRO has prohibited Defendants from paying legal fees to defend against Plaintiff's serious claims. Defendants retained Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") as defense counsel in this matter; a friend paid a retainer directly to Quinn Emanuel, in the form of a loan to Defendants. In addition to this lawsuit, Defendants are facing a parallel proceeding in Canada involving the Ontario Securities Commission and have Canadian counsel representing them in that matter.

9. MFF holds accounts with WooCommerce, a subsidiary of Automattic. WooCommerce provides an e-commerce platform to MFF through which its traders can pay MFF by credit card.

10. WooCommerce partnered with Stripe to process credit card transactions for MFF. WooCommerce provides an online dashboard through which MFF can dispute chargeback requests that may be initiated by cardholders and their issuing banks, subject to card network rules.

11. Since the CFTC filed its claims and shut down MFF's business, MFF has experienced an unprecedented increased volume of chargeback requests.

12. Given the relative spike in chargeback requests after the CFTC initiated this case, MFF suspects that many of the pending requests are opportunistic and unsubstantiated.

13. After WooCommerce and Stripe were made aware of the SRO, they froze MFF's accounts and denied Defendants access to them, including the dashboard through which Defendants can review and dispute chargebacks. We also lost access to FPFX and Metatrader, which would allow MFF to obtain proof-of-trading evidence and to assess the merit of each pending chargeback request.

14. I believe MFF is in the best position to review quickly and to dispute unmeritorious chargeback requests with supporting evidence (*e.g.*, proof that a person received the service paid for). MFF has a dedicated team of at least 10 professionals familiar with Stripe's system who are

ready and willing to review and to dispute the thousands of chargeback requests that are pending—if the Court allows it.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct. Executed in *Richmond Hill, ON*, Canada on this 18th day of September 2023.

_____
Murtuza Kazmi