# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:23-cv-11808 |
| v. | ) | |
| | ) | Judge Zahid N. Quraishi |
| Traders Global Group Inc., a New Jersey | ) | |
| corporation, d/b/a "My Forex Funds"; | ) | Plaintiff CFTC's and Temporary |
| Traders Global Group Inc., a Canadian | ) | Receiver's Joint Motion for Order |
| business organization; and Murtuza | ) | to Show Cause Why Defendants |
| Kazmi, | ) | Should Not Be Held in Contempt |
| | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

I.   BACKGROUND .............................................................................. 1

II.  LEGAL STANDARD .................................................................... 3

III. ANALYSIS ...................................................................................... 4

   A.  Defendants refuse to turn over $2.8 million in customer funds
       to the Temporary Receiver. ............................................. 4

   B.  Defendants have failed to identify or provide access to
       financial accounts. ............................................................ 8

   C.  Defendants have failed to provide an accounting. ................. 10

   D.  Defendants have failed to identify, and are refusing to
       provide access to, ESI or the "MyForexFunds" social media
       accounts............................................................................... 10

IV.  CONCLUSION .............................................................................. 13

# TABLE OF AUTHORITES

**Cases**

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, (1974) ........................ 6, 7

*CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, (3d Cir. 1993).................................... 7

*CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2004 WL
   3186580, (C.D. Cal. July 29, 2004) ............................................................... 8

*CFTC v. Saffron*, No. 219CV01697JADDJA, 2020 WL 495557, (D. Nev. Jan. 30,
   2020) ...................................................................................................... 10

*FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, (3d Cir. 2010)......................................... 3

*SEC v. Bryant*, No. 4:17-CV-00336, 2017 WL 3492311, (E.D. Tex. Aug. 15, 2017) .... 6

*SEC v. Cook*, No. CV 09-3332 (MJD/JJK), 2010 WL 11537512, (D. Minn. Jan. 25,
   2010) ...................................................................................................... 13

*SEC v. Nguyen*, No. SACV1901174AGKESX, 2019 WL 12470145, (C.D. Cal. Nov. 4,
   2019) ........................................................................................................ 7

*SEC v. Telexfree, Inc.,* 164 F. Supp. 3d 187, (D. Mass. 2015) ...................................... 9

**Statutes**

7 U.S.C. § 13-1 ............................................................................................................ 3

7 U.S.C. § 13a-1 .......................................................................................................... 1

On August 30, 2023, the Court entered an *ex parte* statutory retaining order ("SRO") pursuant to 7 U.S.C. § 13a-1 against Defendants ordering an asset freeze, appointing a temporary receiver ("Temporary Receiver"), and requiring Defendants to turn over their records.  Despite Defendants' awareness of the SRO, Defendants are contumaciously disobeying the SRO by: (A) refusing to turn over to the Temporary Receiver approximately $2.8 million in customer funds held in a Slovakian cryptocurrency account; (B) failing to identify or provide access to Defendants' financial accounts; (C) failing to provide a full accounting of Defendants' assets; and (D) failing to identify, and refusing to provide access, to electronically-stored information ("ESI") and social media accounts.  Plaintiff Commodity Futures Trading Commission ("CFTC") and the Temporary Receiver hereby move the Court for an order to show cause why Defendants should not be held in contempt.

## I.    BACKGROUND

CFTC has charged Defendants with fraud, registration, and off-exchange trading violations of the Commodity Exchange Act and Regulations arising from Defendants' large-scale fraud scheme involving leveraged retail foreign exchange ("forex") and commodity trading.  (Doc. 1, Compl.)  Defendants Traders Global Group, Inc., a New Jersey corporation ("Traders Global U.S."), and Traders Global Group, Inc., a Canadian business organization ("Traders Global Canada"), (together, "Traders Global") doing business as "My Forex Funds," and acting through their principals and agents, including Defendant Kazmi, the CEO of

Traders Global, (collectively, "Defendants") promised that customers, in return for the payment of various fees, can become "professional traders," using Traders Global's money to trade leveraged forex or commodity contracts against so-called "liquidity providers." (Doc. 14 at 5-6, CFTC's Mot. for SRO.) If a customer's trading was profitable, Traders Global would pay the customer a share of the profits. (*Id.* at 8.) "Your success is our business," Defendants told customers; "we only make money when you make money." (*Id.* at 10.) Defendants' sales pitch was appealing to customers, more than 135,000 of whom paid Traders Global in excess of $310 million in fees. (*Id.* at 11.)

Traders Global is a fraud. (*Id.* at 12.) In reality, customer trades were "internalized" by Traders Global and "effectively go nowhere." (*Id.*) Traders Global was the counterparty to substantially every customer trade, which means that when customers made money Traders Global lost money. (*Id.*) And although Traders Global paid customers who traded successfully, it did so using fees collected from other customers in a manner similar to a Ponzi scheme. (*Id.* at 13-15.) To ensure that Traders Global collected more in fees than it paid out in "trading profits," Defendants used various devices to reduce the likelihood or amount of profitable trading by customers, including the use of specialized computer software to handicap customer trading. (*Id.* at 17-21.)

On August 30, 2023, the Court, upon motion from the CFTC, and on the basis of the evidence that the CFTC presented, entered an *ex parte* SRO against Defendants imposing an asset freeze, appointing a temporary receiver, and ordering

Defendants to turn over their books and records to the CFTC and Temporary Receiver. (Doc. 13.) Defendants were served with the SRO (along with the complaint and summonses) on August 31, 2023. (Docs. 20 through 21, Returns of Service of Summonses; Ex. A-1, Letter from A. Burden, Counsel for CFTC, to M. Kazmi, Def., et al., Aug. 31, 2023.) Defendants have since acknowledged receipt of the SRO in numerous communications with counsel for the CFTC and Temporary Receiver. (*See*, *e.g.*, Ex. A-11, Emails from D. Speas, Counsel to Defs., to S. Placona, Counsel for Temp. Recv'r, et al., Sept. 14, 2023.)

In the more than two weeks that have passed since service of the SRO, however, Defendants have either failed or refused to comply with most of the provisions—and certainly the most important provisions—of the SRO. Further, Defendants have ignored or denied the CFTC's and Temporary Receiver's numerous entreaties for compliance and offer no cognizable excuse for their non-compliance.

## II.   LEGAL STANDARD

To establish contempt, a movant must demonstrate by clear and convincing evidence that: (1) a valid court order existed; (2) the contemnor had knowledge of the order; and (3) the contemnor disobeyed the order. *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (holding that district court erred in failing to hold defendant in contempt for violation of order prohibiting certain types of statements about efficacy of dietary supplement). There is no requirement that a contemnor's behavior be "willful," nor is there any "good faith" defense to civil contempt. *Id.*

### III.    ANALYSIS

The SRO in this case is a valid court order, specifically authorized under 7 U.S.C. § 13-1, of which Defendants unquestionably have knowledge.  Despite their knowledge, Defendants have contumaciously disobeyed the SRO by: (A) refusing to turn over to the Temporary Receiver approximately $2.8 million in customer funds held in a Slovakian cryptocurrency account; (B) failing to identify or provide access to Defendants' financial accounts; (C) failing to provide a full accounting of Defendants' assets; and (D) failing to identify, and refusing to provide access, to ESI and social media accounts.

### A.    **Defendants refuse to turn over $2.8 million in customer funds to the Temporary Receiver.**

The SRO requires that Defendants, within five days of being served with the SRO, repatriate and deliver to possession, custody, and control of the Temporary Receiver, all assets (other than real property) located outside of the United States, except to the extent such assets are already frozen by a foreign regulator.  (Doc. 13, SRO ¶ 31; *see also id*. ¶¶ 34 (requiring Defendants to deliver to Temporary Receiver "possession and custody of all assets of the Receivership Defendants, along with all keys, passwords, or entry codes necessary to gain or to secure access to [the] assets"), 35 (requiring Defendants to "cooperate fully with and assist" the Temporary Receiver).)  Defendants are refusing to do this.

Specifically, Defendants refuse to turn over to the Temporary Receiver approximately $2.8 million in assets held in Defendants' account with a company called Confirmo, Inc. ("Confirmo").  (*See* Ex. C, Dudas Decl.; Ex. C-1, Screenshot

from Confirmo login (reflecting $2.6 million in "MFF" account)[1]; Ex. A-XX, Emails from D. Speas to S. Placona, Counsel for Temp. Recv'r, et al., Sept. 14, 2023 (refusing to transfer or permit change of login credentials for Confirmo account).) This is customer money.

   As set forth above, Defendant Traders Global charges customers fees, purportedly for the chance to become a "professional trader."  Customers can pay those fees via the MFF website using a credit card or cryptocurrency.  (Ex. B-1, MyForexFunds ("MFF") website checkout page.)  For customers who choose to pay with cryptocurrency, those payments go through Confirmo.   (Ex. B, Malinowski Decl.; *see also* Exs. B-1, MFF website checkout page (reflecting that "Confirmo" may attempt to recover payments); B-2 MFF website checkout page source code excerpt (reflecting "Confirmo" payment option selected in MFF website source code).) Confirmo provides "transaction crypto-processing and exchange services" for Defendants.  (Ex. A-4, Email from F. Vinopal, Head of Compliance, Confirmo, to CFTC, Sept. 5, 2023 (noting that Confirmo has "freezed assets owned, controlled and managed by My Forex Fund[s]"); B-3, Confirmo Github code repository excerptv("Our clients include … My Forex Funds").)  Confirmo purports to be located in the Slovak Republic.  (Ex. A-4, Email from F. Vinopal to CFTC, Sept. 5, 2023 (noting that Confirmo is "registered in the Slovak Republic").)

---

[1] An email from Confirmo to the Temporary Receiver suggests that there may be closer to $3.6 million in Defendants' Confirmo account.  (Ex. A-10, Email from F. Vinopal to S. Placona, Sept. 12, 2023.)

Since learning of Defendants' account at Confirmo, the Temporary Receiver has repeatedly demanded that Defendants either (1) transfer the $2.8 million to the Temporary Receiver, or (2) permit the Temporary Receiver to change the login credentials for the account.  (Ex. A-6, Email from S. Placona to D. Speas, et al., Sept. 8, 2023 (requesting transfer of or account credentials for Confirmo); Ex. A-9, Email from S. Placona to D. Speas, et al., Sept. 11, 2023 (same); Ex. A-11, Emails from S. Placona to D. Speas, et al., Sept. 14, 2023 (same).)  Defendants have refused to do either of these things, arguing that "the parts of the *ex parte* order authorizing the Temporary Receiver to seize Defendants' assets—without a prior hearing or opportunity to be heard—are constitutionally deficient."  (Ex. A-11, Emails from S. Placona to D. Speas, et al., Sept. 14, 2023; Ex. A-13 Emails between D. Speas and A. Burden, et al., Sept. 19-20, 2023.)  Defendants' assertion is without merit.

It is well-settled that the Constitution does not prohibit an *ex parte* seizure of property where: (1) the seizure serves a significant government purpose; (2) the property seized could be removed to another jurisdiction, destroyed, or concealed if advance warning were given; and (3) the seizure is initiated by a government agency rather than a self-interested private party.  *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) (holding that *ex parte* seizure of boat loaded with marijuana did not violate Due Process); *see also SEC v. Bryant*, No. 4:17-CV-00336, 2017 WL 3492311, at *8 (E.D. Tex. Aug. 15, 2017) (rejecting Due Process challenge to *ex parte* seizure and transfer to receiver of "extremely movable

6

assets") (citing *Calero-Toledo*, 416 U.S. at 679)).[2]  These factors are easily satisfied here.

First, transferring possession or control of, i.e., "seizing," the $2.8 million serves a significant government purpose: it prevents the dissipation or diversion of—and maintains the Court's jurisdiction over—assets to which Defendants' aggrieved customers may be entitled.  *See CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993) (affirming district court's refusal to modify asset freeze). Second, the property at issue—currency—is easily moved or concealed.  Defendants' currency is particularly susceptible to being moved or concealed because it is held in an overseas account by an actual or beneficial owner—Defendant Kazmi—who resides outside of the U.S.  Finally, a government agency, the CFTC, initiated the seizure here in an enforcement action for the public interest.

Further, though the Constitution allows seizure pursuant to an *ex parte* Order, the law gives Defendants the right to challenge any such order through a requisite hearing.  *Calero-Toledo*, 416 U.S. at 680.  That hearing—for continuation of the asset freeze and receivership, and for entry of a preliminary injunction—was scheduled for September 11, 2023.  Defendants, however, have twice stipulated (at their request) to continue the hearing, and twice stipulated (again, at their request) to extend the SRO, currently through October 11, 2023.  (Docs. 25, 36.)  Having

---

[2] *Cf. SEC v. Nguyen*, No. SACV1901174AGKESX, 2019 WL 12470145, at *2 (C.D. Cal. Nov. 4, 2019) (finding "Defendants' constitutional challenges to the basic tenets of the receivership process fail" where a receiver collected property prior to the ultimate determination of defendant's liability).

passed up their chance for an earlier hearing, Defendants cannot complain they are being unconstitutionally deprived of due process.  Defendants should be held in contempt for their refusal to comply with the SRO.  *See CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2004 WL 3186580, at *6-9 (C.D. Cal. July 29, 2004) (holding defendants in contempt for violating SRO by failing to repatriate funds, provide an accounting, or provide access to books and records, including ESI).

## B.   Defendants have failed to identify or provide access to financial accounts.

The SRO requires Defendants, within twenty-four hours of receiving the SRO, to identify to the Temporary Receiver all bank, financial institution, or brokerage firm accounts that any Defendant owns or can access, along with login credentials for such accounts.  (Doc. 13, SRO ¶ 32.)  Defendants are required to "promptly" identify such accounts to the CFTC, and provide written consents to obtain records relating to those accounts.  (*Id*. ¶ 23.)

To date, Defendants have identified and provided login credentials for some but not all of their financial accounts.  (Ex. A-8, Letter from R. Zink, Counsel to Defs., to CFTC and Temp. Rec., Sept. 10, 2023; Ex. A-12, Email from D. Speas to S. Placona, et al., Sept. 15, 2023.)  Moreover, nearly every login credential for the financial accounts provided requires "two factor authentication," which is designated to Defendant Kazmi's cell phone or e-mail address, which has placed Kazmi in control of the Temporary Receiver's access to the accounts, and has impeded the Temporary Receiver's ability to access those accounts.

8

The CFTC and Temporary Receiver are aware of numerous additional financial accounts that Defendants have yet to provide information for, including accounts with:

- BMO Harris Bank, N.A.[3];

- Edward Jones;

- Deel, Inc.;

- WooCommerce, Inc.; and

- Stripe, Inc.

(*See* Doc. 33-44, Edelstein Decl. at 7 through 14 (listing accounts, summarizing transactions), Ex. E to CFTC's Mot. for SRO.)  Based on this piecemeal approach and given the accounts for which Defendants have not provided information, the CFTC and Temporary Receiver remain highly concerned that Defendants may have additional accounts unknown to CFTC or Temporary Receiver.

Defendants offer no excuse for their failure to provide complete disclosure of, or login credentials or written consents for, Defendants' financial accounts. Defendants are simply ignoring their obligations under the SRO.  They should therefore be held in contempt.  *See SEC v. Telexfree, Inc.,* 164 F. Supp. 3d 187, 192 (D. Mass. 2015) (holding defendant in contempt for violating preliminary injunction order by failing to disclose accounts).

---

[3] Defendants listed some "BMO" accounts, but just the ones in Canada.  Defendants have another account with BMO in the U.S., in the name of Traders Global U.S. (Doc. 33-44, Edelstein Decl. ¶¶ 30-33, Ex. E to CFTC's Mot. for SRO.)

**C.** **Defendants have failed to provide an accounting.**

The SRO requires Defendants, within five days of service of the SRO, to

provide the Temporary Receiver with a full accounting of all assets, including assets

inside and outside of the United States.  (Doc. 13, SRO ¶ 31.)  Defendants have not

done this.  Nor have Defendants provided even an approximate date for when an

accounting may be provided.  (*See* Ex. A-13, Emails between D. Speas and A.

Burden, et al., Sept. 19-20, 2023.)  Defendants should be compelled to do so under

pain of contempt.  *See CFTC v. Saffron*, No. 219CV01697JADDJA, 2020 WL

495557, at *3 (D. Nev. Jan. 30, 2020) (holding defendants in contempt for violated

preliminary injunction by failing to provide required accounting and failing to turn

over all books and records).

**D.** **Defendants have failed to identify, and are refusing to provide
access to, ESI or the "MyForexFunds" social media accounts.**

The SRO requires Defendants, within twenty-four hours of service of the

SRO, to identify to the Temporary Receiver all websites, cloud-storage services,

email and smartphone accounts, and online chat or messaging services, i.e., ESI,

along with all login credentials required to access that ESI.  (Doc. 13, SRO ¶¶ 32-

33.)  Defendants are required to provide the same information "promptly" to the

CFTC, along with any written consent necessary for the CFTC to access Defendants'

ESI.  (*Id*. ¶¶ 22-23.)  Defendants have not done this.

To date, the only ESI-related information Defendants have provided is login

credentials for the "My Forex Funds" website's domain server.  (Ex. A-8 at 2, Letter

from R. Zink, Counsel to Defs., to CFTC and Temp. Rec., Sept. 10, 2023.)

Defendants have failed to identify or provide login credentials for any of Defendants' other sources of ESI.  Such sources include:

- Defendants' email exchange server;

- Defendants' various social media accounts, including Discord (an online message board), Facebook, Instagram, Twitter, YouTube, and TikTok accounts, which Defendants used to communicate with customers or promote their scheme; and

- Defendants' smartphone backup accounts.

(*See* Doc. 32-40 at, *e.g.*, 7, Ex. C-1 to CFTC Motion for SRO, MyForexFunds ("MFF") website (displaying links to My Forex Funds Discord, Facebook, Instagram, YouTube, TikTok and LinkedIn accounts).)

Until this morning, Defendants had simply ignored the CFTC's and Temporary Receiver's repeated requests for ESI-related information.  (Ex. A-1, Letter from A. Burden to M. Kazmi, et al., Aug. 31, 2023 (demanding required information, attaching SRO materials); Ex. A-2, Letter from A. Burden to M. Kazmi, et al., Sept. 1, 2023 (demanding required information, attaching consent forms); Ex. A-3, Email from S. Placona to M. Kazmi, et al., Sept. 1, 2023 (demanding required information); Ex. A-5; Letter from A. Burden to R. Zink, et al., Sept. 7, 2023 (demanding required information, highlighting non-compliance with SRO, threatening contempt); Ex. A-7, Email from A. Burden to R. Zink, et al., Sept. 8, 2023 (same).)  Now, Defendants are refusing to provide the CFTC or Temporary Receiver with login credentials or consents for Defendants' email server.  (Ex. A-13,

Emails between D. Speas and A. Burden, et al., Sept. 19-20, 2023.)  Instead, Defendants that Defendants' counsel collects and reviews all of the emails "for privilege."  (*Id.*)

As a threshold matter, Defendants' refusal violates the SRO, which requires that Defendants provide access to, *inter alia*, the email server, and that "Defendants (or their counsel) shall promptly contact Plaintiff's counsel to assert any claims of privilege relating to the inspection and review of any [documents] and promptly cooperate with Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged … materials."  (Doc. 13, SRO ¶ 24.) Defendants have failed to do this, and have rebuffed the CFTC's proposal for reasonable protocols.[4]  (Ex. A-13, Emails between D. Speas and A. Burden, et al., Sept. 19-20, 2023.)  The more troubling issue is that Defendants' counsel refused to say whether the emails on Defendants' exchange server have been collected, or are undergoing review.  (*Id.*)

Defendants' failure to provide login credentials for Defendants' email, social media, and smartphone accounts not only deprives the Temporary Receiver of required information, it also frustrates the Court's directive that the Temporary Receiver assume "full control "of the Receivership Defendants and "exclusive custody, control, and possession" of the Receivership Estate.  (Doc. 13, SRO ¶ 30.)  It

---

[4] The CFTC's proposal was to exclude all communications with attorney-related domains, i.e., @quinnemmanuel.com, and have those emails isolated on server that is inaccessible to the CFTC's litigation team.  (Ex. A-13, Emails between D. Speas and A. Burden, et al., Sept. 19-20, 2023.)

likewise frustrates the Temporary Receiver's prerogative to perform all acts necessary, including suspension of operations, to prevent an irreparable loss, damage, or injury to, and protect the interests of, Defendants' customers.  (*Id*.) Defendants should therefore be ordered to show cause why they should not be held in contempt.  *See SEC v. Cook*, No. CV 09-3332 (MJD/JJK), 2010 WL 11537512, at *8–9 (D. Minn. Jan. 25, 2010) (holding defendant in contempt for violating a preliminary injunction order by failing to provide books and records or an accounting).

## IV.    CONCLUSION

For the foregoing reasons, the CFTC and Temporary Receiver respectfully request that the Court issue an order for Defendants to show cause why they should not be held in contempt.

September 20, 2023                              s/ Ashley J. Burden
                                               Senior Trial Attorney
                                               Division of Enforcement
                                               Commodity Futures Trading Commission
                                               77 West Jackson Blvd.
                                               Suite 800
                                               Chicago, IL 60604
                                               Office:  (312) 596-0693
                                               Cell:    (312) 995-0779
                                               aburden@cftc.gov