# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TRADERS GLOBAL GROUP, INC., a New Jersey corporation, d/b/a "MY FOREX FUNDS"; TRADERS GLOBAL GROUP INC., a Canadian business organization; and MURTUZA KAZMI,<br><br>　　　　Defendants. | Civil Action No. 3:23-cv-11808 |

## NON-PARTY STRIPE, INC.'S EMERGENCY MOTION TO INTERVENE

DAVIS WRIGHT TREMAINE LLP

Michael V. Rella
1251 Avenue of the Americas, 21st Fl.
New York, NY 10020
(212) 880-3973
michaelrella@dwt.com

Jonathan B. Engel
Elizabeth L. Davis
Thomas P. DeFranco
1301 K Street NW, Ste. 500 East
Washington, D.C. 20005
(202) 973-4219
jonathanengel@dwt.com
elizabethdavis@dwt.com
tomdefranco@dwt.com

*Attorneys for Non-Party Movant Stripe, Inc.*

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ............................................................................................................. 11

I. Stripe Has A Right to Intervene Because The Reserve Is Its Property .... 11

A. The Application is Timely ........................................................................ 11

B. Stripe Has Sufficient Interest in This Action Which Will be Impaired by this Proceeding ........................................................................................ 12

C. Neither Party Will Represent Stripe's Interest ......................................... 13

II. In the Alternative, The Court Should Exercise Its Discretion Because Stripe's Claims With Respect To The Reserve Share A Common Question of Law and Fact with The action .............................................. 14

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Acra Turf Club, LLC v. Zanzuccki*,
  561 Fed. App'x 219 (3d Cir. 2014) ................................................................... 14

*In re Comm. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005) .............................................................................. 13

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ................................................................................ 11

*U.S. v. Lauer*,
  242 F.R.D. 184 (D. Conn. 2007) ....................................................................... 14

*Yock v. Dep't of Public Welfare of Pa.*,
  701 F.3d 938 (3d Cir. 2012) .............................................................................. 12

**Rules**

Fed. R. Civ. P. 24(a)(2) .............................................................................................. 11

Non-party Stripe, Inc. (Stripe), through the e-commerce platform WooCommerce, provided payment processing services to the Defendants in connection with their operation of the website myforexfunds.com. Through WooCommerce, Defendants opened two Stripe accounts. Stripe has been engaged with the Temporary Receiver since it was first notified of the Statutory Restraining Order (SRO) nearly three weeks ago. Notwithstanding this, the Temporary Receiver now proposes – without prior notice to Stripe or even a motion or memorandum in support – an order that would require Stripe to transfer *its* assets to the Temporary Receiver.[1] Stripe has repeatedly explained to the Temporary Receiver the unambiguous language of Stripe's agreement with the Defendants, which states that funds held in Reserve do not belong to the Defendants and therefore do not belong to the Temporary Receiver. There is no "reserve account" in which the Defendants have a current or future interest, rather the funds the Temporary Receiver has referenced are in a clearing account held in Stripe's name at a Canadian bank. As a matter of contract, governing payment processing rules,

---

[1] Stripe is deeply concerned that it is unable to address representations that the Temporary Receiver, Plaintiff, or Defendants made to the Court at a September 19, 2023 conference because there is no record of that proceeding, to which Stripe was not invited to attend although its interests were apparently the subject of the hearing. Indeed, the Temporary Receiver cancelled a previously scheduled call with Stripe so that it could attend the hearing, without noting the purpose of the hearing to Stripe's counsel.

and industry practice, these funds belong to Stripe until Stripe transfers them to the Defendants.[2] These funds have not been transferred to the Defendants, and the Temporary Receiver has never indicated why the clear language of the agreement here should be ignored.

Stripe respectfully submits this Emergency Motion to Intervene (Emergency Motion) under Federal Rule of Civil Procedure 24 to protect its property interests in the face of the Temporary Receiver's improper assertion of rights to Stripe's property. Stripe's intervention is appropriate as a matter of right, or, in the alternative, the Court should exercise its discretion to permit Stripe to intervene because its claims share a common question of law and fact with the subject of the Statutory Restraining Order and the Temporary Receiver's Proposed Order [DE 44].

## FACTUAL BACKGROUND[3]

On August 29, 2023, the Court entered the SRO and found "good cause for the appointment of a Temporary Receiver to take control of all assets owned,

---

[2] Notwithstanding and without waiving its position, as the Temporary Receiver knows, Stripe has set aside funds equivalent to the amount of the Reserve to preserve the status quo.

[3] The Emergency Motion sets out facts directly relevant to the need for Stripe's intervention in this action. Stripe also incorporates its Opposition to the Proposed Order, which includes additional detail on Stripe's property interest in the assets it seeks to protect. Stripe will also file a Complaint, Motion for Declaratory Judgment, and Memorandum of Law in Support of a Declaratory Judgment in the coming days.

2

controlled, managed, or held by Defendants, or in which they have any beneficial interest[.]" SRO ¶ 11. The SRO clarifies that:

> [t]he term 'assets' encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

*Id.* ¶ 15. The SRO does *not* apply to assets in which the Defendants have a contingent interest that might be realized at some future date, but only to "existing assets and assets *acquired* after the effective date of this Order." *Id.* ¶ 20 (emphasis added).

The SRO also requires a business entity or person that "receives actual notice of this Order and holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendants… since November 1, 2021" to cooperate with the reasonable requests of the Temporary Receiver. *Id.* ¶ 28.

### **Stripe Has Made Every Effort to Cooperate with the Temporary Receiver Despite its Unreasonable Requests**

Stripe received notice of the SRO on August 31, 2023. Although the Temporary Receiver was aware of Stripe's role here, the Temporary Receiver did

3

not reach out to Stripe until September 7, 2023. Stripe responded within 10 minutes and in-house counsel for Stripe conferred with the Temporary Receiver and offered that the Temporary Receiver should have full access to Defendants' accounts with Stripe and that the Temporary Receiver should "let [Stripe] know if [it could] assist you in gaining access to the accounts." *See* **Ex. A** (September 7-8, 2023 Correspondence Between Stripe and Temporary Receiver). Stripe also offered the Temporary Receiver a call to discuss the status of certain funds the Temporary Receiver had mentioned (approximately $6.2 million) and explained that those funds are held in reserve.

 The Temporary Receiver responded on September 8, 2023, "I need to have the funds transferred to my trust account ASAP. We are available for a call, however, we would like to see the funds transferred before that call or the mechanics on your end on how the funds will be transferred." *See id.* The Temporary Receiver followed up to note that "there should be no delay or discussion regarding the transfer of funds. The order is clear and unambiguous regarding the transfer and any 'chargeback' issues you alluded to yesterday can be dealt with in the ordinary course[.]" *Id.* Later that same day, counsel for the CFTC had a call with Stripe's counsel during which Stripe explained that the Reserve is Stripe's property according to the agreement between Stripe and the Defendants.

*See* **Ex. B** (September 8 Correspondence Between CFTC, Stripe, and the Temporary Receiver).[4]

Stripe has assured the Temporary Receiver and the CFTC that it would not allow any account actions that would diminish funds available to the Temporary Receiver, and this remains true. *See id.* Stripe also offered to provide a comprehensive response to questions and concerns raised by both the CFTC and the Temporary Receiver, and on September 13, 2023, Stripe sent correspondence explaining its business, the status of the Reserve, and its position that the Reserve was the property of Stripe to which Defendants have no rights and therefore is not subject to the SRO. *See* **Ex. C** (September 13, 2023 Stripe Correspondence to Temporary Receiver).

On September 14, 2023, the Temporary Receiver thanked Stripe for its summary and requested additional information regarding the dispute (or chargeback) period related to the Reserve and all relevant contracts between Stripe and Defendants. That same day, Stripe provided the Temporary Receiver with hyperlinks to Stripe's terms of service for US and Canadian accounts, which contractually govern its accounts with Defendants. *See* **Ex. D** (September 14, 2023

---

[4] Stripe notes that the SRO expressly carves out the transfer of funds from a foreign jurisdiction where doing so "would violate an existing freeze, injunction, or other similar hold imposed by a foreign agency or regulator, including but not limited to the Ontario Securities Commission ('OSC') or the courts of Canada." SRO ¶ 31.b. The Reserve is held in a Canadian account.

5

Correspondence Between Stripe and Temporary Receiver). On the evening of September 15, 2023, Stripe further explained its discretion to modify the duration of the Reserve and shared with the Temporary Receiver that, based on current information, its analysts had determined that the chargeback period applicable to the Reserve would run through October 2025. *See* **Ex. E** (September 15, 2023 Correspondence Between Stripe and Temporary Receiver).

Stripe, seeking to ensure that all parties understood the status of the Reserve, also spoke with counsel for Defendants on September 15, 2023. Stripe explained the chargeback process to Defendants, and Stripe noted that it has no role in determining the merit of chargebacks as it is merely a conduit for information exchanged between the consumer, its card issuer, the card networks, and merchants. Stripe offered that, while it has no mechanism to halt the chargeback process or deprive consumers of their right to initiate disputes, it could submit information to challenge chargebacks. Stripe shared that it had offered the Temporary Receiver assistance, but that the Temporary Receiver had not taken up Stripe on its offer to date.

On September 16, 2023, the Temporary Receiver forwarded correspondence received from Defendants to Stripe and stated "[y]ou assured us all funds have been frozen. Please confirm[.]" **Ex. F** (September 16-18 Correspondence Between Temporary Receiver and Stripe). Stripe responded by offering to hold a follow up

6

call to once again explain the chargeback process to the Temporary Receiver. *See id.* Stripe and the Temporary Receiver held that call on September 18, 2023, with the CFTC also participating. Stripe again explained that it does not control the chargeback process and has no ability to stop the process of card holders' initiating disputes. Stripe reiterated that it is not an arbiter of the merits of chargebacks and has no mechanism available to it to prohibit card holders from disputing charges. Notwithstanding that chargebacks were continuing to come in, Stripe reiterated that it had set aside the full value of the Reserve (approximately $6.2 million) in a separate account so as to not be depleted by these chargebacks. Stripe restated that the Temporary Receiver was entitled to the same level of account access held by Defendants. At this point, the Temporary Receiver requested account login information for Defendants' Stripe accounts, and Stripe committed to getting this information for the Temporary Receiver as soon as possible.

On September 19, 2023, Stripe agreed to a call with the Temporary Receiver to discuss the Temporary Receiver's access to Defendants' Stripe accounts. The Temporary Receiver canceled that call. *See* **Ex. G** (September 19, 2023 Correspondence Between Stripe and Temporary Receiver). Stripe also offered to provide the Temporary Receiver with access to its vendor, Chargebacks911, which can help mitigate chargebacks. *See id.* Stripe explained that Chargebacks911 uses an automated process to challenge chargebacks identified as invalid for technical

7

reasons, like submission outside a permissible time period. Using Chargebacks911 would help the Temporary Receiver preserve the funds in the Reserve by expeditiously processing disputes to chargebacks.

On September 20, 2023, the Temporary Receiver filed a Proposed Order seeking to have the Reserve declared as an asset subject to the freeze and directing Stripe to transfer the full value of funds contained in the Reserve to the Temporary Receiver. Stripe was provided with no notice of this Proposed Order by either the CFTC, the Temporary Receiver, or Defendants.

**The Reserve Is Central to Stripe's Business and Its Consumer Protection Obligations**

Stripe provides merchants with a technology solution that enables them to accept card payments. When a customer makes a purchase on the website of a merchant that has contracted with Stripe, Stripe checks the formatting of the card information and transmits it, through card networks, to the customer's card-issuing bank. The bank verifies whether the customer has sufficient funds and, if so, places a hold on their account in the amount of the transaction. Merchant transactions are batched daily and funds are transferred from the issuing bank to Stripe, which holds those funds in an omnibus pooled clearing account. Stripe's agreements with merchants, including Defendants, expressly state that merchants have *no* right to the clearing account or its contents:

8

> "you have no rights to the Clearing Accounts or to any funds held in the Clearing Accounts, you are not entitled to draw funds from the Clearing Accounts, and you will not receive interest from funds maintained in the Clearing Accounts."

**Ex. H** (Stripe Services Agreement (CA), § C.8 (Last updated: July 13, 2023)). Ordinarily, Stripe will pay funds from a clearing account directly to a merchant, after deducting its fees, on a periodic basis. This transfer may be delayed, however, due to the credit risk to Stripe posed by things such as the merchant's chargeback rate or the applicable consumer protection laws of the country in which the merchant operates. In that case, Stripe will delay a transfer or hold funds in the clearing account as a Reserve pursuant to the Stripe Services Agreement.

The chargeback process discussed above is the tool employed by the payment system for compliance with the Fair Credit Billing Act (15 U.S.C. §§ 1666 *et seq*.) and payment card network rules. Any chargeback resulting in a dispute with the card network immediately reverses the transaction and pulls funds and associated fees from Stripe's pooled account, *i.e.*, the Clearing Account. Stripe deducts this disputed amount and the associated fee from the merchant's stated balance, and the merchant has an opportunity to contest the chargeback. If the merchant lacks available funds to cover the chargeback, Stripe must cover the loss.

To mitigate this risk, , Stripe often holds reserves for certain merchants to be used to satisfy any consumer chargeback demands against the merchant. Per the terms of its agreements with these merchants (including Defendants), Stripe has

9

discretion to impose conditions on the transfer of funds from the clearing account to a merchant. Per those same terms, any funds contained within a Stripe clearing account do not become assets of the merchant until they are transferred to a merchant bank account. If the Defendants themselves demanded the transfer of funds in the Stripe clearing account, they would have no right in law or contract to effect such a transaction. The Reserve is the property of Stripe until Stripe determines, in its sole discretion, that there are funds available to cover risk.

The ability to reserve funds is critical to a functional payments system. Stripe conducts robust underwriting and monitoring of merchants, but it does not have perfect visibility into a merchant's operations. Thus, in exchange for enabling merchants and consumers to conduct commerce with credit cards, merchants grant Stripe discretion over when to pay merchants. Consumers, in turn, can be confident that their rights under federal law and agreements with their card-issuing banks are secure. Quite simply, if Stripe were not able to maintain control over the flow of funds to merchants, including by establishing reserves, the risk profile of the industry would be completely undermined.

**Defendants and the Temporary Receiver Have No Interest in Stripe's Assets**

The Temporary Receiver's Proposed Order purports to clarify that Stripe must transfer its assets to the Temporary Receiver. The Temporary Receiver has stated no legal basis for its entitlement to Stripe's assets, but instead tries to

10

shoehorn Stripe into the group of Defendants' asset holders with a mere parenthetical, "(including, but not limited to Stripe.)." But identifying Stripe by name doesn't change the fact that Stripe does not hold Defendants' assets. Despite repeated opportunities, the Temporary Receiver has failed to explain why it is entitled to Stripe's assets. Now it tries to avoid having to make any such argument and instead asserts entitlement to Stripe's assets by fiat.

## ARGUMENT

### I. STRIPE HAS A RIGHT TO INTERVENE BECAUSE THE RESERVE IS ITS PROPERTY

A non-party may intervene as a matter of right where "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995). *See also* Fed. R. Civ. P. 24(a)(2). Stripe readily meets each of these four factors.

#### A. The Application is Timely

When determining whether Stripe's motion is timely, the Court must consider three factors: "(1) the stage of the proceeding; (2) the prejudice the delay may cause the parties; and (3) the reasons for the delay… The delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks

11

to his or her rights of the purported representative's shortcomings. The mere passage of time, however, does not render an application untimely." *Yock v. Dep't of Public Welfare of Pa.*, 701 F.3d 938, 949-50 (3d Cir. 2012) (internal quotation marks and citations omitted) (finding motion to intervene timely when movants waited almost two years following class certification and attempted to intervene following settlement agreement). There can be no question that Stripe's motion is timely.

As discussed above, Stripe has been engaged with the Temporary Receiver since Stripe was first notified of the SRO. Stripe has been transparent with the Temporary Receiver and repeatedly committed in writing to set aside funds equivalent to the amount held in Reserve, notwithstanding and without waiving its position that the Temporary Receiver has no claim to these assets. But open communication was a one-way street, and Stripe learned only through its docket monitoring that the Temporary Receiver had submitted a Proposed Order asserting a claim to Stripe's assets. As soon as Stripe noticed the docket entry, it immediately contacted the Court's clerk for further information, and upon the Court's instruction Stripe promptly submitted this motion. As such, Stripe's Emergency Motion is timely.

> **B.** **Stripe Has Sufficient Interest in This Action Which Will be Impaired by This Proceeding**

Stripe retains a sole possessory interest in the Reserve precisely because of circumstances like those present. As Stripe has informed the Temporary Receiver,

12

the Reserve exists to pay chargeback demands from consumers. Due to Stripe's role within the payments ecosystem and its contractual obligations arising from card network rules, Stripe is contractually obligated to pay these chargebacks and has no discretion in deciding chargebacks. To Stripe's direct detriment, the Temporary Receiver seeks to ignore the contractual terms of Defendants' relationship with Stripe and convert a mere future contingent interest into a current asset. The full amount of the Reserve is Stripe's property.

### C. Neither Party Will Represent Stripe's Interest

As evidenced by their covert filing asserting claim to Stripe's assets, neither the CFTC nor the Temporary Receiver will represent Stripe's interest. Both the CFTC and the Temporary Receiver have communicated in writing that they will take positions adverse to Stripe in connection with the Reserve. *See In re Comm. Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005) (noting that "the proposed intervenor must ordinarily demonstrate adversity of interest," and holding that district court failed to adequately consider whether class counsel had represented the interests of intervenors by failing to properly press factually viable claims on their behalf). If Stripe is not permitted to intervene, the Court will have no opportunity to consider its position that the Reserve is not property of the Defendants. Only Stripe can represent its own substantial interests in this matter.

## II. IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION BECAUSE STRIPE'S CLAIMS WITH RESPECT TO THE RESERVE SHARE A COMMON QUESTION OF LAW AND FACT WITH THE ACTION

Even where a non-party to litigation may not have the ability to intervene as a matter of right, "[p]ermissive intervention is available upon timely motion when the movant 'has a claim or defense that shares with the main action a common question of law or fact." *Acra Turf Club, LLC v. Zanzuccki*, 561 Fed. App'x 219, 222 (3d Cir. 2014) (internal quotation marks and citation omitted); Fed. R. Civ. P. 24(b)(1)(B). Stripe will file a third-party Complaint against Defendants seeking a declaratory judgment that the Reserve and its contents are the property of Stripe as a matter of law and contract.

At this stage, the CFTC and the Temporary Receiver have asserted that Stripe's assets are subject to the SRO. The Temporary Receiver has taken the position that immediate transfer of the Reserve is required. As such, Stripe has a direct economic interest in the suit. *See U.S. v. Lauer*, 242 F.R.D. 184, 186 (D. Conn. 2007) ("Permissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit.") (internal citations omitted). Accordingly, because Stripe's ownership of the Reserve directly bears on the Temporary Receiver's ability to freeze or seize the Reserve pursuant to its authority under the SRO, there is a common question of fact shared by this action and Stripe's basis for intervention.

14

## **CONCLUSION**

For the foregoing reasons, the Court should grant Stripe's Emergency Motion to Intervene, decline to enter the Temporary Receiver's Proposed Order, and permit Stripe to assert a claim for declaratory judgment against the Defendants regarding Stripe's interest in the Reserve.

Dated:  September 20, 2023

                        DAVIS WRIGHT TREMAINE LLP

                        /s/ Michael V. Rella
                        Michael V. Rella
                        1251 Avenue of the Americas, 21st Fl.
                        New York, NY 10020
                        (212) 880-3973
                        michaelrella@dwt.com

                        Jonathan B. Engel (*pro hac vice* pending)
                        Elizabeth L. Davis (*pro hac vice* pending)
                        Thomas P. DeFranco (*pro hac vice* pending)
                        1301 K Street NW, Ste. 500 East
                        Washington, D.C. 20005
                        (202) 973-4219
                        jonathanengel@dwt.com
                        elizabethdavis@dwt.com
                        tomdefranco@dwt.com

                        *Attorneys for Non-Party Movant Stripe, Inc.*