# EXHIBIT B

# DeFranco, Thomas

| | |
|---|---|
| **From:** | Sari B. Placona <SPlacona@MSBNJ.COM> |
| **Sent:** | Friday, September 8, 2023 6:57 PM |
| **To:** | Engel, Jonathan; Burden, Ashley; Davis, Elizabeth |
| **Cc:** | Paulson, Katherine; Streit, Elizabeth M.; Anthony Sodono |
| **Subject:** | RE: CFTC v. Traders Global, Case No. 3:23-cv-11808 (DNJ) |

**[EXTERNAL]**

Thank you, Jonathan.

**Sari B. Placona**
Partner
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
**Direct Dial:** 973-721-5030
**Email:** SPlacona@MSBNJ.COM
Website

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Engel, Jonathan <JonathanEngel@dwt.com>
**Sent:** Friday, September 8, 2023 6:55 PM
**To:** Burden, Ashley <ABurden@CFTC.gov>; Davis, Elizabeth <ElizabethDavis@dwt.com>
**Cc:** Paulson, Katherine <KPaulson@CFTC.gov>; Streit, Elizabeth M. <estreit@CFTC.GOV>; Anthony Sodono <ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** RE: CFTC v. Traders Global, Case No. 3:23-cv-11808 (DNJ)

Ashley,

We'll respond comprehensively to your email next week, but it is not wholly accurate. As we noted on the call, we are still gathering facts. But as an initial matter, as Stripe gathers facts and continues dialogue with the CFTC and Temporary Receiver, we can assure the parties that Stripe will take no action to diminish funds available to the Temporary Receiver. We'll be in touch further next week.

Regards,

Jonathan

**From:** Burden, Ashley <ABurden@CFTC.gov>
**Sent:** Friday, September 8, 2023 5:25 PM
**To:** Davis, Elizabeth <ElizabethDavis@dwt.com>; Engel, Jonathan <JonathanEngel@dwt.com>
**Cc:** Paulson, Katherine <KPaulson@CFTC.gov>; Streit, Elizabeth M. <estreit@CFTC.GOV>; Anthony Sodono <ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** CFTC v. Traders Global, Case No. 3:23-cv-11808 (DNJ)

[EXTERNAL]

Counsel:

Thank you for the illuminating call this morning.  To summarize our discussion:

- Stripe is a payment processor for merchants.  One or more of our defendants ("Defendants") in the above-captioned action is a merchant and uses (or used) Stripe for payment processing.  Like every merchant who uses Stripe, Defendants have two "accounts": an "operating account" and a "reserve account."  The operating account contains funds that are immediately available to the merchant, i.e., that merchant can transfer the funds to its bank account and spend them.  Defendants' operating account is currently in arrears, to the tune of approximately $1 million.  This is because of "chargebacks."  A chargeback occurs when a customer, i.e., someone who makes a payment, tells his or her bank to reverse the payment.

- The reserve account contains funds that are not immediately available to the merchant.  The purpose of the reserve account is to protect Stripe in the event of chargebacks.  The reserve account is funded by withholding a certain percentage of each payment made to the merchant by a customer.  For example, if a customer pays $100 to a merchant, maybe $80 goes to the operating account; $20 goes to the reserve account.  Once the time period for a chargeback on the transaction has lapsed, that percentage becomes available to the merchant.  (Presumably it gets transferred to the operating account.)

- Stripe has the ability to prevent chargebacks from depleting a merchant's operating account.  Stripe doesn't have the ability to stop customers from telling their bank to reverse the charges, nor does Stripe have the ability to stop the bank from doing so.  If that happens, Stripe is "on the hook" for the chargebacks, and must pay them out-of-pocket.  Stripe's recourse would then be against the merchant.

- Defendants' reserve account with Stripe has a current balance of approximately $6.2 million.  The $6.2 million constitutes some percentage of the payments that customers made to Defendants using Stripe's payment processing services.

- The Temporary Receiver in the above-captioned action has demanded that Stripe turn over the $6.2 million.  Stripe's position is that the $6.2. million is not subject to turnover because, pursuant to section 5.7 of the "Stripe Payment Agreement," Defendants would not be entitled to thus the funds until the time for chargebacks has lapsed.

- Stripe is concerned, an in fact expects, that the $6.2 million will be entirely consumed by chargebacks.  Stripe estimates that there are at least $10 million in potential chargebacks, i.e., chargebacks that could be, but have yet been, made.

Please advise if I have misstated or misunderstood any of the foregoing, or omitted any important detail.

With respect to the $6.2 million in the reserve account, the CFTC's position is that it is at least nominally subject to the freeze.  In other words, the CFTC's position is that Stripe would violate the SRO by using funds from the reserve account to pay chargebacks.  If Defendants' customers reverse their charges, funds used to pay those charges cannot come from Defendants' reserve account.  I assume that Stripe has not so used any of the funds in Defendants' reserve account since learning of the SRO.  If it has, please do let us know.  As for whether the funds in the reserve account must immediately be turned over the Temporary Receiver, we defer to the Temporary Receiver.

I think it would help everyone if Stripe could provide:

- The period remaining for chargebacks against Defendants;

- The basis for Stripe's understanding that there are $10 million in potential chargebacks outstanding;

- All relevant contracts between Defendants and Stripe;

- Any statutory or common law that might bear directly on the issue of a Temporary Receiver's entitlement to turnover of funds in a reserve account.

Please don't hesitate to write or call if you wish to further discuss.

Thanks,

A



**Ashley J. Burden**
Senior Trial Attorney/Chicago Regional Office
Division of Enforcement
**Commodity Futures Trading Commission**
O: (312) 596-0693
C: (312) 995-0779
aburden@cftc.gov



---

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much.