# EXHIBIT C



1301 K Street NW
Suite 500 East
Washington, D.C. 20005

**Jonathan B. Engel**
(202) 973-4219 tel
(202) 973-4499 fax
JonathanEngel@dwt.com

September 13, 2023

**VIA E-MAIL**

Sari B. Placona
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue
Roseland, NJ 07068

      Re:      <u>*CFTC v. Traders Global Group Inc. et al.*</u>

Dear Sari:

      We are writing in connection with the Court's Order Granting Plaintiff's Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (TRO) in the above-captioned matter. As you know, the Court found good cause to believe it is necessary to preserve the status quo and prevent damage to the Court's ability to grant effective final relief for customers, and therefore good cause to freeze assets owned, controlled, managed, or held by Defendants or in which they have any beneficial interest.

      As a preliminary matter, Stripe affirms that, pending further order of the Court, Stripe will take no action to interfere with the Court's ability to grant effective final relief for Defendants' customers. Stripe has provided the Temporary Receiver with unfettered access to the Defendants' Stripe accounts, through which the Temporary Receiver can verify activity on the account. But the TRO does not require Stripe to transfer funds to the Temporary Receiver because Stripe holds no assets of the Defendants.

### Merchants Have No Legal Or Equitable Right To Stripe's Assets

      Stripe provides a technology solution that enables merchants to accept payment card payments. When a customer makes a purchase on a Stripe merchant's website, Stripe checks the formatting of the card information and transmits it, through the card networks, to the customer's card-issuing bank. The issuing bank verifies whether the customer has sufficient funds and, if successful, holds the amount of the transaction on the customer's account. A merchant's transactions are batched daily and issuing banks transfer funds to Stripe, which Stripe retains in a pooled clearing account. As stated in the applicable agreement, the merchant has no right to the clearing account or to any funds held in the clearing account.

September 13, 2023
Page 2

In the normal course, Stripe will payout funds to a merchant, after deducting applicable fees, on a periodic basis by transferring funds from the Stripe clearing account to a bank account that the merchant has designated. The availability of funds to a merchant will vary depending on factors including the country, type of business, and credit risk to Stripe.

A dispute, or chargeback, occurs when a cardholder disputes a transaction with the card issuer. The chargeback process is the payment systems' tool for compliance with the Fair Credit Billing Act, 15 USC §§ 1666 *et seq*., and payment card network rules. To process the chargeback, the issuer creates a dispute with the card network, which will immediately reverse the transaction, pulling money for the transaction and dispute fees from Stripe's pooled account. Stripe then deducts the disputed amount and a fee from the merchant's available balance. The merchant may either accept the chargeback or provide information to the issuer through its Stripe account to dispute the chargeback, like evidence that the charge was authorized. Stripe facilitates information sharing, but does not have a role in deciding the outcome of a dispute. If the merchant has no available funds, Stripe must cover the loss.

To mitigate its credit risk and protect consumers' rights under federal law and their card agreements, Stripe may require that a merchant place funds in a reserve account and impose conditions on the release of funds held in reserve. Stripe may impose a reserve, for example, if a merchant's activities increase the risk of loss to Stripe or to the merchant's customers. Stripe has broad discretion over the terms of the reserve. The reserve may include the entire amount of charges processed on the account, and Stripe may fund the reserve with funds processed through the use of payment services or by debiting the merchant's bank account. Generally, the risk of chargebacks diminishes over time, as a consumer's likelihood and rights to dispute a transaction may expire in accordance with terms of their card agreement. However, issuing banks often make exceptions to these time limits, which makes it impossible for Stripe to predict precisely when the chargeback risk for a particular transaction will lapse.

In sum, funds from customer transactions do not become assets of the merchant until Stripe transfers funds from the clearing account or reserve account to the merchant's bank account. Even then, Stripe has a lien and security interest in all funds processed and deposited into the merchant's bank account, and a right superior to any other creditors' to seize or withhold funds owed to the merchant for transactions that Stripe processed.

**Defendants Have No Claim To Funds Processed By Stripe**

Stripe, through the e-commerce platform WooCommerce, provided payment processing services to the operators of the website myforexfunds.com (My Forex Funds). Through WooCommerce, My Forex Funds used two Stripe accounts:

- A U.S. account, opened by Murtuza Kazmi on February 8, 2021. The most recent transaction on this account was on December 1, 2022. The balance of this account, as of August 31, 2023 when Stipe received notice of the TRO, was -$464.10. The terms governing this account are available at https://stripe.com/legal/ssa.

- A Canadian account, opened by Murtuza Kazmi on November 30, 2022. The most recent transaction on this account was on August 30, 2023. The balance of this account, as of

September 13, 2023
Page 3

August 31, 2023 when Stipe received notice of the TRO, was $ 6,282,171.19. As described below, Stripe has transferred these funds to a reserve account. The terms governing this account are available at https://stripe.com/en-ca/legal/ssa.

Stripe maintains a reserve account in connection with the Canadian My Forex Funds merchant account. The reserve account was funded as a matter of course to mitigate escalated risk resulting from the regulatory action against My Forex Funds. The reserve account is held by Stripe Payments Canada LTD, a wholly owned subsidiary of Stripe, Inc., at Peoples Trust Company. Based on its current assessment of risk, which it continually reassess, Stripe has set the reserve to release funds to My Forex Funds in October 2025 based on the high risk of chargebacks.

In the interest of cooperating with the Temporary Receiver, Stripe has offered the Temporary Receiver the ability to access the account to the full extent to which the merchant could access the account. This includes the ability to access any available balance and to submit evidence in defense of consumers' disputes. Predictably, the regulatory action against Defendants has triggered a wave of chargebacks. By failing to challenge these chargebacks, the Defendants will "lose" the chargeback; on the other hand, if the Temporary Receiver provides evidence that consumers authorized transactions, additional funds may be preserved for eventual distribution by the Court. Stripe has offered, and remains willing, to assist the Temporary Receiver in the chargeback process.

It is axiomatic that a receiver has no rights against third persons other than those the defendant could have asserted. The Temporary Receiver is no exception. The governing agreements are explicit that funds resulting from charges are held in a pooled clearing account to which Defendants have "no rights."[1] Accordingly, the Temporary Receiver has no rights to these funds. Further, these funds are held in a Canadian account. While the TRO requires Defendants to repatriate funds, it does not impose that requirement on Stripe, and also prohibits interference with any order imposed by a foreign agency or regulator, including the Ontario Securities Commission. In any event, as Stripe releases funds from the reserve account, they will be available to the Temporary Receiver.

Please contact me should you wish to discuss further. Stripe reserves all rights in connection with the TRO.

Sincerely,

Jonathan B. Engel

---

[1] Stripe Services Agreement (CA), § C.8.