# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TRADERS GLOBAL GROUP, INC., a New Jersey corporation, d/b/a "MY FOREX FUNDS"; TRADERS GLOBAL GROUP INC., a Canadian business organization; and MURTUZA KAZMI, <br><br> Defendants. | Civil Action No. 3:23-cv-11808 |

**STRIPE, INC.'S OPPOSITION TO TEMPORARY RECEIVER'S PROPOSED ORDER COMPELLING TURNOVER OF FUNDS IN FINANCIAL ACCOUNTS AND GRANTING RELATED RELIEF IN ACCORDANCE WITH STATUTORY RESTRAINING ORDER[1]**

---

[1] Hereinafter referred to as the "Opposition."

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................2

        ARGUMENT....................................................................................6

I.     The Reserve is The Property of Stripe ......................................................6

II.    The Temporary Receiver Sits in The Position of Defendants And Thus Has No Right To The Reserve ..................................................................7

        CONCLUSION ................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*SEC v. Cherif*,
   933 F.2d 403 (7th Cir. 1991). ....................................................................................... 7

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
   927 F.3d 830 (5th Cir. 2019)........................................................................................ 8

**Statute**

15 U.S.C. §§ 1666 *et seq*........................................................................................................ 3

Stripe, Inc. (Stripe) opposes the Temporary Receiver's proposed order (Proposed Order) [DE 44] that purports to "clarify" that the Statutory Restraining Order (SRO) entered by the Court on August 29, 2023 [DE 13] extends to funds owned and controlled by Stripe and to which Defendants have no legal or equitable claim.

The Temporary Receiver has articulated no legal basis – to Stripe or to the Court – for transferring Stripe's assets to the Temporary Receiver. Instead, without prior notice to Stripe, without a motion, and without the courtesy of transparency that Stripe has granted to the Temporary Receiver, the Temporary Receiver filed a "proposed order" following an off-the-record hearing, which attempts to wrongfully convert assets that clearly belong to Stripe with a mere parenthetical. The Court should not condone the Temporary Receiver's gamesmanship for three main reasons:

*First*, Stripe has preserved the status quo here by setting aside approximately $6.2 million, an amount equal to the value of reserved funds associated with Defendants' accounts.

*Second*, the Temporary Receiver cannot dictate its orders to this Court. The Temporary Receiver must make a motion, like any other litigant, supported by facts and legal authority, in support of its position. Stripe should then have the opportunity to respond to the Temporary Receiver's motion, rather than having to

make arguments in a vacuum on an expedited basis. The assets at issue are material, and they are being preserved. There is no reason for the Court to decide this issue without full briefing.

*Third*, the assets at issue unambiguously belong to Stripe. The Defendants have no claim to them, and neither does the Temporary Receiver.

## BACKGROUND

The facts that are critical to this Opposition are substantially similar to those that give rise to Stripe's motion to intervene in this matter. For the Court's convenience, Stripe restates relevant facts here.

### Stripe's Role And The Creation Of Reserves

Stripe provides merchants with a technology solution that enables them to accept payment card payments. When a customer makes a purchase on the website of a merchant that has contracted with Stripe, Stripe checks the formatting of the card information and transmits it, through card networks, to the customer's card-issuing bank. The bank verifies whether the customer has sufficient funds and, if so, places a hold on their account in the amount of the transaction. Merchant transactions are batched daily and funds are transferred from the issuing bank to Stripe, which holds those funds in an omnibus pooled clearing account.

Ordinarily, Stripe will pay funds from a clearing account to a merchant's bank account, after deducting its fees, on a periodic basis. The merchant has no

right to funds in Stripe's clearing account. Stripe's transfer of funds to the merchant may be delayed as a result of the credit risk to Stripe, which may arise from customer disputes or a merchant's likely insolvency. In that case, Stripe will delay a transfer or hold funds in the clearing account as a reserve.

The use of reserves is common among payment processors and critical to the function of the payments system. Stripe uses reserves primarily to ensure that Stripe is reimbursed for amounts that a merchant is required to return when customers submit disputes to their issuing banks regarding charges made by the merchant. These disputes – known as "chargebacks" – are the payment systems' tool for compliance with the Fair Credit Billing Act, 15 U.S.C. §§ 1666 *et seq.,* and payment card network rules. Any chargeback resulting in a dispute with the card network immediately reverses the transaction and pulls funds and associated fees from Stripe's pooled account. Stripe deducts this disputed amount and a fee from the merchant's stated balance, and the merchant has an opportunity to contest the chargeback. If the merchant lacks available funds to cover the chargeback, Stripe must cover the loss caused by the chargeback.

To mitigate this risk, and ensure that Stripe meets its obligations as a key participant of the payments ecosystem, Stripe often holds reserves for certain merchants to be used to satisfy consumer chargeback demands. The Stripe Services Agreement (SSA), to which merchants must agree when opening an account with

3

Stripe, clearly states that Stripe has unilateral discretion to impose conditions on the transfer of funds from the clearing account to a merchant. Per those same terms, any funds contained within a Stripe clearing account do not become assets of the merchant until they are transferred to a merchant's bank account. The reserve is the property of Stripe until Stripe determines, in its sole discretion, that there are funds available to cover applicable risks.

**Defendant's Merchant Accounts With Stripe**

Stripe, through the e-commerce platform WooCommerce, provided payment processing services to Defendants in connection with their operation of the website myforexfunds.com. Through WooCommerce, Defendants opened two Stripe accounts: a U.S. account opened by Murtuza Kazmi on February 8, 2021, and a Canadian account opened by Murtuza Kazmi on November 30, 2022.

Consistent with industry practice, Defendants were required to agree to the terms of the country-specific SSA, including the provisions regarding reserves, when they opened each Stripe account. With respect to the Canadian account, which is the only account for which Stripe currently holds a reserve, the applicable SSA unequivocally provides that Defendants "have no rights" to these funds. *See Stripe Emergency Motion to Intervene, Ex. I (Stripe Services Agreements (CA), § C.8 (Last updated: July 13, 2023).* Stripe's clearing account for Canadian merchants is in the name of Stripe Payments Canada LTD, a wholly owned

4

subsidiary of Stripe, Inc., at Peoples Trust Company. Based on its current assessment of risk, which it continually reassesses, Stripe has set the reserve to release funds to Defendants in October 2025 due to the high risk of chargebacks. Until then, the reserve funds remain Stripe's property.

**Procedural Background**

Stripe has been working with the Temporary Receiver in good faith to reach a mutually acceptable resolution of this issue. Notwithstanding Stripe's attempts at resolution, in the morning of September 20, 2023, Stripe learned that the Temporary Receiver had filed the Proposed Order. Stripe only learned of the Proposed Order because of its own efforts to track the docket. Neither the Temporary Receiver, nor Defendants, nor Plaintiff saw fit to inform Stripe that the Temporary Receiver was petitioning the Court to seize Stripe's property without legal support or a factual explanation of the business and contractual relationship among Defendants and Stripe.

Stripe contacted the Court's chambers shortly after learning of the Proposed Order and informed the Court that it would seek to intervene in this action to defend its interests. The Court scheduled a teleconference for 9:00 a.m. Eastern Standard Time on September 21, 2023 to discuss Stripe's intervention, and instructed Stripe to submit papers laying out its basis for intervention and opposing the Proposed Order prior to that teleconference. *See* [DE 45].

# ARGUMENT

## I. THE RESERVE IS THE PROPERTY OF STRIPE

The Temporary Receiver's Proposed Order purports to clarify that Stripe must transfer the reserve funds held back by Stripe in connection with transactions processed through Defendants' merchant accounts. Yet, the reserve funds sought by the Temporary Receiver belong to Stripe, not Defendants, and thus are not subject to the receivership.

Ownership of the reserve funds is governed by the applicable SSA, which defines the contractual relationship between Stripe and Defendants. The SSA is clear: reserve funds remain Stripe's property until all contractual conditions for the release of funds are met, at which time Stripe would transfer funds from the clearing account or reserve account to the merchant's bank account. Defendants have "no rights" to reserve funds held in a pooled clearing account. Until the conditions of release have been met and the funds are actually transferred to Defendants, the full amount of the reserve funds held by Stripe are Stripe's property. Indeed, if the Defendants themselves demanded the transfer of funds in the Stripe clearing account, they would have no right in law or contract to effect such a transaction. The Temporary Receiver cannot merely wish this allocation of property rights away.

There is good reason for Stripe's ownership interest in and control over the reserve. As Stripe has repeatedly informed the Temporary Receiver, the reserve exists to pay chargeback demands from consumers. Stripe is obligated to maintain the reserve not merely to insulate itself from credit risk, but to pay legitimate chargebacks in compliance with consumer protection laws and Stripe's contractual obligations to other members of the payments ecosystem such as the card networks. The Proposed Order calls for a result that is impermissible both as a matter of law and equity. First, the Temporary Receiver demands that Stripe "freeze" chargebacks, which Stripe simply has no power to do, and in any event this would deprive consumers of their statutory right to contest charges to their payment cards. Second, the Temporary Receiver demands that Stripe transfer the "reserve account" to the Temporary Receiver, which would leave Stripe directly on the hook for paying chargebacks initiated by customers of Defendants without recourse. Stripe's contractual agreements with Defendants foreclose such a result.

The contents of the reserve are the assets of Stripe. A court cannot obtain equitable relief over assets of a non-party against whom no wrongdoing is alleged. *See SEC v. Cherif*, 933 F.2d 403, n.11 (7th Cir. 1991).

## II. THE TEMPORARY RECEIVER SITS IN THE POSITION OF DEFENDANTS AND THUS HAS NO RIGHT TO THE RESERVE

The Temporary Receiver was appointed "with the full powers of an equity receiver for Defendants and their affiliates and subsidiaries owned or controlled by

7

Defendants (hereinafter referred to as the 'Receivership Defendants'), and of all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants." SRO ¶ 29.

Under the plain terms of the SRO, the Temporary Receiver is authorized to take control of Defendants' "assets," which are defined as:

> any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

SRO ¶ 15. The SRO does *not* apply to assets in which the Defendants have a contingent interest that might be realized at some future date, but only to "existing assets and assets *acquired* after the effective date of this Order." *Id.* ¶ 20 (emphasis added).

It is black-letter law that a receiver has no authority over property that does not belong to the entities for which the receiver was appointed. *See, e.g.*, *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. 2019). In

8

other words, a receiver has no rights against third parties other than those the receivership entities could have asserted. The Temporary Receiver is no exception.

Accordingly, the Temporary Receiver has no rights to these funds because Defendants would have no right to the funds Stripe holds in its own clearing account. Rather, as Stripe releases funds from the reserve, they will be made available to the Temporary Receiver just as they would have been made available to Defendants.

## CONCLUSION

For the foregoing reasons, the Court should decline to enter the Proposed Order and permit Stripe to assert a claim for declaratory judgment regarding Stripe's interest in the Reserve.

September 20, 2023

                                                    DAVIS WRIGHT TREMAINE LLP

                                                   /s/ Michael V. Rella
                                                   Michael V. Rella
                                                   1251 Avenue of the Americas, 21st Fl.
                                                   New York, NY 10020
                                                   (212) 880-3973
                                                   michaelrella@dwt.com

                                                   Jonathan B. Engel (*pro hac vice* pending)
                                                   Elizabeth L. Davis (*pro hac vice* pending)
                                                   Thomas P. DeFranco (*pro hac vice* pending)
                                                   1301 K Street NW, Ste. 500 East
                                                   Washington, D.C. 20005

(202) 973-4219
jonathanengel@dwt.com
elizabethdavis@dwt.com
tomdefranco@dwt.com

*Attorneys for Non-Party Stripe, Inc.*