Anthony J. Staltari (Attorney ID. No. 233022017)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (415) 875-6600
anthonystaltari@quinnemanuel.com

Michael Shaheen, III (*pro hac vice*)
Robert A. Zink (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

Dakota Speas (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Commodity Futures Trading Commission, | Case No.: 3:23-cv-11808 |
| *Plaintiff*, | **SUPPLEMENTAL DECLARATION OF DAKOTA SPEAS IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY ORDER GRANTING PLAINTIFF'S MOTION FOR AN *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF** |
| v. | |
| Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi, | |
| *Defendants*. | |

I, Dakota Speas, declare pursuant to 28 U.S.C. § 1746 that:

1

1. I am a member in good standing of the bar of the State of California and an associate at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I was admitted *pro hac vice* in this case on September 18, 2023 (ECF 39). I am one of the attorneys representing Defendants Traders Global Group Incorporated, a New Jersey corporation doing business as "My Forex Funds," Traders Global Group Incorporated, a Canadian business organization, and Murtuza Kazmi (collectively, "Defendants"). I make this declaration upon facts known to me or upon information and belief.

2. This declaration is submitted in further support of Defendants' Motion to Modify Order Granting Plaintiff's Motion for an *Ex Parte* Statutory Restraining Order, Appointment of Temporary Receiver, and Other Equitable Relief (ECF 42).

3. In the parallel proceeding against Defendants in Canada, the Ontario Securities Commission ("OSC") issued Freeze Directions over Defendants' Canadian assets, including (1) accounts held with the Bank of Montreal, Edward Jones, and Canadian Imperial Bank of Commerce, (2) Mr. Kazmi's personal residence located in Ontario, Canada, (3) Defendant Kazmi's three apartment residences located in Mississauga, Ontario, (4) Defendant Kazmi's automobiles, and (5) a Bitbuy cryptocurrency account.

4. Since the Statutory Restraining Order ("SRO") (ECF 13) was entered in this case, I have communicated with the Temporary Receiver on a near-daily basis to provide information in response to the Temporary Receiver's numerous requests and to ensure that the Temporary Receiver is appropriately preserving the Receivership Estate.

5. Defendants presented the CFTC and Temporary Receiver with a proposal for reasonable exemptions to the SRO for living and legal expenses. Neither the CFTC nor the Temporary Receiver have provided definitive positions on Defendants' proposal, however; the

Temporary Receiver and the CFTC have indicated that definitive positions are forthcoming. Exhibit 1 (September 22, 2023 Email Correspondence Regarding Carve-Out Proposal). Furthermore, the Temporary Receiver has suggested he is not inclined to grant certain exemptions (*e.g.*, the mortgage for Mr. Kazmi's home) until he seizes more money. Exhibit 2 (September 20, 2022 Email Correspondence Regarding Carve-Out Proposal).

6. Defendants provided the CFTC and the Temporary Receiver access to their financial accounts so that the CFTC and Temporary Receiver could monitor them. Exhibit 3 (September 10, 2023 Letter from R. Zink to S. Placona and A. Burden); Exhibit 4 (September 26, 2023 Letter from D. Speas to S. Placona and A. Burden).

7. It has been nearly four weeks since the Temporary Receiver was appointed, yet he has taken no action to address thousands of chargeback requests against Defendants' accounts that have been initiated in response to the CFTC's complaint. We continue to meet and confer about this process in good faith, including by involving Stripe, but we have been unable to agree upon a solution that the Temporary Receiver, the CFTC, and Defendants accept.

8. As a result of the Temporary Receiver's failure to take action regarding the chargeback requests, up to millions of dollars are being lost on a daily basis. The Temporary Receiver has known for weeks that the impending chargeback requests could cause the receivership estate to lose millions of dollars if they go unaddressed. Representatives from WooCommerce and Stripe told me that they informed the Temporary Receiver accordingly weeks ago.

9. The Temporary Receiver has also known for weeks that Defendants have been frozen out of their account with Stripe, the credit card processing company, since the SRO went into effect. Exhibit 5 (Email Correspondence Regarding Stripe).

10. Stripe is not the entity which provides the interface to dispute chargebacks, WooCommerce is.

11. I was informed that WooCommerce has been offering to assist the Temporary Receiver with addressing chargebacks for weeks.

12. It appears that not until after I sent the Temporary Receiver a letter on September 15 demanding immediate action in response to the chargebacks did the Temporary Receiver obtain access to the chargeback portal, even though access was offered much earlier. Exhibit 6 (September 15, 2023 Letter from D. Speas to A. Sodono); Exhibit 7 (Email Correspondence Regarding Stripe Access).

13. Still, no progress has been made to review and to dispute the chargebacks.

14. Counsel for the Temporary Receiver and for Defendants have continued to confer in good faith on this issue.

15. Defendants' credit card processing provider, Stripe, Inc., has confirmed that no one is in a better position to address these chargebacks than Defendants' personnel who are familiar with the system and the business, yet the Temporary Receiver has not stepped aside, insisting that he should direct the chargeback review process and have the right to abort it "at any time" in his "sole discretion . . . given the limited funds currently on hand." Exhibit 8 (Email Correspondence re Chargeback Remediation).

16. On September 22, 2023, the Temporary Receiver received a message from Stripe's counsel confirming what Defendants have been saying all along: no one is in a better position to address the chargebacks than Defendants' personnel, given that they are familiar with the chargeback dispute process and have all of the necessary information at their fingertips. Exhibit 9 (Email Correspondence re 911 Chargeback).

17. Only after the Temporary Receiver filed his opposition brief did he agree that Defendants' contractors should be involved in reviewing the chargebacks, albeit with a number of unreasonable, impractical caveats proposed in collusion with the CFTC. Exhibit 8.

18. Despite the Temporary Receiver more recently paying lip service to the reality that this issue needs to be addressed immediately, he has not solved the chargeback problem.

19. On September 25, 2023, I had a call with the Temporary Receiver and his counsel to discuss the chargebacks pending against Defendants' accounts. We spent nearly an hour on the phone discussing potential solutions in good faith, but we were not able to reach a final agreement. The Temporary Receiver indicated that he needed to confer further with the CFTC. During the call, counsel for the Temporary Receiver indicated that the Temporary Receiver is not independently equipped to review and to dispute the pending chargebacks himself.

20. Currently, millions of dollars in chargeback losses are pending, and with each passing day that they go unaddressed, they will be automatically granted and siphoned from the estate, regardless of their merit.

21. The Temporary Receiver's failure to timely address the pending chargebacks has already caused the estate to lose unknown sums of money, potentially up to millions of dollars.

22. At the outset of this case, the Temporary Receiver's counsel represented that the Temporary Receiver intended to store money collected from the estate in a general trust account owned by the Temporary Receiver's law firm. When I pressed whether this is where the Temporary Receiver is keeping the money he has seized so far, the Temporary Receiver's counsel refused to answer the question. Exhibit 10 (Email Correspondence re Addressing Various Points from Recent Calls).

23. "TXINS" and "TXBAL" are common bank codes used to designate tax payments

to the Canadian government. Exhibit 11 is a true and correct copy of a document from JP Morgan's website showing the meaning of these codes. (Tax Filing and Payments - Government Tax Types, available at https://www.jpmorgan.com/content/dam/jpm/treasury-services/documents/canada-tax-payment-authorities.pdf).

I declare under the penalty of perjury that the foregoing statements are true and correct. Executed in Los Angeles, California, United States on this 26th day of September 2023.

Dakota Speas