Exhibit 8

| | |
|---|---|
| **From:** | Michele M. Dudas <MDudas@MSBNJ.COM> |
| **Sent:** | Tuesday, September 26, 2023 12:17 PM |
| **To:** | Dakota Speas; Paulson, Katherine; Engel, Jonathan |
| **Cc:** | Streit, Elizabeth M.; Burden, Ashley; Robert Zink; Michael Shaheen; Matthew Feibert; Isabelle Sun; Anthony Sodono; Sari B. Placona; QE-CFTC |
| **Subject:** | RE: [EXTERNAL] Chargeback Remediation |

**[EXTERNAL EMAIL from mdudas@msbnj.com]**

Dakota,

While your e-mail addresses your disclosure of an operations manager (which may have also been referred to as an organizational manager during our call) (the "OA") overseeing the process, the proposal set forth below is not accurate, in that it contemplates Mr. Kazmi having more control than we discussed.  To confirm, we were informed that Mr. Kazmi would have minimal oversight over the chargeback process, and the majority of the interaction would be done through the OA particularly in terms of providing instructions to the contractors, setting shifts and other similar responsibilities.     This will confirm that the Temporary Receiver would agree to provide Mr. Kazmi with limited access to communicate with the OA, conditioned upon the requirement discussed on the call wherein Temporary Receiver being included and involved in *all* discussions and communications with the OA.  Mr. Kazmi would have no other role or access to information.  Please advise as to the identity and location of the intended OA.

As for the balance of your e-mail, we disagree with your interpretation of what the SRO requires, however, we do not want to continue to debate the issue through emails.  We are only interested in results and moving a Consent Order along for the chargebacks (and a separate Consent Order relating to the expenses).   Please confirm so we can include all terms and conditions in a Consent Order we can circulate and finalize *today*.  Time is of the essence.

Thank you.

Michele M. Dudas, Partner
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
**Direct Dial:** 973-721-5021
**Email:** MDudas@MSBNJ.COM
Website

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Dakota Speas <dakotaspeas@quinnemanuel.com>
**Sent:** Tuesday, September 26, 2023 2:12 AM
**To:** Michele M. Dudas <MDudas@MSBNJ.COM>; Paulson, Katherine <KPaulson@CFTC.gov>; Engel, Jonathan <JonathanEngel@dwt.com>
**Cc:** Streit, Elizabeth M. <estreit@CFTC.GOV>; Burden, Ashley <ABurden@CFTC.gov>; Robert Zink <robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>; Anthony Sodono

<ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>; QE-CFTC <qe-cftc@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] Chargeback Remediation

Michele:

To summarize the call we had earlier today, in pertinent part:

- The Temporary Receiver is open to letting Mr. Kazmi provide basic instructions to get the chargeback remediation process underway, and the Temporary Receiver is also open to letting Mr. Kazmi maintain visibility into the process (so this is not occurring behind closed doors).  In the event that the Temporary Receiver or Defendants believe that the process is not working and changes need to occur, all parties reserve their rights to seek judicial relief, if necessary.
- An operations manager would handle the day-to-day administration of the project and report back to all parties with regular status updates.
- The Temporary Receiver can pay the funds to the overseas contractors for their work on this project.

I have not yet received the CFTC's view on this proposal, and I do not know where the CFTC stands now relative to the last counterproposal Ashley sent on Monday.  Ashley, please advise.

Finally, we reject your assertion that Defendants have thwarted their obligations under the SRO and have failed to respond to the Temporary Receiver's requests.  As you know, I have conferred with you on a near daily basis since this case began, both in writing and over many hours of telephone calls, to provide information from Defendants in response to the Temporary Receiver's numerous and burdensome requests.  There is no obligation for Defendants to provide the affidavits you seek under the SRO, yet in the interest of transparency, we provided an affidavit from Rafi Alvi regarding the retainer Quinn Emanuel received.  The many requests the Temporary Receiver has issued are being addressed on an ongoing basis in the interest of providing complete and accurate information.  You know that Defendants have provided much of the information the Temporary Receiver has asked for already (indeed, the Temporary Receiver admitted this in his opposition brief filed on Friday).  In short, the self-serving statements in your email to the contrary are not well received.

As a reminder, the Temporary Receiver's duty to preserve the value of the receivership estate is not dependent on the amount of money he manages to seize.  To the extent the Temporary Receiver aborts projects that are necessary to remediate or to mitigate losses to the estate, Defendants reserve all rights, including to move for his immediate removal.

Best,
Dakota

---

**From:** Michele M. Dudas <MDudas@MSBNJ.COM>
**Sent:** Monday, September 25, 2023 8:50 AM
**To:** Dakota Speas <dakotaspeas@quinnemanuel.com>; Paulson, Katherine <KPaulson@CFTC.gov>; Engel, Jonathan <JonathanEngel@dwt.com>
**Cc:** Streit, Elizabeth M. <estreit@CFTC.GOV>; Burden, Ashley <ABurden@CFTC.gov>; Robert Zink <robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** RE: [EXTERNAL] Chargeback Remediation

**[EXTERNAL EMAIL from mdudas@msbnj.com]**

---

Dakota,

We seek to clarify your interpretation of the terms and conditions as well as put an end to any self-serving statements and allegations being made by the Defendants against the Temporary Receiver.   Your clients' position is also confusing, as the terms the Defendants proposed were generally accepted, subject to additional terms and conditions to safeguard the Receivership Estate and in consideration of the position of the CFTC.

As an initial matter, the participation of the contractors will remain in the Temporary Receiver's sole discretion – this is non-negotiable.  So we are clear, if Mr. Kazmi interferes with the process  or fails to act in good faith with the Temporary Receiver in any respect, this arrangement will cease immediately, without any further input.  You state that walling off Mr. Kazmi and his counsel is not practical, but why would Quinn Emanuel's involvement be needed at all?   The Temporary Receiver would consider allowing Mr. Kazmi limited access solely for assigning the contractors and providing basic instructions for the task they are hired for, including providing updates to the Temporary Receiver on a daily basis.

Moreover, this arrangement is being made based upon the inability (or refusal) of Chargeback911 to engage in discussions with the Temporary Receiver to determine if it is an acceptable alternative, and the inexplicable failure of Stripe and/or Woo Commerce providing the Temporary Receiver with the level of access required.  We need to agree to move this forward *now* to avoid any unnecessary losses.   Finally, and perhaps most importantly, addressing your "second" point, based upon the Defendants' willful failure and refusal to voluntarily turn over funds and control of assets to the Temporary Receiver as required under the SRO (which, in some cases, was required within 24 hours), the funds on hand to support this operation are very limited, and must be analyzed to determine the cost, and benefit to the receivership estate, on a temporal basis.

Based upon your cost estimates set forth below, the Temporary Receiver will pay for this cost from the Receivership Estate and then reassess within 30 days (assuming the arrangement is not terminated prior to that time for the reasons set forth above).   Even more critically, despite the Temporary Receiver asking for an Affidavit of Mr. Kazmi for approximately three (3) weeks as to: (a) how he is surviving without use of funds, including paying bills and purchasing goods and services, (b) whether he has any cash (especially since he has admitted to paying cash for certain expenses), or (c) whether he has spent any cash since August 29, 2023, he refused to submit the Affidavit.  Also, his "friend" Rafi Alvi finally submitted his Affidavit late on Thursday last week, but we asked for a representation whether Mr. Alvi has ever done business with any of the Defendants, or ever received funds directly from the Defendants, which is glaringly absent from the Alvi Affidavit.    Until that is provided, the Temporary Receiver will not extend beyond the first 30 days.  Mr. Kazmi cannot continue to thwart his obligations under the SRO and ignore the Temporary Receiver's basic requests.

As to your third point, the Temporary Receiver would agree to have the contractors provide instructions on how to reach the Temporary Receiver (by providing our website or some other notification protocol). The contractors should make it clear that any communication with any financial institution/bank is on behalf of "Anthony Sodono, III, the Temporary Receiver for Traders Global Group Inc."

The providing of daily updates is also non-negotiable, and we are happy your clients agree to same.

We are mindful of the holiday but we expect to have this finalized by the end of the day today so we must hear from you immediately, including any position the CFTC has.  Any delay is not through any fault of the Temporary Receiver, and we request everyone's full attention to this pressing issue.  Thank you.

Michele M. Dudas, Partner
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
Direct Dial: 973-721-5021
Email: MDudas@MSBNJ.COM
Website

**Connect with MS&B on** LinkedIn | Twitter | Instagram

**From:** Dakota Speas <dakotaspeas@quinnemanuel.com>
**Sent:** Friday, September 22, 2023 11:05 PM
**To:** Michele M. Dudas <MDudas@MSBNJ.COM>; Paulson, Katherine <KPaulson@CFTC.gov>; Engel, Jonathan <JonathanEngel@dwt.com>
**Cc:** Streit, Elizabeth M. <estreit@CFTC.GOV>; Burden, Ashley <ABurden@CFTC.gov>; Robert Zink <robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** RE: [EXTERNAL] Chargeback Remediation

Counsel:

We appreciate that everyone recognizes now that the most efficient and cost-effective way to mitigate chargeback losses is by engaging Defendants' overseas contractors to review and to dispute chargebacks as appropriate.  However, the Temporary Receiver is not capable of managing this process by himself, and no one has suggested a practical way in which Mr. Kazmi or his counsel could be "walled off" from the process.  To put the contractors under the sole supervision of the Temporary Receiver will just lead to more inefficiencies, asset dissipation, and confusion than the Temporary Receiver's ongoing delay to address this issue has already caused.  It is a practical reality that Mr. Sodono and his colleagues are not equipped to deal with this kind of issue independently.  (Has Mr. Sodono ever supervised a team of chargeback reviewers?)  Preserving the estate is not something that is left to the Temporary Receiver's "sole discretion"—this has to be done, and the Temporary Receiver continues to instill doubt in his ability to do so.

Second, leaving payment to the Temporary Receiver does not make sense when he is not promising to continue to pay them.  (If he would commit to paying them until this necessary process is complete, that would be a different story.)  Again, he is not instilling confidence in his ability to manage this correctly.

Third, it not efficient or reasonable to submit copies of the CFTC's complaint and SRO with every chargeback dispute.  Some chargeback disputes (e.g., disputes for unauthorized charges), have nothing to do with the CFTC's allegations, and submitting the complaint and SRO in response to such chargebacks would make zero sense.  Also, the Complaint and the SRO would not be reaching consumers—just the banks.  The bank is not going to hold a mini-trial on the CFTC's allegations when reviewing each chargeback dispute.  This will just lead to greater confusion and inefficiencies.  Given that the CFTC's Complaint and the SRO are already public, this serves no rational purpose.

Having said all this, the part about providing daily updates to the Temporary Receiver makes sense.  It is my understanding that such reports on chargeback status can be generated automatically, and we have no objection to sharing those with all parties.  If the CFTC wishes to share its Complaint and the SRO directly with cardholders who request chargebacks, it is free to do so after reviewing the logs of chargebacks.

In short, most of the caveats proposed are untenable.  Defendants' contractors can do this in full transparency to the CFTC and the Temporary Receiver, but the Temporary Receiver is not equipped to manage this process alone, behind closed doors.

Best,
Dakota

**From:** Michele M. Dudas <MDudas@MSBNJ.COM>
**Sent:** Friday, September 22, 2023 3:47 PM
**To:** Paulson, Katherine <KPaulson@CFTC.gov>; Dakota Speas <dakotaspeas@quinnemanuel.com>; Engel, Jonathan <JonathanEngel@dwt.com>
**Cc:** Streit, Elizabeth M. <estreit@CFTC.GOV>; Burden, Ashley <ABurden@CFTC.gov>; Robert Zink

<robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Sari B. Placona <SPlacona@MSBNJ.COM>
**Subject:** RE: [EXTERNAL] Chargeback Remediation

**[EXTERNAL EMAIL from mdudas@msbnj.com]**

Counsel,

In weighing the Temporary Receiver's duties and responsibilities, including but not limited to the preservation of the receivership estate, and the balancing of the positions of the respective parties, so as to address the immediate pressing concern of the chargeback disputes, the Temporary Receiver will agree to utilize the proposal set forth in Mr. Speas's September 21, 2023 e-mail received at 10:34 p.m. (EST), *modified* to include the three proposed terms and conditions of the CFTC set forth below in Ms. Paulson's e-mail of this date received at 5:24 p.m. (EST), and the ***additional and/or clarifying*** conditions/agreement that:

(1) the access by any of the contractors can be rescinded or modified by the Temporary Receiver ***at any time*** in his sole discretion.  At a minimum, assuming access is not rescinded prior to that time, the Temporary Receiver will revisit this proposal in thirty (30) days, given the limited funds currently on hand;
(2) expanding on the additional terms proposed by the CFTC:
   a. explanation/proposal by Defendants how Mr. Kazmi and his counsel will be walled off from the process; and
   b. the contractors must agree to report on chargebacks made, the status of the review/dispute, and any specific notes and comments associated with the disputes, to Temporary Receiver on a daily basis.

The Temporary Receiver also agrees that Stripe and/or WooCommerce should work collaboratively with the Temporary Receiver and his professionals and, at a minimum, provide the previously requested analysis of the chargebacks received to date (for instance, it is unclear what the total number of chargebacks to date are, and if the estimated number of 500 charge backs per day is an accurate number), and new login credentials for the Temporary Receiver, as offered by Stripe's general counsel on September 8 (which credentials would provide unfettered access to review the account).

Please confirm we are all in agreement so we can finalize this resolution and start the process ASAP.  Thank you.

Michele M. Dudas, Partner
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
Direct Dial: 973-721-5021
Email: MDudas@MSBNJ.COM
Website

Connect with MS&B on LinkedIn | Twitter | Instagram

**From:** Paulson, Katherine <KPaulson@CFTC.gov>
**Sent:** Friday, September 22, 2023 5:24 PM
**To:** Dakota Speas <dakotaspeas@quinnemanuel.com>; Sari B. Placona <SPlacona@MSBNJ.COM>; Anthony Sodono

5

<ASodono@MSBNJ.COM>; Engel, Jonathan <JonathanEngel@dwt.com>; Streit, Elizabeth M. <estreit@CFTC.GOV>
**Cc:** Burden, Ashley <ABurden@CFTC.gov>; Michele M. Dudas <MDudas@MSBNJ.COM>; Robert Zink <robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] Chargeback Remediation

All,

It is difficult for the CFTC to evaluate or provide our position on the reasonableness of much of Defendants' proposal.  For example, we do not know if the systems that Defendants identified are, in fact, the only systems that someone would need and whether those systems are, in fact, accessible.  We also do not know who these "contractors" are or whether the rates Defendants propose are reasonable (since rates presumably should be based on many factors, including the individuals' location, expertise, prior pay, reasonable rate for such services, etc.).  We also do not have the information we would need to evaluate if Defendants propose a reasonable expected rate of review (60 contractors reviewing 1,440 chargebacks per day)—Defendants do not say how they arrived at that number.  Also, I will note that Defendants' proposal presumes that Stripe has received and will continue to receive 500 charge backs per day.  I believe Jonathan gave us that number during our call last night, but caveated that we should not quote him on it and it may not be accurate.  It seems that someone at Stripe knows those specifics, and it is essential for the Temporary Receiver to know the accurate numbers ASAP and on an ongoing basis.  The rate surely is not static.

All that being said, at this time the CFTC defers to the Temporary Receiver on whether he believes it is appropriate to use the assets in his possession to employ these contractors, or if it believes he should use a different process or no process at all.  If the Temporary Receiver decides to use these contractors, we also defer to the Temporary Receiver at this time on how many to employ, how much to pay them, how to track whether they're making appropriate progress, and other such terms.  <u>But, if the Temporary Receiver decides to employ these contractors, it is the CFTC's position that</u>:

- the contractors must report to the Temporary Receiver and the Temporary Receiver should oversee this process, not Mr. Kazmi or his counsel.
- As part of this and importantly, the Temporary Receiver should control how any contractor is paid, and Mr. Kazmi and his counsel should not be involved.
- If any charge back is disputed, the "Documentation" provided to the bank should include a copy of (1) the CFTC's complaint; and (2) the Court's Statutory Restraining Order.

Finally, we expect that Stripe will work collaboratively with the Temporary Receiver to get him any data or information that he needs to understand how quickly contractors are reviewing chargebacks, how many they are disputing and on what basis, how many chargeback requests are coming in, and any other information Stripe has access to that could assist the Temporary Receiver in overseeing this process.  Jonathan – it may not be appropriate for the Temporary Receiver to have to work through you on all this since you are outside counsel and I believe you told us you do not have direct access to this information.

Of course, the CFTC reserves its right to dispute all this in the future if, for example, there appears to be a misuse of funds, anyone is inappropriately disputing chargebacks, or we believe that any party (including Stripe) is not taking appropriate steps to make this process as efficient and cost-effective as possible.

Thank you,

Katie

---

**From:** Dakota Speas <dakotaspeas@quinnemanuel.com>
**Sent:** Thursday, September 21, 2023 9:34 PM
**To:** Paulson, Katherine <KPaulson@CFTC.gov>; Sari B. Placona <SPlacona@MSBNJ.COM>; ASodono@MSBNJ.COM; Engel, Jonathan <JonathanEngel@dwt.com>; Streit, Elizabeth M. <estreit@CFTC.GOV>

**Cc:** Burden, Ashley <ABurden@CFTC.gov>; Michele M. Dudas <MDudas@MSBNJ.COM>; Robert Zink <robertzink@quinnemanuel.com>; Michael Shaheen <michaelshaheen@quinnemanuel.com>; Matthew Feibert <matthewfeibert@quinnemanuel.com>; Isabelle Sun <isabellesun@quinnemanuel.com>
**Subject:** [EXTERNAL] Chargeback Remediation

**CAUTION**: This email originated from outside of CFTC. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM simply block sender and delete the email. If you suspect this to be a phishing attempt, please use the "Report Phishing" button on your Outlook menu bar.

---

Counsel:

Thank you for the call this afternoon.  As I explained, no one is in a better position to address chargebacks than Defendants' chargeback contractors who know the system, the business, and can work quickly.  Chargebacks911 might take off some of the "low hanging fruit," but that will only scratch the surface because Chargebacks911 does not have ready access to all the necessary documentation to dispute charges as appropriate.  Also, the Chargebacks911 service is relatively costly (requiring a setup fee of a few thousand dollars, a per chargeback fee of around $15, and a share of the overall recovery).

It is in the interest of all parties to prevent the dissipation of assets from a flood of unchecked, unmitigated chargebacks, and Defendants have a team ready to handle the job, in full transparency to the CFTC and the Temporary Receiver.  Transaction logs of chargebacks and disputes can be generated to show exactly what is being done.  Defendants would not be communicating with any alleged claimants—just the issuing banks.  Defendants would also not be "deciding" whether chargebacks are granted—that would also be up to the issuing banks.

I have received more information on how Defendants' team of specialists would operate and what the cost would be:

There are now up to 60 contractors available for this project overseas.  At the outset, groups of 20 can work three 8 hour shifts (operating 24/7) to address about 1,440 chargebacks per day.  The cost during this cycle would be about $2,880 per day.

After the team has caught up with the flood of chargebacks, there can be a transition to groups of 8 working three 8 hour shifts, which would address about 570 chargebacks per day.  (The company has been receiving roughly 500 chargeback requests per day since the Complaint was filed.)  The cost during this cycle would be about $1,150 per day.

As set forth in the protocol I circulated, the contractors would need access to limited sets of data to review and to dispute chargebacks.  I've been advised that Brevo and FPFX remain accessible.  Woo admin panel could be turned on again by Woo.  MetaTrader is inaccessible, however, I have been advised that the review and dispute process could proceed even if the contractors only had access to Woo, Brevo, and FPFX.

If no one acts now, the money will go out the door for good, and it will not be there for anyone else later down the line.  Please let me know if this plan is acceptable to the CFTC and/or the Receiver.  I am happy to get on the phone again to discuss.

--Dakota

**Dakota Speas**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3687 Direct

760-580-8847 Mobile
213-443-3000 Main Office Number
213-443-3100 Fax
dakotaspeas@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much.

---