**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III, Esq. (asodono@msbnj.com)
Michele M. Dudas, Esq. (mdudas@msbnj.com)
Sari B. Placona, Esq. (splacona@msbnj.com)
*Counsel to Anthony Sodono, III, Temporary Receiver*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRADERS GLOBAL GROUP INC., a New Jersey corporation, d/b/a "My Forex Funds"; TRADERS GLOBAL GROUP INC., a Canadian business organization; and MURTUZA KAZMI,<br><br>Defendants. | Civil Action No. 3:23-cv-11808-ZNQ-TJB |

**LIMITED RESPONSE OF ANTHONY SODONO, III, TEMPORARY RECEIVER, TO DEFENDANTS' REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION TO MODIFY *EX PARTE* STATUTORY RESTRAINING ORDER, APPOINTMENT OF TEMPORARY RECEIVER, AND FOR RELATED RELIEF**

Anthony Sodono, III, the temporary receiver ("Temporary Receiver") appointed pursuant to this Court's August 29, 2023, Statutory Restraining Order ("SRO") [ECF 13], hereby submits this response to certain portions of the Reply Brief ("Reply") [ECF 73] filed by defendants Traders Global Group Inc., a New Jersey corporation, d/b/a My Forex Funds, Traders Global Group Inc., a Canadian business organization (collectively, "TGG") and Murtuza Kazmi ("Mr. Kazmi") (where appropriate, the TGG entities and Mr. Kazmi will be collectively referred to as "Defendants") in support of their Emergency Motion to Modify the SRO, Appointment of Receiver and Related Relief [ECF 42].  Although the Temporary Receiver is a neutral third-party in this matter, he deemed it necessary to file this response due to the Defendants' egregious allegations against the Temporary Receiver and his counsel and for informational purposes, in response to the Reply, Legal Argument, Section C. The remaining arguments have been responded to by plaintiff Commodities Future Trading Commission ("CFTC") and for which the Temporary Receiver takes no position. [ECF 72].

**PRELIMINARY STATEMENT AND STATEMENT OF RELEVANT FACTS**

Defendants resort to half-truths, fail to present entire facts or misrepresenting others, attack the Temporary Receiver for retaining his law firm after not objecting to such retention, and mimic the Court's comments made at a Status Conference on September 21, 2023, knowing full-well that the Temporary Receiver has been acting independently based upon his business judgment, and without the cooperation required by Defendants under either the letter or spirit of the SRO.  Even more insulting to the creditors and potential victims of fraud and this Court is Mr. Kazmi's failure to disclose to this Court in his Reply Affidavit [ECF 73] that besides the "generosity of friends," he has been using credit cards without any authority from this Court or the Temporary Receiver. Only upon the Temporary Receiver's independent investigation based upon limited access

provided to financial accounts did he discover Mr. Kazmi was using his credit card *after* the SRO was entered, and as late as September 22, 2023 (the last date the credit card account was accessed by the Temporary Receiver). Most insulting is what is being charged – which might be understandable for items such as food and medicine. The charges, however, include purchases at Hand and Stone, Pottery Barn, Home Sense, and The Bay and for which Mr. Kazmi never sought any authority from this Court.

It took an enormous amount of effort for the Temporary Receiver to ultimately obtain information – numerous emails and telephone calls were required to obtain information that should have been turned over immediately under the SRO. Instead, the Defendants made repeated and robotic statements that it is unconstitutional for a temporary receiver to seize the Defendants' assets without an opportunity to be heard, while taking no action for exactly three (3) weeks to bring their Motion or to fully comply with the SRO. The Defendants' actions (and, in many instances, inactions) have intentionally frustrated the Temporary Receiver's duties and obligations under the SRO, and the Defendants seek to be rewarded for this obstructionist conduct by twisting facts to allege the Temporary Receiver is not fulfilling his duties.

**A. Unlike the Defendants, the Temporary Receiver Has No Ulterior Motive with His Rights and Obligations Under the SRO**

In an aggressive and shocking manner, Defendants' Reply accuses the Temporary Receiver with colluding with the CFTC "…to advance his own pecuniary interest." Reply, p. 13. This is perhaps the most ironic and egregious allegation in the Reply, when the Defendants' counsel received a $500,000 retainer from Mr. Kazmi's "friend" on dubious terms, and incredulously sought an additional $750,000 "carve-out" for legal expenses for the month of October 2023 alone. *See Exhibit 1* to Supplemental Declaration of Dakota Speas in support of Reply ("Speas Dec."). Despite their litigious, although dilatory, strategy, Defendants never objected to the Temporary

Receiver's Application to retain McManimon, Scotland & Baumann, LLC ("MSB") [ECF 27], by taking any action by the deadlines imposed by the Court's Text Order respecting the retention [ECF 28], which resulted in the Order approving MSB serving as counsel to the Temporary Receiver.  [ECF 35].

The Defendants also accuse the Temporary Receiver of being "laser-focused on collecting as much money as possible, regardless of constitutional and statutory restraints on his authority." That is the Temporary Receiver's responsibility pursuant to the SRO. Unfortunately, Defendants have attempted to interfere with and continue to thwart that process, which is why the Temporary Receiver joined in the Motion for Contempt ("Contempt Motion") filed by the CFTC [ECF 48]. It is a convenient narrative for the Defendants to twist the joinder into some collusion between the Temporary Receiver and CFTC when, in fact, Mr. Kazmi is the ultimate saboteur.  This Court, however, will see the necessity of the Temporary Receiver's joining in the Contempt Motion when the Defendants clearly and intentionally refused or stalled in complying with their obligations under the SRO for some perceived legal strategy. The sensationalized statement that the Temporary Receiver wants to get as much money in his "own law firm's trust account" is also disingenuous.  The Temporary Receiver, when acting as a fiduciary, always opens separate bank accounts.  Through no fault of the Temporary Receiver, it took longer than usual for the Internal Revenue Service to issue a Tax ID number, which is required for opening of any bank account. To safeguard the funds received from Bank of Montreal ("BMO") (and not from voluntarily turnover from Defendants), the check was deposited in MSB's trust account and subsequently transferred to bank accounts now opened in the name of the receivership and protected by "ICS"– Intrafi Cash Service.  ECF 89.

B.  **SRO Obligations and Deadlines**

The SRO directed the Temporary Receiver to accomplish numerous duties. While the Temporary Receiver has made significant progress, there are still numerous and substantial outstanding items based upon the Defendants' refusal to provide complete cooperation. Fortunately, most of the Defendants' financial accounts have been frozen or suspended by the financial and banking institutions upon learning of the SRO and/or freeze directives in the companion proceeding by the Ontario Securities Commission ("OSC"), not because of Defendants' compliance.  Any modicum of compliance by the Defendants as required under the SRO was delayed, still requires Mr. Kazmi's involvement and control, and in some instances, was met with defiance by Defendants. Part of this illusion of compliance is providing passwords for various websites, which were still trickling in as of the filing of the Reply, and nearly all of which require two-factor authentication–to a phone number or e-mail tied to Mr. Kazmi.  Therefore, the Temporary Receiver cannot access the accounts without Mr. Kazmi's involvement (read: control). Certain login credentials were provided for the first time on September 11, 2023. *See Exhibit 3* to Speas Dec. Credentials for undisclosed accounts with CDO Markets ("CDO") and Gemini were disclosed on September 15, 2023, but access to the accounts was not provided until September 20, 2023, and September 22, 2023. Even the latest round of credentials provided was made on September 26, 2023, at 8:23 p.m. - three (3) hours before Defendants filed their Reply (and not accessed by the Temporary Receiver until October 2, 2023 – again, at the mercy of Mr. Kazmi's availability). The Defendants still brazenly refuse to provide the login information for GoDaddy hosting website.  The only funds on hand by the Temporary are approximately $860,000 received from an American BMO corporate account, which BMO turned over directly to the Temporary Receiver and not because Defendants complied in any respect.  The Temporary Receiver expects

payment by Stablecoin for the Confirmo account located in Slovakia in short order with an estimated value of $2,800,000 USD.

Further complicating matters, late on September 27, 2023, the Temporary Receiver learned for the first time that the OSC took the position that the release of any funds, including for the Stripe chargeback issues or payment of personal expenses of Mr. Kazmi, would violate the OSC's freeze directives, despite the funds of the Receivership Estate coming from US sources, unless and until there was a reciprocal agreement for the payment of said funds from the OSC (the "OSC Position"). On the very same day, the Temporary Receiver and his counsel, particularly Norton Rose, began communications with the OSC to resolve the issues and concerns and continue through this date. The same actions were expected to be taken by the Defendants, but it is unclear what actions, if any, have been taken or accomplished by Defendants.

### C. Stripe Chargebacks

The Defendants allege that the Temporary Receiver is allowing the Receivership Estate to dissipate by failing to initiate chargeback disputes made by the victims of the Defendants. This Court is well-aware of the tortured history respecting the chargebacks, as documented on the record in this matter. Fortunately, through exacting efforts by the Temporary Receiver he negotiated a Stipulation and Consent Order with the Defendants [ECF 75,79].

### **CONCLUSION**

The Temporary Receiver has worked diligently since his appointment to perform under the SRO – collect and preserve Defendants' assets. The Temporary Receiver respectfully requests the Defendants' Motion to relieve Temporary Receiver be denied.

October 10, 2023            /s/ Sari B. Placona
                            SARI B. PLACONA