# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>*Plaintiff*,<br><br>v.<br><br>Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi,<br><br>*Defendants*. | Case No.: 3:23-cv-11808 |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF CFTC'S AND TEMPORARY RECEIVER'S JOINT MOTION FOR ORDER TO SHOW CAUSE WHY <u>DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT</u>

Anthony J. Staltari (Attorney ID. No. 233022017)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (415) 875-6600
anthonystaltari@quinnemanuel.com

Dakota Speas (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

Michael Shaheen, III (*pro hac vice*)
Robert A. Zink (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND .....................................................................................................................3

LEGAL STANDARD ..............................................................................................................6

ARGUMENT ...........................................................................................................................7

I. DEFENDANTS HAVE SUBSTANTIALLY COMPLIED WITH THE SRO ...................8

II. THE CFTC AND TEMPORARY RECEIVER'S ALLEGED SRO VIOLATIONS
DO NOT SUPPORT A FINDING OF CONTEMPT .........................................................10

    A. The $2.8 Million Confirmo Account Is the Subject of a Pending Motion ............10

    B. Defendants Have Provided Access to All Financial Accounts ..............................11

    C. Defendants Have Provided Books and Records .....................................................12

    D. The CFTC and Temporary Receiver Are Frustrating Defendants' Ability
to Provide Electronically Stored Information ........................................................12

CONCLUSION ........................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*CFTC v. Emerald Worldwide Holdings, Inc.*
   WL 3186580, (C.D. Cal. July 29, 2004) .................................................................................9

*F.T.C. v. Lane Labs-USA, Inc.*,
   624 F.3d 575 (3d Cir. 2010) .................................................................................................6, 7

*Fortin v. Comm'r of Mass. Dept' of Pub. Welfare*,
   692 F.2d 790 (1st Cir. 1982) ....................................................................................................8

*John T. v. Del. Cnty. Intermediate Unit*,
   318 F.3d 545 (3d Cir. 2003) .....................................................................................................6

*Robin Woods Inc. v. Woods*,
   28 F.3d 396 (3d Cir.1994) ........................................................................................................7

*SEC v. Cook*
   2010 WL 11537512 (D. Minn. Jan. 25, 2010) .........................................................................9

*SEC v. Telexfree, Inc.*
   164 F. Supp. 3d 187 (D. Mass. 2015) ......................................................................................9

### **Statutes**

7 U.S.C. § 13a-1(a) ........................................................................................................................11

Defendants, Traders Global Group Inc. (New Jersey), d/b/a "My Forex Funds"; Traders Global Group Inc. (Canada) (together "My Forex Funds"); and Murtuza Kazmi respectfully submit this memorandum in opposition to Plaintiff CFTC's and Temporary Receiver's Joint Motion For Order To Show Cause Why Defendants Should Not Be Held In Contempt, ECF No. 48 ("Motion").

## INTRODUCTION

Murtuza Kazmi, the son of a scientist and pharmacist, came from a humble background to found My Forex Funds, a foreign exchange proprietary trading firm (or "prop firm"). A prop firm trades for its own benefit; that is, rather than taking in customers' money, trading that money and making money off commission, it trades its own assets. My Forex Funds recruited individuals who paid a fee to participate in its programs; My Forex Funds then evaluated them for their ability to trade proprietary capital. If successful, the traders then shared in My Forex Funds' success, as they kept a portion of any gains from their trading activities. This model proved fruitful, causing My Forex Funds to grow and prosper and allowing Mr. Kazmi the proudest moment of his life: telling his father he could retire without needing to worry any more about money and helping his sister make a down payment on a home.

The CFTC has decided to destroy Mr. Kazmi and his company. After months of unilateral investigation, the CFTC sought and obtained an *ex parte* Statutory Restraining Order ("SRO") of staggering breadth before Defendants were even aware this action existed. For the past six weeks, the CFTC, in concert with its hand-picked Temporary Receiver, has weaponized that SRO to impose odious burdens on Defendants with dozens of resource-intensive requests while simultaneously denying Defendants access to any resources with which to respond to those requests, let alone defend against the CFTC's ill-informed and deeply flawed allegations. The Temporary Receiver's actions, for his part, have made clear from the moment of his appointment that his priority is not to "preserve assets," ECF No. 13, ¶ 11, but to support the CFTC's case

against Defendants and prevent them from defending themselves. This joint motion for contempt is the latest, and surely not last, salvo in the CFTC and Temporary Receiver's campaign.

Notwithstanding the enormous breadth of the SRO and their near total lack of resources including staff who they cannot pay, Defendants have diligently and in good faith taken great pains to comply with it. They have provided login information to numerous bank accounts—including multiple accounts about which the CFTC and Temporary Receiver had been unaware; they have turned over their website to the Temporary Receiver who promptly replaced it with a self-serving full-page notice (which was only revised after Defendants' repeated requests); they have responded to hundreds of specific requests from both the CFTC and Temporary Receiver. Most importantly, though, they have, with utmost fidelity, respected the order that they not "withdraw[], transfer[], remov[e], dissipate[e] or otherwise dispos[e] of any asset," thereby preserving the status quo—the core purpose of the SRO.[1]

To attempt to paint a picture of non-compliance, the CFTC and Temporary Receiver utterly disregard all of these efforts, instead identifying four minor items which it knew that Defendants disputed and which the CFTC and Temporary Receiver have prevented Defendants from completing due to a an unwarranted restriction on Defendants' ability to use their own resources. But even those four cherry-picked examples fall well short of establishing any violation warranting an order of contempt.

---

[1] Since the SRO went into effect, Mr. Kazmi has been relying on contributions from friends to survive. He has also used a personal credit card to pay for certain living expenses in the interim, but he has not used any cash to pay the balance. Weeks ago, Mr. Kazmi requested reasonable allowances and releases to pay for these living expenses, but neither the Temporary Receiver nor the CFTC has agreed to sign a consent order to that effect.

## BACKGROUND

The CFTC has been investigating Defendants since at least as early as July 2022. ECF No. 23-44, ¶ 4. The CFTC at no point during more than a year of investigation notified Defendants or requested any information from them about My Forex Funds' business model or operations. After more than a year of investigation, on August 28, 2023, the CFTC filed a complaint against Defendants, in secret. ECF No. 1. The Complaint is rife with factual errors and fundamental misunderstandings about My Forex Funds and Defendants operate. Nevertheless, using the false allegations in the Complaint, the CFTC sought and, on August 30, 2023, obtained an SRO on an *ex parte* basis, without a hearing, that prevented Defendants from challenging any of the CFTC's errors in the first instance. *See* ECF Nos. 7, 13. Defendants remained completely unaware of these steps until, on August 31, 2023, the CFTC served the Complaint and SRO on them. ECF Nos. 19-21.

The Court, in issuing the SRO, found that there was good cause—based on the CFTC's unchallenged false allegations and mischaracterizations—"to preserve the status quo," "to freeze assets owned" by the Defendants, "to prohibit Defendants from destroying … records," and to appoint a Temporary Receiver, who the CFTC had pre-selected. ECF No. 13, ¶¶ 8-11. Among the many provisions in the SRO, the Court ordered Defendants not to withdraw or dispose of assets. *Id.* ¶ 18. The SRO went even further, though, and ordered Defendants to "transfer possession of all assets" to the Temporary Receiver, which would necessarily include not only all money Defendants' possess, but every movable item Mr. Kazmi owns. *Id.* ¶ 19; *see also id.* ¶ 15 (defining "assets" to include "any real or personal property"). The SRO further ordered Defendants to permit the CFTC to inspect all documents and electronically stored information and to make copies of all such information but included provisions permitting Defendants to assert privilege over certain of those materials. *Id.* ¶¶ 22, 24.

Since the entry of the SRO, Defendants have worked diligently—at great effort and expense—to comply with it. As illustrative examples of the steps Defendants have taken, on September 6, 2023, Defendants sent the CFTC and Temporary Receiver a list of their primary bank accounts including at BMO Harris Bank and Confirmo and login credentials to access those accounts. Ex. 1[2], Letter from R. Zink to S. Placona and A. Burden, Sept. 10, 2023. On September 26, 2023, Defendants sent another letter detailing additional accounts for which they had collected information including at Deel and Edward Jones and the login credentials for those accounts. Ex. 2, Letter from D. Speas to S. Placona and A. Burden, Sept. 26, 2023. As a show of good faith and a sign of their cooperation, Defendants also identified bank accounts that had been previously closed and identified numerous websites Defendants owned, even when they had no relationship to this case. *Id.* When the Temporary Receiver struggled to access certain of the bank accounts due to second factor authentication requirements connected to Mr. Kazmi's phone or technical difficulties, Defendants facilitated providing this authentication and assisted with troubleshooting the access in cooperation with the Temporary Receiver, including during numerous telephone calls. Ex. 6, Email Exchange Between D. Speas and M. Dudas, Sept. 26 – Oct. 1, 2023; Ex. 8, Email Exchange Between D. Speas and M. Dudas, Sept. 15-21, 2023.

Simultaneous with Defendants and their counsel's efforts to ramp up from total unawareness of this matter to compliance with the overbroad SRO, the CFTC and Temporary Receiver were both peppering Defendants with a multitude of specific requests to which they demanded—and Defendants endeavored to provide—rapid responses. *See, e.g.*, Ex. 7, Emails from D. Speas to S. Placona, Sept. 13-14, 2023 (email exchange in which Defendants answer

---

[2] Unless otherwise noted, all exhibits are to the Declaration of Dakota Speas filed in support of this Response.

questions regarding specific transactions that the Temporary Receiver had posed "last night"). Each of these requests was more unreasonable than the last.

For example, on September 6, 2023, the Temporary Receiver sent a letter demanding certain specific items from Defendants, followed up just more than 24 hours later, then, just fourteen minutes later, demanded a call from Defendants' counsel—whom the Temporary Receiver acknowledged was still in the process of being retained—"asap." Ex. 5, Email Exchange Between D. Speas and S. Placona, Sept. 6-21, 2023.  The next day, early in the morning, the Temporary Receiver sent a barrage of additional questions to Defendants demanding information "RIGHT NOW" and "this morning."  *Id.*  The Temporary Receiver, refusing to accept the representations of counsel for Defendants that the retainer for their services was paid by a third party, then demanded an affidavit from that third party, which Defendants provided.  *Id.*

Similarly, on September 11, 2023, the Temporary Receiver sent a lengthy email to Defendants asserting the broadest possible interpretation of his powers, including that he is taking "custody and control over Mr. Kazmi," and demanded specific documents and assistance with accessing bank accounts with second factor authentication "IMMEDIATELY" and threatening to seek an order holding Defendants in contempt.  Ex. 3, Email Exchange Between D. Speas and S. Placona, Sept. 11-12, 2023.  Defendants promptly provided those documents the next day.  *Id.*

In total, in the approximately 43 days since Defendants' counsel were engaged on this matter, they have received over 220 emails from and sent 210 emails to the Temporary Receiver or his counsel, and received 100 emails from and sent 130 emails to the CFTC.  Speas Decl. ¶ 2.  The vast majority of these emails concerned steps Defendants were taking to comply with the SRO.  *Id.*

On September 13, 2023, the Temporary Receiver also served a subpoena on Defendants which essentially mimicked the SRO, often unintelligibly and in incredibly overbroad fashion. It demanded, among other things, "all emails and information about emails … sent and received by Defendants from 2021 through the present" and "[a]ll records relating or referring to the business activities and business and personal finances of the Defendants." Ex. 4, Defendants' Responses and Objections to Temporary Receiver's Subpoenas to Produce Documents, 3, 6. Defendants agreed to make all emails "held on the Microsoft Exchange server" available to the Temporary Receiver after agreement to a privilege protocol and clawback process. *Id.* at 3-4. Defendants also requested that the Temporary Receiver host the documents in a database—using Defendants' funds—that would be equally accessible to all parties including the CFTC and Defendants so that Defendants can continue accessing those emails in order to defend themselves. *Id.* at 4. Defendants lack the resources to provide such a database independently due to the CFTC and Temporary Receiver refusing to allow any carve outs from the SRO for Defendants to pay their counsel and for e-discovery services. *See, e.g.* ECF No. 72 at 11 (CFTC opposing carve out from asset freeze for legal expenses); Ex. 5 (detailing Defendants' counsel's inability to access retainer).

Defendants' cooperation with the CFTC and Temporary Receiver and diligent efforts to comply with the SRO continue to this day. Most recently, on October 10, 2023, Defendants, unprompted, provided an updated password to one of their bank accounts. Ex. 9, Email Exchange Between I. Sun and M. Dudas, Oct. 10-11. Then, on October 12, 2023, Defendants provided the CFTC and Temporary Receiver with numerous documents containing detailed financial accounting information. Ex. 10, Letter from D. Speas to S. Placona and A. Burden, Oct. 12, 2023.

## LEGAL STANDARD

To hold Defendants in contempt, the CFTC and Temporary Receiver must demonstrate, by clear and convincing evidence, "(1) that a valid order of the court existed; (2) that the [D]efendants

had knowledge of the order; and (3) that the [D]efendants disobeyed the order." *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) . Any "ambiguities must be resolved in favor of the party charged with contempt." *Id.* (quoting *John T. v. Del. Cnty. Intermediate Unit,* 318 F.3d 545, 552 (3d Cir. 2003)). Although good faith is not an absolute defense to civil contempt, "courts should hesitate to adjudge a defendant in contempt when 'there is ground to doubt the wrongfulness of the conduct.'" *Id.* (quoting *Robin Woods Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir.1994)).

It is a defense to civil contempt if Defendants substantially complied with the SRO. *Id.* at 591. "In order to avail oneself of the defense, a party must show that it (1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" *Id.* Substantial compliance does not require a showing that compliance would have been impossible, but only that Defendants' conduct is such that "it would be inequitable to impost contempt sanctions." *Id.*

## ARGUMENT

For six weeks, Defendants have devoted virtually all of their limited resources to compliance with the SRO and addressing the many demands from the Temporary Receiver and the CFTC. The CFTC and Temporary Receiver know this, as they have consistently received prompt and substantive replies to the countless demands they have made of Defendants. Despite this, the CFTC and Temporary Receiver brought this motion based on four perceived deficiencies in Defendants' compliance. Of those four, one is the subject of a due process dispute pending before this Court, two existed at the time of the CFTC and Temporary Receiver's motion only because of their eagerness to try to impose a contempt order on Defendants, and one continues only because the SRO has deprived Defendants of any reasonable means of compliance and the

Temporary Receiver has not agreed to assist in providing those resources. Contempt is not warranted in such circumstances and the motion should be denied.

## I. DEFENDANTS HAVE SUBSTANTIALLY COMPLIED WITH THE SRO

As detailed above, since the SRO was served on Defendants, they have "taken all reasonable steps to comply with the valid court order." *Lane Labs-USA, Inc.*, 624 F.3d at 591. Defendants have responded to dozens of requests for information from the CFTC and Temporary Receiver on virtually a daily basis and provided them with access to all of Defendants' financial accounts, including providing second factor authentication when required.

Most notably and most critically to the interests that ostensibly underlie the SRO, Defendants have been and will continue in strict compliance with the SRO's asset freeing order, thereby preserving the status quo. *See* ECF No. ECF No. 42-5, ¶ 4 (declaration of M. Kazmi stating, under oath, that Defendants have not withdrawn or disposed of any assets). Indeed, the CFTC and Temporary Receiver do not—and cannot—dispute this. For weeks, they have had access to Defendants' financial accounts including login credentials to view any and all transactions in those accounts. When he observes *any* transactions, the Temporary Receiver immediately requests information about them, which Defendants provide. *See* Ex. 7. If either the Temporary Receiver or CFTC had any actual evidence that Defendants were withdrawing or disposing of assets in violation of the freezing order, they would certainly present that evidence. They have not done so because no such violations have occurred or will occur. Whatever tenuous suspicions the CFTC may have had at the outset of the case about the dissipation of Defendants' assets—which the CFTC advanced as a key reason to grant the SRO—have proven to be entirely unfounded.

The alleged instances of noncompliance by Defendants—each of which, as detailed below, fails to establish contempt—have *de minimis*, if any, effect on the preservation interests served by

8

the SRO. *Cf. Fortin v. Comm'r of Mass. Dept' of Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982) ("'[S]ubstantiality' must depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest."). Here, Defendants have complied with the fundamental purpose of the SRO: to refrain from dissipating assets and to preserve the *status quo*.

The claimed violations in the CFTC's and the Temporary Receiver's joint motion are merely disputes over the speed with which Defendants are providing information to the CFTC and Temporary Receiver, the valid scope of the SRO, and logistical hurdles imposed by the SRO itself and the lack of cooperation by the Temporary Receiver. Given that Defendants have not dissipated or destroyed any assets, and neither the CFTC nor the Temporary Receiver have advanced any evidence to the contrary, these concerns do not warrant holding Defendants in contempt. Any violations were "inadvertent" and do not rise to the level of contemptuous conduct.

Each of the cases cited by the CFTC and Temporary Receiver in support of their motion only underscores this point. In *CFTC v. Emerald Worldwide Holdings, Inc.*, the defendants engaged in numerous and repeated violations of the SRO, including opening new bank accounts and directing investors to deposit funds into those accounts to avoid detection by the CFTC. 2004 WL 3186580, *9 (C.D. Cal. July 29, 2004). The Defendants also "d[id] not explain, or provide any evidence about how they have substantially complied with the SRO." *Id.* In *SEC v. Telexfree, Inc.*, the defendant "1) conduct[ed] financial transactions through several shell companies, 2) withdr[e]w money from his personal accounts, 3) us[ed] an online payment service provider to conduct transactions with assets from accounts subject to the freeze, 4) open[ed] new accounts at different banks and conduct[ed] transactions through those accounts, 5) s[old] and purchas[ed] luxury automobiles and 6) transferr[ed] real estate to a shell company." 164 F. Supp. 3d 187, 190

(D. Mass. 2015). In *SEC v. Cook*, the SEC presented evidence that the defendant "dissipated, transferred or otherwise encumbered, large sums of cash and valuable tangible assets that can be traced back to investors funds." 2010 WL 11537512, at *7 (D. Minn. Jan. 25, 2010). Unlike these cases, in which the defendants' conduct directly violated the core tenets of the restraining orders, Defendants here have consistently taken all reasonable steps to comply with the SRO and have taken no steps that would undermine its core purpose of preserving the *status quo*.

## II. THE CFTC AND TEMPORARY RECEIVER'S ALLEGED SRO VIOLATIONS DO NOT SUPPORT A FINDING OF CONTEMPT

Independent of Defendants' substantial compliance, none of the alleged violations the CFTC and Temporary Receiver claim are born out by the factual record, let alone proven by clear and convincing evidence. Instead, the factual record reveals that, from day one, both the CFTC and Temporary Receiver have adopted unduly hostile, disputatious postures that have impeded the Defendants' ability to comply immediately with every provision of the overbroad SRO. This rushed motion is the culmination of that hostility and the CFTC and Temporary Receiver's efforts to destroy Defendants before this case can be addressed on the merits.

### A. The $2.8 Million Confirmo Account Is the Subject of a Pending Motion

The CFTC and Temporary Receiver claim that Defendants "refuse to turn over $2.8 million in customer funds to the Temporary Receiver." This claim fails on multiple levels. First, Defendants do not possess any "customer funds." Any money Defendants receive from customers are fees that customers pay to participate in the evaluation process, not investments. These fees become the property of Defendants upon payment.

Second, the portion of the SRO that purports to order Defendants to "turn over" all assets to the Temporary Receiver is invalid and unlawful. As detailed in Defendant's previously filed Emergency Motion to Modify Ex Parte Statutory Restraining Order, ECF No. 42, and reply brief

10

in support of that Motion, ECF No. 73, the Constitution does not permit the *ex parte* seizure of Defendants' assets with no notice or opportunity to be heard. Moreover, such a seizure order exceeds the scope of the statutory authorization for *ex parte* SROs, which is limited to "a restraining order … which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property." 7 U.S.C. § 13a-1(a). Contrary to the CFTC and Temporary Receiver's insinuation, Defendants have not waived their Constitutional or statutory rights not to be subject to an unlawful *ex parte* order by agreeing to delay the hearing on a preliminary injunction.

Defendants had filed their Emergency Motion even before the CFTC and Temporary Receiver's motion to hold Defendants in contempt, but they disingenuously omit it, instead casting Defendants' objections as merely unilateral declarations that portions of the SRO are invalid. *See* Mot. at 7. The $2.8 million in Defendants' Confirmo account—an account about which Defendants volunteered information, to which the Temporary Receiver has access, and which is frozen—is subject to Defendants' prior emergency motion. Contempt is not appropriate where a legal dispute over the scope of the SRO is pending resolution by the Court and where the disputed funds remain in place subject to the freezing order, which Defendants continue to respect.

      **B.**    **Defendants Have Provided Access to All Financial Accounts**

The CFTC and Temporary Receiver complain about claimed lack of access to and information about a number of Defendants' bank accounts. Less than a week after the CFTC and Temporary Receiver rushed to this Court to seek a contempt order against Defendants, Defendants provided information about and access to all accounts about which the CFTC and Temporary Receiver complain in their motion. *Compare* Mot. at 9 (identifying accounts at BMO Harris Bank, N.A., Edward Jones, Deel, Inc., WooCommerce, Inc. and Stripe, Inc.) *with* Ex. 2 (providing account information and login credentials). Defendants even disclosed financial accounts that the

11

Temporary Receiver was not initially aware of, like Confirmo and Bitbuy. Indeed, Defendants provided access to the BMO Harris Bank accounts well in advance of the motion, including login information that allowed access to both Canadian and U.S. accounts. Ex. 1. The CFTC and Temporary Receiver ignored this, however, and rather than seeking clarification from Defendants, they rushed to try to impose a contempt order.

Similarly, Defendants' Stripe account—which Defendants were locked out of immediately after the entry of the SRO—is the subject of a consent order entered by this Court on September 29, 2023 which had been the subject of active discussions among Defendants, the CFTC, and the Temporary Receiver before the filing of the contempt motion. *See* ECF No. 79. If the CFTC and Temporary Receiver had not been in such a rush to file their motion, this matter would not have needed to consume any of the Court's time.

### C. Defendants Have Provided Books and Records

Next, the CFTC asserts that "Defendants have failed to provide an accounting." Mot. at 10. Defendants have provided key books and records, including accounting information, and will continue to do so on a rolling basis. Ex. 10. Defendants would have been able to provide these accounting records—which require coordination with third party accountants whom Defendants can no longer pay—far sooner, but for the need to reply to hundreds of emails from the CFTC and Temporary Receiver demanding responses "IMMEDIATELY" and "RIGHT NOW." Exs. 3, 5.

### D. The CFTC and Temporary Receiver Are Frustrating Defendants' Ability to Provide Electronically Stored Information

Lastly, the CFTC and Temporary Receiver assert that Defendants "are refusing to provide access to" electronically stored information and social media accounts. This is false. As set forth in Defendants' Responses and Objections to the Temporary Receiver's subpoena, Defendants are entirely willing to provide electronically stored information. *See* Ex. 4. Due to the SRO, however,

Defendants lack the resources to create and host a database of such emails and social media data in a manner that would be equally accessible to all parties. To date, the Temporary Receiver and CFTC have refused to permit any carve out from the SRO for Defendants' legal expenses (including e-discovery), and the Temporary Receiver has remained silent on whether it will use Defendants' funds to pay for such a document database. Thus, the CFTC and Temporary Receiver are actively working to cause the SRO violation for which they now ask Defendants' to be held in contempt.

The CFTC's proposed alternative is fundamentally unfair and also virtually guarantees pervasive violations of attorney-client privilege. *See* Mot. at 12 n.4. Filtering all communications for a handful of "attorney-related domains" would exclude only a small portion of likely privileged information and would miss any emails that were not directly to or from counsel. The CFTC's proposal that it apply this filter and upload all of Defendants' electronically stored information to its own system, without allowing Defendants' access to it, only perpetuates the one-sided playing field that the CFTC has striven to create.

The CFTC and Temporary Receiver's arguments that the lack of immediate access to these emails "frustrates the Temporary Receiver's prerogative" lacks merit. Mot. at 13. Historical emails have no bearing on the Temporary Receiver's present control of Defendants' affairs. Instead, this demand is a thinly veiled pretext for the CFTC to continue its more than year-long unilateral investigation by providing it a breadth of documents that it never could have obtained through legal process. The disclosure of relevant emails and social media accounts should take place through the orderly process of civil discovery, in compliance with the Federal Rules. Yet, the CFTC is attempting to weaponize the SRO to avoid that process.

Nonetheless, Defendants remain ready and willing to comply with the SRO and provide access to the electronically stored emails as soon as the Temporary Receiver makes resources available to facilitate such compliance. Since the Temporary Receiver holds the keys to compliance, holding Defendants in contempt for a violation would be unjust, and the Court should deny the motion.

## CONCLUSION

For the foregoing reasons, the CFTC and Temporary Receiver's motion should be denied.

Dated: October 13, 2023          **Respectfully Submitted,**

                               */s/ Anthony J. Staltari*
QUINN EMANUEL URQUHART & SULLIVAN LLP
Anthony J. Staltari (Attorney ID No. 233022017)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (415) 875-6600
anthonystaltari@quinnemanuel.com

Michael Shaheen, III (*pro hac vice*)
Robert A. Zink (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
michaelshaheen@quinnemanuel.com
robertzink@quinnemanuel.com

Dakota Speas (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
dakotaspeas@quinnemanuel.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

ANTHONY J. STALTARI, hereby certifies pursuant to 28 U.S.C. 1746 that on this date, I filed the aforementioned document with the CM/ECF system for the U.S. District Court for the District of New Jersey, thereby effectuating service upon all counsel of record via electronic means.

I certify under the penalty of perjury that the foregoing statements are true and correct. Executed in New York, New York on this 13th day of October.

/s/ Anthony J. Staltari<br>
Anthony J. Staltari