# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Commodity Futures Trading Commission, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:23-cv-11808 |
| | ) |
| v. | ) |
| | ) Judge Zahid N. Quraishi |
| Traders Global Group Inc., a New Jersey | ) |
| corporation, d/b/a "My Forex Funds"; | ) Plaintiff CFTC's Reply in Support |
| Traders Global Group Inc., a Canadian | ) for Motion for Order to Show |
| business organization; and Murtuza | ) Cause why Defendants Should not |
| Kazmi, | ) be Held in Contempt |
| | ) |
| | ) |
| Defendants. | ) |

ii

## TABLE OF CONTENTS

A. Defendants Should Be Held in Contempt for Refusing to Turn Over the $2.8 Million in the Confirmo Account. ................................................................. 1

B. Defendants Should Be Held in Contempt Until They Provide an Accounting. ... 4

C. Defendants Should be Held in Contempt for Refusing to Turn Over ESI. .......... 6

# TABLE OF AUTHORITES

**Cases**

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) .......................................................................... 2

*CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168 (D.N.J. 1988) ............................................... 3

*CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM,
  2004 WL 3186580 (C.D. Cal. July 29, 2004) ...................................................................... 4, 10

*CFTC v. Fin. Tree*, 542 F. Supp. 3d 992 (E.D. Cal. 2020) .............................................................. 5

*CFTC v. Forex Liquidity LLC*, No. SACV 07-01437CJCANX,
  2009 WL 2231684 (C.D. Cal. July 23, 2009) ........................................................................... 4

*CFTC v. Saffron*, No. 219CV01697JADDJA, 2020 WL 495557
  (D. Nev. Jan. 30, 2020) .............................................................................................................. 6

*FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575 (3d Cir. 2010) ............................................................ 3

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375 (1980) ................................ 2

*SEC v. Cook*, No. CV 09-3332 (MJD/JJK), 2010 WL 11537512,
  (D. Minn. Jan. 25, 2010) ............................................................................................................ 6

*SEC v. Dunlap*, 253 F.3d 768 (4th Cir. 2001) ................................................................................ 5

*SEC v. Lybrand*, No. 00CIV.1387(SHS), 2000 WL 913894 (S.D.N.Y. July 6, 2000) ................... 5

*SEC v. McNamee*, 481 F.3d 451 (7th Cir. 2007) ........................................................................... 2

*SEC v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456 (S.D.N.Y. 2001) ...................................... 4

**Statutes**

7 U.S.C. § 13a-1 .......................................................................................................................... 2, 6

Defendants contumaciously stand on their refusal to turn over to the Temporary Receiver $2.8 million in assets held in their account with Slovakian payment processor Confirmo, Inc. ("Confirmo"), or to provide the Temporary Receiver and the CFTC with login credentials for their various sources of electronically-stored information ("ESI"), such as email and social media accounts. Defendants have also failed to provide an accounting of their assets.[1] Defendants offer no cognizable excuse for their brazen defiance of the Statutory Restraining Order ("SRO") and should therefore be held in contempt.

**A.    DEFENDANTS SHOULD BE HELD IN CONTEMPT FOR REFUSING TO TURN OVER THE $2.8 MILLION IN THE CONFIRMO ACCOUNT.**

Defendants refuse to turn over to the Temporary Receiver the $2.8 million in the Confirmo account. (Doc. 97, Defs.' Opp. to Contempt Mot. ("Opp"), at 10-11.) Defendants do not dispute that turnover is required under the terms of the SRO. Defendants nonetheless argue that they should not be held in contempt for refusing to comply.

First, Defendants argue that they should not be held in contempt because "[t]he $2.8 million Confirmo account is the subject of a pending motion," i.e., Defendants' motion to modify the SRO (Doc. 42). That's ridiculous. Defendants'

---

[1] The CFTC, in its motion, sought to hold Defendants in contempt for failing to fully disclose or provide login credentials for their financial accounts. (Doc. 48 at 8-9, CFTC's and Temp. Receiver's Joint Mot. for Order to Show Cause.) Based on Defendants' counsel's recent representation to the CFTC and Temporary Receiver that "Defendants have disclosed credentials for all of the financial accounts that they are aware of at this time," the CFTC considers Defendants have satisfied this part of the SRO. (Ex. A, Email from D. Speas, Counsel to Defs., to S. Placona, Counsel to Temp. Receiver, et al., Oct. 13, 2023.)

meritless challenge to the constitutionality of the SRO does not excuse their refusal to comply with it. It is very well settled that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306, 115 S. Ct. 1493, 1498, 131 L. Ed. 2d 403 (1995) (quoting *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375 (1980)); *see also SEC v. McNamee*, 481 F.3d 451, 454 (7th Cir. 2007) ("[T]he rule that even invalid injunctions must be obeyed until stayed or reversed … prevents [defendant] from using any supposed defects in the injunction as defenses to his adjudication in contempt.").

Defendants next dispute the CFTC's characterization of the money in the Confirmo account as "customer funds;" according to Defendants, the account contains "fees that customers pay to participate in the evaluation process, not investments," which fees "become property of Defendants upon payment." (Opp. at 10.) This is quite an admission. Whether the funds are "fees" or "investments" matters not for purposes of the SRO, or 7 U.S.C. § 13a-1; the funds were paid by customers to participate in Defendants' "evaluation process," and are therefore ill-gotten gains subject to disgorgement. *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 196 (D.N.J. 1988) (purpose of SRO is to "enhance the possibility of awarding complete relief to the injured parties at the close of this litigation"), *aff'd*, 991 F.2d 71 (3d Cir. 1993). Defendants' claim that the fees are now Defendants' "property" places them squarely within the scope of the SRO. (Doc. 13 at 15

(ordering Defendants to "deliver to possession, custody, and control of the Temporary Receiver, all … assets (other than real property) located outside of the United States that are held by each and every Defendant, for their benefit, or under their direct or indirect control").)

Finally, Defendants argue that they should not be held in contempt because Defendants have not, to date, transferred or dissipated assets subject to the freeze. (Opp. at 8.) This is not a defense. Defendants were aware of the SRO's turnover provision and disobeyed it. That is all contempt requires. *See FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (elements of contempt; no "good faith" defense). Defendants' assurances that they will refrain from transferring or dissipating assets are cold comfort. In entering the SRO, the Court found that the CFTC's evidence supported a *prima facie* case of fraud against Defendants—evidence Defendants have yet to rebut. This militates strongly against trusting Defendants. Moreover, Defendant Kazmi resides in Ontario, Canada, and cannot easily be taken into custody to secure his compliance with the SRO. (Doc. 73-13, Kazmi Decl. ¶ 1.) If Defendants change their mind about transferring or dissipating assets, the CFTC has little recourse. Defendants should be held in contempt for their refusal to comply with the turnover provisions of the SRO. *See CFTC v. Forex Liquidity LLC*, No. SACV 07-01437CJCANX, 2009 WL 2231684, at *5 (C.D. Cal. July 23, 2009) ("District Courts have often found individuals or entities in civil

3

contempt when they fail to turn funds over to a receiver or fail to freeze assets in violation of court orders").[2]

## B.   DEFENDANTS SHOULD BE HELD IN CONTEMPT UNTIL THEY PROVIDE AN ACCOUNTING.

The SRO requires Defendants, within five days of entry of the SRO, to provide a "full detailed accounting of all assets, including the assets inside and outside of the United States that are held by each and every Defendant …." (Doc. 13 at 15.)  Almost two months after the entry of the SRO, Defendants have failed to do this.  Defendants offer no excuse for their failure, but claim to have "provided key books and records, including accounting information, and will continue to do so on a rolling basis." (Opp. a 12.)  This is not an accounting.[3]

Moreover, the "books and records" and "accounting information" produced by Defendants are woefully incomplete.  Defendants produced no financial statements for Defendant Kazmi.  (Doc. 97-11, Letter from D. Speas to S. Placona and A.

---

[2] *See also CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2004 WL 3186580, at *6-9 (C.D. Cal. July 29, 2004) (holding defendants in contempt for violating SRO by failing to repatriate funds, provide an accounting, or provide access to books and records, including ESI); *SEC v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456, 461 (S.D.N.Y. 2001) (ordering continued incarceration for contempt when defendant refused to turn over missing assets).

[3] An "accounting" sets forth, in detail and often under oath, the assets and liabilities of a defendant.  *See CFTC v. Fin. Tree*, 542 F. Supp. 3d 992, 1008 (E.D. Cal. 2020) (requiring defendant to provide sworn statement listing all accounts and assets), *modified*, No. 2:20-CV-01184-TLN-AC, 2020 WL 5995176 (E.D. Cal. Oct. 9, 2020); *SEC v. Lybrand*, No. 00CIV.1387(SHS), 2000 WL 913894, at *12 (S.D.N.Y. July 6, 2000) (ordering defendants to provide detailed, updated disclosure of assets).  *Cf. SEC v. Dunlap*, 253 F.3d 768, 775 (4th Cir. 2001) (requiring defendants to "prepare," i.e., create, an accounting, to the extent an accounting is not "contained within existing business records").

Burden, Counsel to CFTC, Oct. 12, 2023 (listing documents in production).) Defendants produced a financial statement for Traders Global Group, Inc. ("Traders Global") the day before their response brief was due, but only for the year ending December 21, 2021.[4]  (*Id.*)

Although Defendants did not produce Traders Global's 2022 financial statement to the CFTC, Defendants provided it to their credit card payment processor, Stripe, Inc. ("Stripe"), during negotiations of the size of the "reserve" Stripe wanted to impose on Defendants' account.[5] (Ex. B, Email from Def. Kazmi to K. Lam, Head of Sales Customer Success, Automattic, Inc., et al., Aug. 4, 2023 (attaching financial statement; redaction in original).)  That financial statement reflects undifferentiated "investments" of $35 million, a "bank balance" of $27 million, and outstanding loans totaling more than $10 million to undisclosed borrowers. (*Id.* at 4.)  What are the investments?  Where are the bank accounts?  And who borrowed $10 million?  These are all questions that should be answered by an accounting.  Defendants should be held in contempt until they provide one.  *See CFTC v. Saffron*, No. 219CV01697JADDJA, 2020 WL 495557, at *3 (D. Nev. Jan. 30, 2020) (holding defendants in contempt for violated preliminary injunction by failing to provide required accounting or turn over all books and records); *SEC v.*

---

[4] Defendants produced tax returns through 2023, but tax returns do not reflect Defendants' assets, just their income.  (Doc. 97-11.)  The rest of the documents produced by Defendants consist of corporate documents like certificates of incorporation or board resolutions which do not provide any meaningful information about Defendants' assets.  (See id.)

[5] The CFTC received this document pursuant to a Rule 45 subpoena to a non-party witness, Automattic, Inc.

5

*Cook*, No. CV 09-3332 (MJD/JJK), 2010 WL 11537512, at *8-9 (D. Minn. Jan. 25, 2010) (same).

**C.  DEFENDANTS SHOULD BE HELD IN CONTEMPT FOR REFUSING TO TURN OVER ESI.**

Defendants have refused to provide a list of sources of ESI, including emails, "chats," and social media accounts, or to provide the CFTC with login credentials to access the ESI, as required by the SRO.  Defendants argue that the CFTC is not entitled to the list of accounts or login credentials because "[t]he disclosure of relevant emails and social media accounts should take place through the orderly process of civil discovery, in compliance with the Federal Rules."  (Opp. at 13.)  Defendants cite no authority for this proposition, which is contrary to the express terms of the SRO.  (Doc. 13 at 7-8.)  It is also contrary to 7 U.S.C. § 13a-1, which provides for an SRO permitting the CFTC "to inspect, when and as requested, any books and records or other documents" of the defendant.

Defendants complain that the CFTC "merely disputes [ ] the speed with which Defendants are providing information …."  (*Id.* at 9.)  But time is of the essence.  The CFTC seeks identification of, and access to, Defendants' ESI in order to prepare for the forthcoming contested preliminary injection ("PI") hearing.  Defendants refusal to provide this ESI, in combination with their refusal to permit testimony from Defendant Kazmi on "the merits" (*See* Doc. 76, Defs. Mot. for Protective Order (now fully briefed)) is strongly suggestive of gamesmanship.[6]

---

[6] The provision of login credentials to the Temporary Receiver is necessary for the Temporary Receiver to effectively take control of Defendants' business.  (Doc. 13 at 11.)  Taking control of the business includes corresponding with Defendants'

6

The CFTC also requires access to Defendants' ESI to prevent the spoliation of evidence, which Defendants inexplicably try to use as leverage. In a recent letter, Defendants' counsel demanded that the Temporary Receiver pay outstanding invoices from Defendants' ESI vendors, including Microsoft, the host of the "MyForexFunds" email server, to prevent these vendors from "destroying or discarding relevant data." (Ex. D, Letter from D. Speas to S. Placona, Oct. 18, 2023.)

Defendants complain that providing the CFTC with login credentials for their ESI "virtually guarantees pervasive violations of the attorney-client privilege." (Opp. at 13.) As a threshold matter, this concern does not apply to Defendants' social media accounts, which Defendants use to communicate with customers. (*See* Doc. 32-40 at, e.g., 7, Ex. C-1 to CFTC Motion for SRO, MyForexFunds ("MFF") website (displaying links to My Forex Funds Discord, Facebook, Instagram, YouTube, TikTok and LinkedIn accounts).) To the extent it applies to Defendants emails or chat messages, the SRO takes this into consideration by requiring Defendants to "promptly contact Plaintiff's counsel to assert any claims of privilege relating to the inspection and review of any records … and promptly cooperate with Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged … materials to the Commissioner's attorneys." (Doc. 13 at 9.)

---

customers and vendors using the "myforexfunds" email domain and server. Defendants have maintained exclusive control over their emails, social media, and other communications messaging platforms. This is in violation of the SRO, and gives Defendants a free hand to correspond with victims and witnesses.

The SRO goes on to say that, "Nothing herein shall excuse Defendants from full and immediate compliance with this Court's Order permitting Plaintiff to inspect and review [Defendants'] records …." (*Id.*)

As Defendants acknowledge, the CFTC has proposed to filter out emails to or from counsels' domain, e.g., "@quinnemanuel.com." (Opp. at 13.) The CFTC has also offered to execute a claw-back agreement for privileged documents, and to apply any other reasonable filters Defendants might propose. (Ex. C at 4, Email from A. Burden to D. Speas, et al., Sept. 26, 2023 (offering claw-back agreement, soliciting search terms for privilege review).) Defendants seemed amenable to this approach at first, but have since changed their minds. (*Id.*) Defendants insist now on reviewing all ESI for privilege and producing the documents at their leisure, on a rolling basis. Defendants have produced no ESI to date.

Defendants complain that they "lack the resources to create and host a database of [ ] emails and social media data in a manner that would be equally accessible to all parties," and demand that the Temporary Receiver pay for this database. (Opp. at 12-13.) This is not a good-faith suggestion. Defendants already have access—exclusive access—to their emails and social media data. (*See* Doc. 97-5 at 12, Ex. 4 to Opp., Defs.' Resp. to Temp. Receiver's Rule 45 Subp., Sept. 27, 2023 ("Defendants will provide the Temporary Receiver access to emails dated from January 1, 2021 to August 28, 2023 that are held on the Microsoft Exchange server for Traders Global Group, after running protocols designed to avoid the inadvertent disclosure of privileged documents ….").) There is no need for a shared "database."

8

What Defendants should do is what the SRO requires: provide login credentials so the CFTC can forensically copy the ESI. After that, the CFTC can produce the copy back to Defendants. Defendants can then review the ESI on the same document review platform their counsel uses to review the thousands of documents produced by the CFTC in this litigation.

The Court should reject Defendants' transparent gamesmanship and hold them in contempt until they identify and provide login credentials for their sources of ESI. *Emerald Worldwide Holdings*, 2004 WL 3186580, at *6 (holding defendants in contempt for violating SRO by failing to, inter alia, provide access to books and records, including ESI).

For the foregoing reasons, the CFTC respectfully request that the Court issue an Order to Show Cause why Defendants should not be held in contempt. The CFTC requests as well that such order be issued in advance of the forthcoming PI heading, currently scheduled for November 6, 2023.

October 20, 2023

s/ Ashley J. Burden
Commodity Futures Trading Commission
Plaintiff
77 West Jackson Blvd., Suite 800
Chicago, IL 60604

Ashley J. Burden
Senior Trial Attorney
Division of Enforcement
Office: (312) 596-0693
Cell: (312) 995-0779
aburden@cftc.gov

Katherine S. Paulson
Trial Attorney
Division of Enforcement
Office: (312) 554-4559
kpaulson@cft.gov

Elizabeth M. Streit
Chief Trial Attorney
Division of Enforcement
Office: (312) 596-0537
estreit@cftc.gov