**MS&B**  McMANIMON • SCOTLAND • BAUMANN          75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial:  (973) 721-5030**
**splacona@msbnj.com**
15292-001

October 31, 2023

<u>**Via ECF**</u>
Honorable Zahid N. Quraishi, U.S.D.J.
United States District Court of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 4W
Trenton, NJ  08608

  Re: **Commodity Futures Trading Commission**
     **v. Traders Global Group, Inc.,** *et al.*
     **Civil Action No. 3:23-cv-11808**

Dear Judge Quraishi:

  As Your Honor is aware, this firm is counsel to Anthony Sodono, III, the Temporary Receiver ("Temporary Receiver") appointed in the above-captioned matter.  At the hearing on October 26, 2023, Your Honor graciously stated that "[s]o if you guys want to put something in writing that identifies some concern you have about the decisions that I made on this opinion, you'll order the transcript" and "[y]ou can say, Hey [sic], Judge, by the way, let me tell you a couple of things."  We respectfully write to clarify the record.  We do not write, however, to change any decision Your Honor has made. That is not the Temporary Receiver's charge. Attached is a copy of the October 26, 2023, Transcript for the Court's convenience.

  Moreover, we point to the Temporary Receiver's Report ("Report") filed with the Court last night [ECF 110] which highlights his efforts in this case. The Temporary Receiver also appreciated Your Honor's comments that if the parties agree, Mr. Sodono can remain as the Temporary Receiver.

  The Temporary Receiver and his legal team, as well as IT personnel, have spent an inordinate amount of time (as highlighted in his Report) developing an infrastructure, creating a website, implementing a procedure for customer complaints (shared with all parties) (as of October 29, 2023, there have been 9,424 website submissions that the Temporary Receiver's team has been reviewing), securing assets, negotiating a consent order with Defendants on chargebacks and negotiating an expense order for the Defendants, Mr. Kazmi and his family and continues to diligently negotiate with the Ontario Securities Commission ("OSC") for approval to allow such expenses.

  At the hearing Your Honor stated that you instructed the parties to work out the details of how much and when certain funds for expenses needed to be released. Your Honor stated that "[y]ou haven't done that. I can't tell if you are unwilling or work together or unable to work

Honorable Zahid N. Quraishi, U.S.D.J.
October 31, 2023
Page 2

together." With due respect, the Temporary Receiver has worked tirelessly with the Defendants and OSC for a consensual order regarding expenses. The Temporary Receiver successfully negotiated a difficult chargeback consent order after numerous discussions with the OSC to obtain permission to pay the Defendants' personnel. The Temporary Receiver also negotiated with the Defendants regarding language for the Receiver's website regarding Traders Global. The Temporary Receiver's efforts were noted at the hearing and fully set forth in the Report [ECF 110]. The only reason a consent order was not submitted on the expenses was because of a directive from the OSC. The OSC emphatically stated that the removal of any funds held by the Temporary Receiver would violate its directives.[1]

As to payment for expenses including attorney's fees, Your Honor has directed payment from "frozen funds." There are two issues that must be addressed. One is legal and the other practical. The Temporary Receiver is currently holding $860,461.67. As highlighted above, any disbursement from such funds violates the OSC's directive. Second, due to the amount of funds on hand and the Temporary Receiver's expenses, there may not be enough money on hand to pay everyone.  The Order advised that "Defendants' frozen funds shall immediately be released in the following one-time payments…" Id.

Respectfully, the Temporary Receiver would like to point out to Your Honor that that specific paragraph of the Order regarding funds is in clear violation of the OSC freeze directives, as set forth in the Temporary Receiver's filings with the Court on October 10, 2023 [ECF 94], and October 23, 2023 [ECF 101].  As noted above and in the prior filings, the OSC advised that to the extent that the Temporary Receiver steps into the shoes of the Defendants, he becomes bound by the freeze directives and is prohibited from transferring any assets. Thus, it is OSC's position that any freeze directives issued to the Defendants prohibited Mr. Sodono, as Temporary Receiver, from disbursing with the assets unless the OSC consented to or there was an order by the Ontario Superior Court varying the freeze directive. This position extended to the assets located in the United States, including the US BMO bank account and the crypto monies held in Slovakia.

Most recently, the Temporary Receiver and his counsel negotiated an order with the OSC which permitted the Temporary Receiver to utilize up to USD $46,610 in funds received from

---

[1] The Report annexes as *Exhibit A*, multiple freeze directives (collectively, the "Freeze Directives") from the OSC. Moreover, Norton Rose represents the Temporary Receiver in Canada.  Linda Fuerst, Esq. is the attorney from Norton Rose that has been negotiating with the OSC.  Ms. Fuerst was specifically told by OSC that the freeze directives that were issued to Mr. Kazmi and Traders Global (US and Canada) prohibited Mr. Sodono from transferring assets unless the OSC consented or there was an order by the Ontario Superior Court varying the freeze direction. That extended to the assets in the US including the Bank of Montreal ("BMO") bank account and the cryptocurrency in an account in Slovakia. Therefore, Mr. Sodono's was prevented from finalizing any payment-related issues because there are conflicting positions from two different jurisdictions.  The OSC's position was first relayed to the Temporary Receiver late in the day on September 27, 2023.  On that same day, Ms. Fuerst and the Temporary Receiver began negotiating with the OSC to obtain consent to pay employees charged with handling the chargebacks and for expenses. As noted, the chargeback order was successfully negotiated (with a limit of $46,610) and Ms. Fuerst continues to negotiate consent for expenses.

Honorable Zahid N. Quraishi, U.S.D.J.
October 31, 2023
Page 2

TGG's bank account ending in 6062 (the "Bank Account") for payment of the subcontractors working on the chargeback issues. Currently, the only funds that the Temporary Receiver maintains are his receipt of funds from the BMO Bank Account.

Defendants' counsel, especially their counsel in Canada, are well aware of these issues and the Freeze Directives. We have been working with Defendants' counsel in Canada to obtain OSC's approval of payments. We have also been collaborating with Defendants' US counsel to arrive at an expense order for Mr. Kazmi and his family.

In sum, the Temporary Receiver seeks direction from the Court regarding payments ordered by the Court, but which are contrary to the OSC's directive. Further, the Temporary Receiver advises the Court that there will not be enough funds to pay the expenses directed by the Court and expenses incurred by the Temporary Receiver. If it was the Court's desire to pay the expenses from "exempt funds" as articulated by the Defendants, the Temporary Receiver advises the Court that there are no such funds. The "exempt funds" alleged by Defendants is in reality alleged "equity" in certain real properties. If the Court intended for the payments to be made by release of funds on hand of the Defendants, including from the retainer on hand by Quinn Emanuel, however, then the Temporary Receiver takes no position on it. Otherwise, there are not enough funds to satisfy the Court's directive. We welcome an opportunity for a hearing to address the issues raised herein.

Thank you for the Court's attention and courtesy in addressing these matters.

Respectfully submitted,

/s/ Sari B. Placona

Sari B. Placona


cc:     (via ECF and/or email)
        Ashley J. Burden, Esq.
        Elizabeth M. Streit, Esq.
        Katherine Paulson, Esq.
        Anthony J. Staltari, Esq.
        Michael Shaheen, III, Esq.
        Dakota Speas, Esq.
        Anthony Sodono, III, Esq.

1               **UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF NEW JERSEY**

2

3   ──────────────────────────

    COMMODITIES FUTURES TRADING          CIVIL ACTION NUMBER:
4   COMMISSION,
                                         3:23-cv-11808-ZNQ-TJB
5        Plaintiff,
                                         TELEPHONE CONFERENCE
6        v.

7   TRADERS GLOBAL GROUP, INC.,
    MURTUZA KAZMI, ANTHONY
8   SODONO, III,

9        Defendants.
    ──────────────────────────
10                       Clarkson S. Fisher Building & U.S. Courthouse
                         402 East State Street
11                       Trenton, New Jersey  08608
                         October 26, 2023
12                       Commencing at 1:00 p.m.

13  B E F O R E:            THE HONORABLE ZAHID N. QURAISHI,
                            UNITED STATES DISTRICT JUDGE
14
    A P P E A R A N C E S:
15
         U.S. COMMODITY FUTURES TRADING COMMISSION
16       DIVISION OF ENFORCEMENT
         BY:  ASHLEY BURDEN, ESQUIRE
17            KATHERINE PAULSON, ESQUIRE
         77 W. JACKSON BLVD.
18       Suite 800
         Chicago, Illinois 60604
19       For the Plaintiff

20

21

22

23           Megan McKay-Soule, Official Court Reporter
                 Megan_McKay-Soule@njd.uscourts.gov
24                      (609) 815-2319

25           Proceedings recorded by mechanical stenography;
         transcript produced by computer-aided transcription.

1   **A P P E A R A N C E S**:

2       MCMANIMON, SCOTLAND & BAUMANN, LLC
        BY: ANTHONY SODONO, III, ESQUIRE
3           SARI PLACONA, ESQUIRE
            MICHELE M. DUDAS, ESQUIRE
4       75 LIVINGSTON AVENUE
        SUITE 201
5       ROSELAND, NJ 07068
        For the Defendants
6

7       QUINN EMANUEL URQUHART & SULLIVAN, LLP
        BY:  ANTHONY J. STALTARI, ESQUIRE
8            ROBERT A. ZINK, ESQUIRE
             KURT WOLF, ESQUIRE
9       51 MADISON AVE
        22ND FLOOR
10      New York, NY 10010
        For the Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (PROCEEDINGS held via telephone before The Honorable

2  ZAHID N. QURAISHI, United States District Judge, on October

3  26, 2023, at 1:00 p.m.)

4          THE COURT:  Good afternoon, folks.  It's Judge

5  Quraishi.  How are you?

6          MR. ZINK:  Good.  Thank you, Your Honor.

7          THE COURT:  I know I've got counsel for CFTC and for

8  the defendant.  I've got counsel for the receiver, and the

9  temporary receiver is on as well, so I'm not going to take

10  your appearances again since you've already done that through

11  my courtroom deputy.

12          Let me just tell you folks, in a moment I'm going to

13  read into the record my decisions on some of the pending

14  motions, so that's why I have you on the call.  The motions

15  are, one, the Motion to Modify the SRO from Defendants at ECF

16  Number 42.  Two, the joint motion for contempt from CFTC and

17  the temporary receiver, ECF Number 48.  Three, the motion to

18  intervene from Stripe at ECF Number 49.  And four, the

19  informal motion for a protective order from defendants at ECF

20  Number 76.

21          To be clear, I'm deciding these motions without oral

22  argument pursuant to Federal Rule of Civil Procedure 78 and

23  Local Civil Rule 78.1.  You can obtain a copy of the

24  transcript of this decision by contacting my court reporter,

25  Megan McKay-Soule.  To be clear, I will not be reading

1   citations.  If you order a transcript, they will be inserted

2   at that time.  A corresponding order will be entered on the

3   docket today, later this afternoon.

4         The parties are familiar with their case, so the Court

5   will now provide only a brief factual background.  Around

6   November 2021, Traders Global started a business in the

7   United States and Canada that purports to give customers the

8   opportunity to become professional traders via transactions

9   with third-party liquidity providers in the foreign exchange

10  and commodities industries.(Compl. ¶¶ 1-2, 20.)  Customers

11  receive payments from Traders Global for successful trades,

12  and pay Traders Global certain fees in exchange for the

13  trading opportunity. (*Id*. ¶¶ 2, 4.)

14        Traders Global's sales pitch to investors includes

15  various assertions to customers (*Id*. ¶¶23-43) that the CFTC

16  says are false.  This includes the notion that Traders Global

17  makes money when its customers do, and that the customers

18  transact with third-party liquidity providers when they make

19  the trades.  (*Id*. ¶¶ 3.) According to the Complaint, however,

20  rather than paying customers from the proceeds of profitable

21  trades, Traders Global instead pays customers from fees it

22  collects from other customers and uses various devices to

23  minimize the likelihood of profitable trading by its

24  customers. (*Id*. ¶¶ 4-5.)

25        On August 28, 2023, CFTC filed this lawsuit under seal,

1  alleging violations of the Commodities Exchange Act.  The next

2  day, the CFTC moved for an *ex parte* statutory restraining

3  order ("SRO") and preliminary injunction.  The Court granted

4  the motion for SRO and appointed a Temporary Receiver to seize

5  and control Defendants' assets. (ECF No. 13).  The SRO has

6  been extended multiple times by consent of the parties. (ECF

7  Nos. 26, 37, 88).  It is now set to expire on November 8th.

8          First, it's my intention to appoint a Special Master

9  for this case.  I don't think I have to tell you all, but I'm

10  going to say it anyway so it's part of the record.  This has

11  been a highly contentious case.  There are over a hundred

12  docket entries and the case is less than two months old.

13  Including the motion for preliminary injunction, there are

14  five motions pending.  You put a protective order dispute in

15  front of the magistrate judge, Judge Bongiovanni, and plenary

16  discovery hasn't even started.  Back to my main point,

17  Counsel, we haven't even gotten to the motion for preliminary

18  injunction yet.  And the parties have been unable to resolve

19  their disputes as to virtually anything.  On our last call, I

20  told you that I would consider the big picture items from

21  Defendants' request to modify the SRO, and instructed you to

22  work out the details of how much and when certain funds needed

23  to be released.  You haven't done that.  I can't tell if

24  you're unwilling to work together or unable to work together,

25  but you simply haven't gotten it done.

1    I need to focus on the pending motion for preliminary

2 injunction, and to be clear, I have 400 other cases, including

3 a very active criminal docket that comes first.  Judge

4 Bongiovanni is in the same boat.  I cannot let this case, this

5 one case monopolize any more of our time.

6    For these reasons, this case calls for a Special

7 Master.  I intend to appoint Jose Linares, one of our District

8 Court's former Chief Judges.  He was a former magistrate judge

9 before that.  He's with McCarter & English now.  He's a

10 no-nonsense lawyer with a large firm at his fingertips.  I

11 think he can cut a pathway for you.  Judge Linares will be

12 filing an affidavit of no-conflict, hopefully by this

13 afternoon.  I believe it will be filed on the docket later

14 this afternoon.  I'll give you one week to file an objection

15 to his appointment.

16    Turning to the Motion to Modify the SRO.  Defendants

17 filed a moving brief at ECF Number 42-1. ("Moving Br."). CFTC

18 filed an opposition at ECF Number 72, ("Opp'n Br."), as did

19 the Temporary Receiver at ECF Number 66, ("Receiver's

20 Opp'n,").  Defendants replied at ECF Number 73. ("Reply").

21 The Temporary Receiver filed a response to Defendant's reply

22 at ECF Number 94.  There were follow-up letters at ECF numbers

23 99 and 101.

24    Generally, a district court has broad discretion to

25 fashion appropriate relief in an action brought to enforce

1   requirements of the Commodities Exchange Act.  *See CFTC v.*

2   *Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y.

3   1979)(internal quotation marks omitted).  In particular, when

4   considering a Motion to Modify equitable relief that has been

5   issued under the Act, a court is charged with the exercise of

6   the same discretion it exercised in granting or denying

7   injunctive relief in the first place.  *CFTC v. Fin. Tree, et*

8   *al., Civ.* No. 20-1184, 2020 WL 5995176, at *1 (E.D. Cal. Oct.

9   9, 2020)(quoting *Sierra Club v. U.S. Army Corps of Eng'rs, et*

10  *al.*, 732 F.2d 253, 256 (2d Cir. 1984)). When a proceeding of

11  this nature concerns the public interest, the Court's

12  equitable power assumes an even broader and more flexible

13  character than when only a private controversy is at stake.

14  *CFTC v. Linton,* 786 F. Supp. 2d 1374, 1383 (D. Ariz.

15  2011)(internal quotation marks omitted).

16          As courts in other districts have recognized, it is a

17  defendant's burden to show that it is entitled to modification

18  of the equitable relief.  *CFTC v. Tmte, Inc.*, Civ. No.

19  20-2910-L, 2022 WL 1321572, at *2, *5 (N.D. Tex. May 3, 2022);

20  *see also SEC v. Hvizdzak Cap. Mgmt., LLC*, Civ. No. 20-154E,

21  2023 WL 202206, at *2 (W.D. Pa. Jan 17, 2023)(recognizing the

22  defendant's burden in an analogous securities fraud case).

23  "When determining the release of frozen assets the Court must

24  consider the following: (1) the plaintiff's interest in

25  protecting the assets for consumer restitution; and (2) the

1   defendant's interest in having access to the funds." *Tmte*,

2   2022 WL 1321572, at *2.

3        The Court has reviewed the parties' briefing as to the

4   Motion to Modify.  To be clear, the Motion is to modify the

5   current SRO at ECF Number 13.  It is not a motion for

6   reconsideration.  Therefore, to the extent the Motion to

7   Modify might be read to seek reconsideration of the Court's

8   initial Order, that request is denied.  The Court considers

9   only the parties' arguments regarding modification of the SRO

10  going forward.

11        In the Motion to Modify, the defendant argues that

12  their property and financial accounts that lack a "causal

13  connection" to CFTC's claims should be released.  (Moving Br.

14  at 11.)  Defendants assert that "[t]he notion that every asset

15  Mr. Kazmi owns derives exclusively from [My Forex Funds] is

16  implausible on its face." (*Id*.)  In their reply brief,

17  Defendants identify $538,0000 that Kazmi acquired from selling

18  personal real estate that was unrelated to Traders Global,

19  which he subsequently put toward purchases of real property

20  for his and his family's personal use. (Reply Br. at 9.)

21  Additionally, Defendants argue that any assets exceeding the

22  disgorgement remedy sought by CFTC should be released. (Moving

23  Br. at 10-11.)  Defendants also request that the Court reduce

24  the SRO from a seizure order to a limited freeze order.

25  According to Defendants, the need for a seizure is reduced

1  because they have diligently followed the SRO and preserved

2  the *status quo* by not withdrawing, transferring, removing,

3  dissipating, or otherwise disposing of their assets. (Reply

4  Br. at 8-9; Moving B. at 4.)

5       CFTC insists that the assets should remain frozen

6  because Defendants did not show which assets are untainted or

7  attributable to sources other than their unlawful conduct.

8  (Opp'n Br. at 7-8.)  In CFTC's view, even the $538,000 that

9  Kazmi claims to have received from personal real estate

10  transactions prior to 2021 lacks sufficient accompanying proof

11  that it was untainted because Defendants provide no details

12  about the sales or, more importantly, where the proceeds are

13  now. (*Id*. at 8.) CFTC argues that, given Kazmi's spending

14  habits, it is almost certain that he spent any such money long

15  ago.  (*Id*.) CFTC contends that the frozen assets are unlikely

16  to exceed the amount of disgorgement alleged in this case.  It

17  estimates that the defendants have retained at least $151

18  million out of the $310 million they collected in total

19  customer fees, and the defendants have failed to assert that

20  the total amount of their current assets is greater than $151

21  million. (*Id*. at 10.)  Moreover, Plaintiff argues that it is

22  unreasonable to assume that any new assets acquired by

23  Defendants in the future are necessarily unrelated to their

24  fraud. (*Id*. at 11.)

25       District courts recognize that the equities weigh in

*United States District Court*
*District of New Jersey*

1   favor of unfreezing assets for legal defense prior to a

2   preliminary injunction hearing. *FTC v. Next-gen, Inc.*, Civ.

3   No. 18-128, 2018 WL 8754140, at *1-2 (W.D. Mo. Aug. 3,

4   2018)(collecting cases).  However, the equities also favor the

5   injured consumers over the defendants who did the injuring and

6   are now suffering the consequences of their conduct. *FTC v.*

7   *IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1315 (S.D. Fla.

8   2013).  Courts therefore prefer to grant limited relief when

9   modifying asset freezes, *see, e.g., Hvizdzak Cap. Mgmt.*, 2023

10  WL 202206, at *2 (considering release of frozen assets in

11  analogous securities fraud case), but will release frozen

12  assets to pay for living expenses that qualify as basic

13  necessities. *Fin. Tree*, 2020 WL 5995176, at *2; *see also*

14  *Next-gen*, 2018 WL 8754140, at *2.

15       Here, the Court agrees that, to some extent, the

16  circumstances have changed since the emergent *ex parte*

17  application was filed by the CFTC.  Defendants have appeared

18  and they have competent counsel.  The Court is less concerned

19  that evidence and assets might be misused or misplaced.

20  Accordingly, the Court is comfortable transitioning the SRO

21  from a seizure-type order to a freeze order.

22       Intertwined with that, the Court recognizes that

23  Temporary Receiver Anthony Sodono was also appointed in this

24  case upon the emergent *ex parte* application of the CFTC.  Now

25  that Defendants have appeared and they have retained counsel

1  to represent them in this matter, the Court is mindful of its
2  responsibility to appoint a neutral receiver, and I think it
3  is appropriate to have both parties weigh in to best meet that
4  responsibility.  The Court therefore will direct the parties
5  to confer and to jointly propose a suitable Temporary Receiver
6  within a week.  If the parties are unable to agree, they may
7  each submit the names of three candidates -- along with
8  summaries of their qualifications -- to the Court for its
9  consideration by the same deadline.  To be clear, the current
10 Temporary Receiver will remain in place until a new one is
11 appointed.
12        Upon appointment of the new Temporary Receiver, the
13 Court is willing to entertain the idea that the new Temporary
14 Receiver will return possession of the formerly seized assets
15 to the defendants, while maintaining a freeze on those assets.
16 As a precondition, the Court needs Defendants to first make a
17 full and final disclosure of their assets.  Mr. Kazmi will
18 therefore execute a declaration under penalty of perjury
19 disclosing all of his personal assets and those of Traders
20 Global.  I want him to take this very seriously.  If assets
21 "appear" later, there will be consequences.  That declaration
22 shall distinguish between present ownership and contingent
23 interests.  I am ordering that Mr. Kazmi's declaration be
24 filed within one week.  When the Court is satisfied, the new
25 Temporary Receiver will be instructed to return possession of

1   seized assets.  That receiver will assume a role of providing

2   management, oversight, and -- upon an appropriate joint

3   application from the parties -- it may authorize the

4   expenditure of the frozen assets.  Any disputes as to

5   expenditures shall be resolved by the Special Master.

6         In the meantime, the Court also recognizes that release

7   of some interim funds is warranted.  First, the Court is

8   mindful of the serious nature of the allegations against

9   Defendants, and their need to defend themselves against those

10  allegations.  The Court will therefore exercise its discretion

11  to order a one-time release of $300,000 U.S. dollars for

12  Defendants to pay their legal counsel.  See *Next-gen*, 2018 WL

13  8754140, at *2.  Likewise, the Court recognizes the pressing

14  needs of the individuals around Mr. Kazmi, and will also in

15  its discretion order a one-time release of $4,000 Canadian

16  dollars to pay for Defendant Kazmi's medical expenses, $1,040

17  Canadian dollars to cover the tuition for his children, and

18  $117,697.32 in Canadian dollars for Defendants to pay the

19  salaries of the employees of Traders Global, obviously not to

20  include Mr. Kazmi himself.  *See Fin. Tree*, 2020 WL 5995176, at

21  *2.

22        With respect to Defendants' other requests for released

23  funds, they have not provided an accounting of their total

24  assets, including a clear separation of any untainted assets,

25  despite having the burden to do so.  *FTC v. Construct Data*

1    *Publishers*, Civ. No. 13-1999, 2014 WL 7004999, at *8 (N.D.

2    Ill. Dec. 11, 2014); *Tmte*, 2022 WL 1321572, at *5.

3    Additionally, the Court finds that the question of how much

4    money may be released for Mr. Kazmi's living expenses requires

5    further and detailed investigation.  *Next-gen*, 2018 WL

6    8754140, at 2.  The Special Master can address these issues

7    and facilitate any potential future release of assets to pay

8    for Defendants' expenses.  To be clear, the Court is not

9    modifying the Consent Order at ECF Number 79 in any way.

10        As for the Motion to Intervene by Stripe at ECF Number

11   49, it is my expectation that the anticipated transition from

12   a seizure to a freeze will resolve that Motion.  I am

13   therefore reserving on that Motion until after the transition

14   happens.  If Stripe believes its interests have not been

15   addressed, it may then seek relief from a Special Master.

16        As for the informal motion for protective order before

17   the Magistrate Judge, I have reviewed the parties' submissions

18   for that as well.  Defendants' moving papers are at ECF Number

19   76.  CFTC opposed at ECF 80.  Defendants seek to limit the

20   scope of the CFTC's depositions on the basis that the

21   expedited discovery order in this case only permits discovery

22   as to the defendants' assets and the identities of their

23   customers.  Defendants' informal motion, however, selectively

24   omits the portion of the emergent discovery order that says

25   that the depositions are to be conducted for the purpose of,

1    quote, preparing for a hearing on the CFTC's motion for

2    preliminary injunction, close quote.  I'm quoting that from

3    page 2 of the Order entered by the Court at ECF Number 10.

4    Counsel for Defendants -- I know you're on this call -- I have

5    to tell you that this reads to me like some very aggressive

6    cherry-picking on your part.  The order says what it says.

7    The CFTC may depose Defendants in preparation for the PI

8    hearing, which necessarily includes the evidence it will need

9    to meet its burden as to the elements associated with any

10   request for a preliminary injunction: likelihood of success on

11   the merits, irreparable harm, balance of the equities, and the

12   public interest.  I am therefore denying the informal motion

13   for a protective order, and I'm instructing Defendants to

14   appear as scheduled and for them to respond to questions as to

15   the merits of this case.

16        Finally, the Court turns to the Joint Motion for

17   Contempt.  I have reviewed the parties' submissions for that

18   as well.  The moving papers are at ECF Number 48.  Defendants

19   opposed at ECF Number 97.  A reply was filed at ECF Number

20   100.  I won't belabor this: the Court finds that a contempt

21   finding is not warranted in this instance.  I think it is a

22   hard fought case, and while we may be at the edge of what I'd

23   consider good faith conduct, I don't think anyone has slipped

24   into a territory where a contempt finding is called for.  Now,

25   don't take my latitude as a license.  I am directing everyone

1   on this call to tone down the rhetoric and to focus on the

2   substance of this case.

3         That's my opinion.  An appropriate Order will be

4   entered today.  Other than the PI hearing, all other issues

5   will be going before the Special Master.  The Special Master

6   will ask you for a list of those issues.  Once appointed, you

7   can identify any outstanding issues that remain for the

8   Special Master to consider.

9         Now that my opinion has been read to you and an

10  appropriate Order is going to hit the docket this afternoon,

11  what, if anything, do you need to tell me about the upcoming

12  PI hearing on November 6th?  I have the schedule that's been

13  provided by correspondence in October, and that gave me a

14  schedule of what I believe you intend to present that day, an

15  anticipated schedule of how long it will be.  Is there

16  anything more that anybody wants to tell me about that PI

17  hearing before I adjourn this call?

18        MS. PAULSON:  Your Honor, this is Katie Paulson on

19  behalf of CFTC.  We did want to just talk briefly about it to

20  make sure that, you know, what we're presenting is in line

21  with any considerations you have and to be sensitive and

22  respectful to the time that you've given us on November 6th.

23        Just as we filed jointly, the CFTC has planned to bring

24  two witnesses, Mr. Maranowski and Mr. Edelstein, both of whom

25  submitted declarations in support of the PI motion.

 1          In addition, our PI motion relied on the testimony of

 2    someone named Matthew Conchester (sp).  He lives overseas, and

 3    so we are taking his deposition on the 31st, at which time we

 4    understand Defendants will be present and able to

 5    cross-examine.  So we expect that we will be submitting a

 6    supplement with some portions of that testimony.  We also have

 7    scheduled two other depositions for next week on the first and

 8    the second, and we may supplement the record with materials

 9    from that.  We understand the defendants will also be present

10    at those.

11          That is what we have planned.  We understand, as far as

12    we know, the defendants do not plan to bring any witnesses nor

13    have they -- and they also do not agree to bring Mr. Kazmi

14    himself.  The one thing that we do want to flag -- and we will

15    certainly talk to Defendants about this and see if we can come

16    to an agreement -- is with Mr. Maranowski (sp.), who we are

17    prepared to bring.  He's a digital forensic investigator for

18    the CFTC and essentially is requesting that his declaration be

19    collected in URLs and website information.  We really think

20    that we can from a factual standpoint, it's not controversial,

21    and again want to avoid wasting everybody's time taking

22    testimony on something where there's no factual dispute.  So

23    we do plan to talk to defendants more about that and see if we

24    can reach an agreement that his testimony is not needed, or

25    certainly to narrow everything, in which case we can then

1   focus on Mr. Edelstein's testimony, legal arguments, and

2   whatever else the Court may want to hear.

3           THE COURT:  I want to be clear.  I have no issues

4   with what was provided to the Court as far as the schedule for

5   the PI hearing or anything you placed on the record now.  I

6   leave it to Plaintiff to decide what you want to present to

7   the Court at the hearing.  I certainly am not limiting you in

8   any regard.

9       Is that stipulation of testimony -- let me hear from

10  the defense.  Regarding that one witness, are you guys still

11  talking to Plaintiff's counsel regarding that expected

12  testimony of that one witness, or is that a dispute where the

13  witness is going to need to appear?

14          MR. ZINK:  Good afternoon, Your Honor.  It's Robert

15  Zink for the defendants.  We're going to work with the

16  Government and hopefully reach an agreement on that one.  I

17  don't see there being a big issue.

18          THE COURT:  Either you guys figure it out or at least

19  let Plaintiff's counsel know well in advance so they know

20  whether they need the witness or not.  Other than that one

21  issue that you flagged, anything else regarding the hearing?

22  Otherwise, folks, you've got my decision on at least the

23  several issues that were before me.  The rest you're going to

24  go somewhere else.  You guys will hopefully start working

25  through some of these issues so we can move the case forward.

1        Anything else regarding the preliminary injunction

2   hearing before I sign off?

3        MS. PLACONA:  This is Sari Placona.  And,

4   respectfully, I would like to make a point, if Your Honor will

5   hear me out.  It's not about the PI hearing, but I think it's

6   important if Your Honor will give me two minutes to provide

7   you a little update that I'm not sure Your Honor is aware of.

8        The temporary -- I respect Your Honor's decision.

9        THE COURT:  What is this an update on?  I don't

10  understand.  I'm not going to have oral argument after I

11  decided all these papers.  What is this about before I decide

12  whether I want to hear from you or not?

13       MS. PLACONA:  Sure.  So there's been an update that

14  we worked on and negotiated for hours and hours with the OSC

15  regarding their approval of using the funds that the Temporary

16  Receiver has on hand.  There's a huge learning curve for a new

17  receiver to come in.  There's been a lot of work, a tremendous

18  amount of effort on the receiver's end that's been working

19  both parties.  And we've been working on reports that were due

20  pursuant to the SRO within 60 days that will be filed with the

21  court tomorrow that will outline the status of a lot of

22  pending issues that I think Your Honor should be made aware

23  of.

24       THE COURT:  Listen.  Let me just say it this way.

25  Ms. Placona, you've spoken with defense counsel, correct, on

1    the case?

2            MS. PLACONA:  Correct.

3            THE COURT:  So defense counsel decides that they

4    agree with Mr. Sodono continuing as the Temporary Receiver

5    now that they've been able to weigh in since this is not an ex

6    parte application anymore, and they have an interest also in

7    having some voice in who the receiver is.  This is moot.  But

8    if defense counsel doesn't think that this is ripe, that now

9    that they're involved in the case they want to have some say

10   in the appointment of a neutral receiver since it's not an ex

11   parte process, I've already made my decision on that.  I've

12   read it into the record.  You guys can get the transcript of

13   it, and an order is going to go out.  Nothing you're about to

14   say is going to change my decision on that issue.

15           MS. PLACONA:  I definitely wasn't -- I wanted to

16   bring Your Honor up to speed with some things that you may not

17   have been aware of, and we will communicate with the CFTC and

18   the defendants as Your Honor has directed us, and we will

19   appropriately see what their response is.  I thank you for

20   your time.  That's all, Your Honor.

21           THE COURT:  All right.  I appreciate that.

22       Anything further, folks?

23           MR. ZINK:  Nothing from the defense.

24           MR. SODONO:  Your Honor, one brief comment.  I

25   apologize.  It's Anthony Sodono, Your Honor.  I certainly do

1    appreciate Your Honor's decision.

2         Your Honor should know that we have been trying with my

3    Canadian counsel to negotiate with the OSC to get an order to

4    unfreeze money even in the United States to pay the expenses

5    that I have negotiated with Defendants' counsel for school

6    payments, for many, many things.  The OSC -- essentially

7    Your Honor's order today is in conflict with what the OSC says

8    can't happen, which is to release money unless they agree and

9    consent up in Canada.  That's been the difficulty with dealing

10   with the two jurisdictions, that OSC says it is a blatant

11   violation of their directive to have any money released,

12   whether it was acquired in the United States, the Czech

13   Republic, where there is crypto money, or in Canada.  That's

14   kind of the conflict that we're having, Your Honor.  That's

15   been the difficulty.  We did negotiate, as Your Honor knows, a

16   charge-back order on the Stripe --

17        THE COURT:  Mr. Sodono, I don't want to cut you off,

18   but none of this is related to me allowing both parties to

19   have a voice in a mutual Temporary Receiver to be placed in

20   the case.  None of this is relevant to that.  I didn't say

21   that you did something improper and therefore that's why the

22   defendants are going to have some say in the appointment --

23        MR. SODONO:  No, no.  I appreciate that all.  I just

24   want to let Your Honor know that today's directive

25   regarding --

1          THE COURT:  That's your opinion.  I got it.  You
2    think their directive contradicts something else.  If you guys
3    want to submit something in writing, that's fine.  When I give
4    a decision, I don't go supplementing it on the conference call
5    through oral argument.  So if you guys want to put something
6    in writing that identifies some concern you have about the
7    decisions that I made on this opinion, you'll order the
8    transcript.  You'll review what I stated so that it's very
9    clear to you what my decisions are, and if there's some
10   concern, you will address it like you've addressed the other
11   hundred documents that are filed on the docket.  Right?  You
12   can say, Hey, Judge, by the way, let me tell you a couple of
13   things.

14        Anything further?

15        MR. SODONO:  No, Your Honor.  Thank you.

16        THE COURT:  I'm going to adjourn the call, and if you
17   guys have anything more that you want to say, I presume you
18   will submit it in writing and file it on the docket.  But I'm
19   telling you right now that these remaining issues, they're
20   going to a Special Master.  I'll give you one week, though, if
21   there's some objection you want to make to that, but I want to
22   make sure my intentions are clear and that you hear from me.
23   And I thought it was convenient for me not to bring you down
24   to Trenton to do this, but allow you at least some convenience
25   of doing this by conference call.

1           But anything further from the plaintiffs?

2              MR. BURDEN:  Nothing, Your Honor.

3              THE COURT:  From the defense?

4              MR. ZINK:  No.  Thank you for the accomodation,

5       Your Honor.  Nothing more.

6              THE COURT:  The Temporary Receiver, anything from the

7       Mr. Sodono?

8              MR. SODONO:  No.  Thank you, Your Honor.

9              THE COURT:  This matter is adjourned.  Be well.

10              (Court concludes at 1:28 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE.

2              - - - - - - - - - - - - - - - - - - - - - -

3

4      I certify that the foregoing is a correct transcript from

5    the record of proceedings in the above-entitled matter.

6

7

8      I

9

10

11   /S/ Megan McKay-Soule, RDR, CRR    October 27, 2023

12          Court Reporter                              Date

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*District of New Jersey*

**$**

**$1,040** [1] - 12:16
**$117,697.32** [1] - 12:18
**$151** [2] - 9:17, 9:20
**$300,000** [1] - 12:11
**$310** [1] - 9:18
**$4,000** [1] - 12:15
**$538,000** [1] - 9:8
**$538,0000** [1] - 8:17

**/**

**/S** [1] - 23:11

**0**

**07068** [1] - 2:5
**08608** [1] - 1:11

**1**

**1** [2] - 7:8, 7:24
**1-2** [2] - 4:10, 10:3
**10** [2] - 9:21, 14:3
**10-11** [1] - 8:23
**100** [1] - 14:20
**10010** [1] - 2:10
**101** [1] - 6:23
**11** [3] - 8:14, 9:24, 13:2
**13** [1] - 8:5
**13)** [1] - 5:5
**13-1999** [1] - 13:1
**1307** [1] - 10:7
**1315** [1] - 10:7
**1321572** [3] - 7:19, 8:2, 13:2
**1374** [1] - 7:14
**1383** [1] - 7:14
**17** [1] - 7:21
**18-128** [1] - 10:3
**1979)(internal** [1] - 7:3
**1984))** [1] - 7:10
**1:00** [2] - 1:12, 3:3
**1:28** [1] - 22:10

**2**

**2** [12] - 4:13, 7:19, 7:21, 7:25, 8:2, 10:10, 10:13, 10:14, 12:13, 12:21, 13:6, 14:3
**20** [1] - 4:10
**20-1184** [1] - 7:8
**20-154E** [1] - 7:20
**20-2910-L** [1] - 7:19
**201** [1] - 2:4

**2011)(internal** [1] - 7:15
**2013)** [1] - 10:8
**2014** [2] - 13:1, 13:2
**2018** [4] - 10:3, 10:14, 12:12, 13:5
**2018)(collecting** [1] - 10:4
**2020** [3] - 7:8, 10:13, 12:20
**2020)(quoting** [1] - 7:9
**2021** [2] - 4:6, 9:10
**2022** [4] - 7:19, 8:2, 13:2
**202206** [2] - 7:21, 10:10
**2023** [6] - 1:11, 3:3, 4:25, 7:21, 10:9, 23:11
**2023)(recognizing** [1] - 7:21
**22ND** [1] - 2:9
**253** [1] - 7:10
**256** [1] - 7:10
**26** [3] - 1:11, 3:3, 5:7
**27** [1] - 23:11
**28** [1] - 4:25
**2d** [3] - 7:10, 7:14, 10:7

**3**

**3** [3] - 4:19, 7:19, 10:3
**31st** [1] - 16:3
**37** [1] - 5:7
**3:23-cv-11808-ZNQ-TJB** [1] - 1:4

**4**

**4** [2] - 4:13, 9:4
**4-5** [1] - 4:24
**400** [1] - 6:2
**402** [1] - 1:10
**42** [1] - 3:16
**42-1** [1] - 6:17
**48** [2] - 3:17, 14:18
**484** [1] - 7:2
**49** [2] - 3:18, 13:11

**5**

**5** [2] - 7:19, 13:2
**51** [1] - 2:9
**5995176** [3] - 7:8, 10:13, 12:20

**6**

**60** [1] - 18:20
**60604** [1] - 1:18
**609** [1] - 1:24
**66** [1] - 6:19
**669** [1] - 7:2
**677** [1] - 7:2
**6th** [2] - 15:12, 15:22

**7**

**7-8** [1] - 9:8
**7004999** [1] - 13:1
**72** [1] - 6:18
**73** [1] - 6:20
**732** [1] - 7:10
**75** [1] - 2:4
**76** [2] - 3:20, 13:19
**77** [1] - 1:17
**78** [1] - 3:22
**78.1** [1] - 3:23
**786** [1] - 7:14
**79** [1] - 13:9

**8**

**8** [2] - 9:13, 13:1
**8-9** [1] - 9:4
**80** [1] - 13:19
**800** [1] - 1:18
**815-2319** [1] - 1:24
**8754140** [4] - 10:3, 10:14, 12:13, 13:6
**88)** [1] - 5:7
**8th** [1] - 5:7

**9**

**9** [2] - 7:9, 8:20
**94** [1] - 6:22
**97** [1] - 14:19
**972** [1] - 10:7
**99** [1] - 6:23

**A**

**able** [2] - 16:4, 19:5
**above-entitled** [1] - 23:5
**access** [1] - 8:1
**accomodation** [1] - 22:4
**accompanying** [1] - 9:10
**according** [2] - 4:19, 8:25
**accordingly** [1] - 10:20
**accounting** [1] - 12:23

**accounts** [1] - 8:12
**acquired** [3] - 8:17, 9:22, 20:12
**Act** [3] - 5:1, 7:1, 7:5
**action** [1] - 6:25
**ACTION** [1] - 1:3
**active** [1] - 6:3
**addition** [1] - 16:1
**additionally** [2] - 8:21, 13:3
**address** [2] - 13:6, 21:10
**addressed** [2] - 13:15, 21:10
**adjourn** [2] - 15:17, 21:16
**adjourned** [1] - 22:9
**advance** [1] - 17:19
**affidavit** [1] - 6:12
**afternoon** [6] - 3:4, 4:3, 6:13, 6:14, 15:10, 17:14
**aggressive** [1] - 14:5
**ago** [1] - 9:15
**agree** [4] - 11:6, 16:13, 19:4, 20:8
**agreement** [2] - 16:16, 16:24, 17:16
**agrees** [1] - 10:15
**aided** [1] - 1:25
**al** [2] - 7:8, 7:10
**allegations** [2] - 12:8, 12:10
**alleged** [1] - 9:16
**alleging** [1] - 5:1
**allow** [1] - 21:24
**allowing** [1] - 20:18
**almost** [1] - 9:14
**amount** [3] - 9:16, 9:20, 18:18
**analogous** [2] - 7:22, 10:11
**Anthony** [2] - 10:23, 19:25
**ANTHONY** [3] - 1:7, 2:2, 2:7
**anticipated** [2] - 13:11, 15:15
**anyway** [1] - 5:10
**apologize** [1] - 19:25
**appear** [3] - 11:21, 14:14, 17:13
**appearances** [1] - 3:10
**appeared** [2] - 10:17, 10:25
**application** [4] - 10:17, 10:24, 12:3, 19:6
**appoint** [3] - 5:8, 6:7,
11:2
**appointed** [4] - 5:4, 10:23, 11:11, 15:6
**appointment** [4] - 6:15, 11:12, 19:10, 20:22
**appreciate** [3] - 19:21, 20:1, 20:23
**appropriate** [5] - 6:25, 11:3, 12:2, 15:3, 15:10
**appropriately** [1] - 19:19
**approval** [1] - 18:15
**argue** [1] - 8:21
**argues** [3] - 8:11, 9:13, 9:21
**argument** [3] - 3:22, 18:10, 21:5
**arguments** [2] - 8:9, 17:1
**Ariz** [1] - 7:14
**Army** [1] - 7:9
**ASHLEY** [1] - 1:16
**assert** [2] - 8:14, 9:19
**assertions** [1] - 4:15
**asset** [2] - 8:14, 10:9
**assets** [20] - 5:5, 7:23, 7:25, 8:21, 9:3, 9:5, 9:6, 9:15, 9:20, 9:22, 10:1, 10:10, 10:12, 10:19, 11:14, 11:15, 11:17, 11:19, 11:20, 12:1, 12:4, 12:24, 13:7, 13:22
**associated** [1] - 14:9
**Assocs** [1] - 10:7
**assume** [2] - 9:22, 12:1
**assumes** [1] - 7:12
**attributable** [1] - 9:7
**Aug** [1] - 10:3
**August** [1] - 4:25
**authorize** [1] - 12:3
**AVE** [1] - 2:9
**AVENUE** [1] - 2:4
**avoid** [1] - 16:21
**aware** [3] - 18:7, 18:22, 19:17

**B**

**background** [1] - 4:5
**balance** [1] - 14:11
**basic** [1] - 10:12
**basis** [1] - 13:20
**BAUMANN** [1] - 2:2
**become** [1] - 4:8
**behalf** [1] - 15:19
**belabor** [1] - 14:20

believes [1] - 13:14
best [1] - 11:3
between [1] - 11:22
big [2] - 5:20, 17:17
blatant [1] - 20:10
BLVD [1] - 1:17
boat [1] - 6:4
Bongiovanni [2] - 5:15, 6:4
Br [6] - 6:18, 8:13, 8:20, 8:23, 9:4, 9:8
Br.") [1] - 6:17
brief [4] - 4:5, 6:17, 8:16, 19:24
briefing [1] - 8:3
briefly [1] - 15:19
bring [6] - 15:23, 16:12, 16:13, 16:17, 19:16, 21:23
broad [1] - 6:24
broader [1] - 7:12
brought [1] - 6:25
Building [1] - 1:10
burden [4] - 7:17, 7:22, 12:25, 14:9
BURDEN [2] - 1:16, 22:2
business [1] - 4:6
BY [2] - 1:16, 2:7

**C**

Cal [1] - 7:8
Canada [3] - 4:7, 20:9, 20:13
Canadian [4] - 12:15, 12:17, 12:18, 20:3
candidates [1] - 11:7
cannot [1] - 6:4
Cap [2] - 7:20, 10:9
case [19] - 4:4, 5:9, 5:11, 5:12, 6:4, 6:5, 6:6, 9:16, 10:11, 10:24, 13:21, 14:15, 14:22, 15:2, 16:25, 17:25, 19:1, 19:9, 20:20
case) [1] - 7:22
cases [1] - 6:2
cases) [1] - 10:4
causal [1] - 8:12
certain [3] - 4:12, 5:22, 9:14
certainly [4] - 16:15, 16:25, 17:7, 19:25
CERTIFICATE [1] - 23:1
certify [1] - 23:4
CFTC [22] - 3:7, 3:16, 4:15, 4:25, 5:2, 6:17,

7:1, 7:7, 7:14, 7:18, 8:22, 9:5, 9:13, 9:15, 10:17, 10:24, 13:19, 14:7, 15:19, 15:23, 16:18, 19:17
CFTC's [4] - 8:13, 9:8, 13:20, 14:1
change [1] - 19:14
changed [1] - 10:16
character [1] - 7:13
charge [1] - 20:16
charge-back [1] - 20:16
charged [1] - 7:5
cherry [1] - 14:6
cherry-picking [1] - 14:6
Chicago [1] - 1:18
Chief [1] - 6:8
children [1] - 12:17
Cir [1] - 7:10
circumstances [1] - 10:16
citations [1] - 4:1
Civ [5] - 7:8, 7:18, 7:20, 10:2, 13:1
Civil [2] - 3:22, 3:23
CIVIL [1] - 1:3
claims [2] - 8:13, 9:9
Clarkson [1] - 1:10
clear [10] - 3:21, 3:25, 6:2, 8:4, 11:9, 12:24, 13:8, 17:3, 21:9, 21:22
close [1] - 14:2
Club [1] - 7:9
collected [2] - 9:18, 16:19
collects [1] - 4:22
comfortable [1] - 10:20
Commencing [1] - 1:12
comment [1] - 19:24
COMMISSION [2] - 1:4, 1:15
commodities [1] - 4:10
Commodities [2] - 5:1, 7:1
COMMODITIES [1] - 1:3
COMMODITY [1] - 1:15
communicate [1] - 19:17
competent [1] - 10:18
Complaint [1] - 4:19
computer [1] - 1:25
computer-aided [1] -

1:25
concern [2] - 21:6, 21:10
concerned [1] - 10:18
concerns [1] - 7:11
Conchester [1] - 16:2
concludes [1] - 22:10
conduct [3] - 9:7, 10:6, 14:23
conducted [1] - 13:25
confer [1] - 11:5
conference [2] - 21:4, 21:25
CONFERENCE [1] - 1:5
conflict [3] - 6:12, 20:7, 20:14
connection [1] - 8:13
consent [2] - 5:6, 20:9
Consent [1] - 13:9
consequences [2] - 10:6, 11:21
consider [4] - 5:20, 7:24, 14:23, 15:8
consideration [1] - 11:9
considerations [1] - 15:21
considering [2] - 7:4, 10:10
considers [1] - 8:8
Construct [1] - 12:25
consumer [1] - 7:25
consumers [1] - 10:5
contacting [1] - 3:24
Contempt [1] - 14:17
contempt [3] - 3:16, 14:20, 14:24
contends [1] - 9:15
contentious [1] - 5:11
contingent [1] - 11:22
continuing [1] - 19:4
contradicts [1] - 21:2
control [1] - 5:5
controversial [1] - 16:20
controversy [1] - 7:13
convenience [1] - 21:24
convenient [1] - 21:23
copy [1] - 3:23
Corps [1] - 7:9
correct [3] - 18:25, 19:2, 23:4
correspondence [1] - 15:13
corresponding [1] - 4:2
Counsel [1] - 5:17

counsel [13] - 3:7, 3:8, 10:18, 10:25, 12:12, 14:4, 17:11, 17:19, 18:25, 19:3, 19:8, 20:3, 20:5
couple [1] - 21:12
Court [31] - 1:23, 4:4, 5:3, 7:23, 8:3, 8:8, 8:23, 10:15, 10:18, 10:20, 10:22, 11:1, 11:4, 11:8, 11:13, 11:16, 11:24, 12:6, 12:7, 12:10, 12:13, 13:3, 13:8, 14:3, 14:16, 14:20, 17:2, 17:4, 17:7, 22:10, 23:12
court [4] - 3:24, 6:24, 7:5, 18:21
COURT [16] - 1:1, 3:4, 3:7, 17:3, 17:18, 18:9, 18:24, 19:3, 19:21, 20:17, 21:1, 21:16, 22:3, 22:6, 22:9, 23:1
Court's [6] - 6:8, 7:11, 8:7
Courthouse [1] - 1:10
courtroom [1] - 3:11
courts [3] - 7:16, 9:25, 10:8
cover [1] - 12:17
criminal [1] - 6:3
cross [1] - 16:5
cross-examine [1] - 16:5
CRR [1] - 23:11
crypto [1] - 20:13
current [3] - 8:5, 9:20, 11:9
curve [1] - 18:16
customer [1] - 9:19
customers [10] - 4:7, 4:10, 4:15, 4:17, 4:20, 4:21, 4:22, 4:24, 13:23
cut [2] - 6:11, 20:17
Czech [1] - 20:12

**D**

Data [1] - 12:25
Date [1] - 23:12
days [1] - 18:20
deadline [1] - 11:9
dealing [1] - 20:9
Dec [1] - 13:2
decide [2] - 17:6, 18:11
decided [1] - 18:11

decides [1] - 19:3
deciding [1] - 3:21
decision [7] - 3:24, 17:22, 18:8, 19:11, 19:14, 20:1, 21:4
decisions [3] - 3:13, 21:7, 21:9
declaration [4] - 11:18, 11:21, 11:23, 16:18
declarations [1] - 15:25
defend [1] - 12:9
Defendant [2] - 2:10, 12:16
defendant [2] - 3:8, 8:11
Defendant's [1] - 6:21
defendant's [3] - 7:17, 7:22, 8:1
Defendants [21] - 1:9, 2:5, 3:15, 6:20, 8:14, 8:17, 8:21, 8:25, 9:6, 9:11, 9:23, 10:25, 11:16, 12:9, 12:12, 12:18, 14:4, 14:7, 14:13, 16:4, 16:15
defendants [16] - 3:19, 6:16, 8:23, 9:17, 9:19, 10:5, 10:17, 11:15, 13:19, 14:18, 16:9, 16:12, 16:23, 17:15, 19:18, 20:22
Defendants' [5] - 5:5, 5:21, 12:22, 13:8, 20:5
defendants' [3] - 13:18, 13:22, 13:23
defense [7] - 10:1, 17:10, 18:25, 19:3, 19:8, 19:23, 22:3
definitely [1] - 19:15
denied [1] - 8:8
denying [2] - 7:6, 14:12
depose [1] - 14:7
deposition [1] - 16:3
depositions [3] - 13:20, 13:25, 16:7
deputy [1] - 3:11
derives [1] - 8:15
despite [1] - 12:25
detailed [1] - 13:5
details [2] - 5:22, 9:11
determining [1] - 7:23
devices [1] - 4:22
difficulty [2] - 20:9, 20:15
digital [1] - 16:17

diligently [1] - 9:1
direct [1] - 11:4
directed [1] - 19:18
directing [1] - 14:25
directive [3] - 20:11, 20:24, 21:2
disclosing [1] - 11:19
disclosure [1] - 11:17
discovery [4] - 5:16, 13:21, 13:24
discretion [4] - 6:24, 7:6, 12:10, 12:15
disgorgement [2] - 8:22, 9:16
disposing [1] - 9:3
dispute [3] - 5:14, 16:22, 17:12
disputes [2] - 5:19, 12:4
dissipating [1] - 9:3
distinguish [1] - 11:22
District [2] - 3:2, 6:7
district [2] - 6:24, 9:25
DISTRICT [3] - 1:1, 1:1, 1:13
districts [1] - 7:16
DIVISION [1] - 1:16
docket [7] - 4:3, 5:12, 6:3, 6:13, 15:10, 21:11, 21:18
documents [1] - 21:11
dollars [4] - 12:11, 12:16, 12:17, 12:18
done [3] - 3:10, 5:23, 5:25
down [2] - 15:1, 21:23
DUDAS [1] - 2:3
due [1] - 18:19

E

E.D [1] - 7:8
e.g [1] - 10:9
East [1] - 1:10
ECF [21] - 3:15, 3:17, 3:18, 3:19, 5:5, 5:6, 6:17, 6:18, 6:19, 6:20, 6:22, 8:5, 13:9, 13:10, 13:18, 13:19, 14:3, 14:18, 14:19
Edelstein [1] - 15:24
Edelstein's [1] - 17:1
edge [1] - 14:22
effort [1] - 18:18
either [1] - 17:18
elements [1] - 14:9
EMANUEL [1] - 2:7
emergent [3] - 10:16, 10:24, 13:24
employees [1] - 12:19

end [1] - 18:18
enforce [1] - 6:25
ENFORCEMENT [1] - 1:16
Eng'rs [1] - 7:9
English [1] - 6:9
entered [3] - 4:2, 14:3, 15:4
entertain [1] - 11:13
entitled [2] - 7:17, 23:5
entries [1] - 5:12
equitable [3] - 7:4, 7:12, 7:18
equities [3] - 9:25, 10:4, 14:11
ESQUIRE [8] - 1:16, 1:17, 2:2, 2:3, 2:3, 2:7, 2:8, 2:8
essentially [2] - 16:18, 20:6
estate [2] - 8:18, 9:9
estimates [1] - 9:17
et [2] - 7:7, 7:9
evidence [2] - 10:19, 14:8
ex [5] - 5:2, 10:16, 10:24, 19:5, 19:10
examine [1] - 16:5
exceed [1] - 9:16
exceeding [1] - 8:21
exchange [2] - 4:9, 4:12
Exchange [2] - 5:1, 7:1
exclusively [1] - 8:15
execute [1] - 11:18
exercise [2] - 7:5, 12:10
exercised [1] - 7:6
expect [1] - 16:5
expectation [1] - 13:11
expected [1] - 17:11
expedited [1] - 13:21
expenditure [1] - 12:4
expenditures [1] - 12:5
expenses [5] - 10:12, 12:16, 13:4, 13:8, 20:4
expire [1] - 5:7
extended [1] - 5:6
extent [2] - 8:6, 10:15

F

F.2d [1] - 7:10
face [1] - 8:16
facilitate [1] - 13:7

factual [3] - 4:5, 16:20, 16:22
failed [1] - 9:19
faith [1] - 14:23
false [1] - 4:16
familiar [1] - 4:4
family's [1] - 8:20
far [2] - 16:11, 17:4
fashion [1] - 6:25
favor [2] - 10:1, 10:4
Federal [1] - 3:22
FEDERAL [1] - 23:1
fees [3] - 4:12, 4:21, 9:19
figure [1] - 17:18
file [2] - 6:14, 21:18
filed [11] - 4:25, 6:13, 6:17, 6:18, 6:21, 10:17, 11:24, 14:19, 15:23, 18:20, 21:11
filing [1] - 6:12
Fin [2] - 7:7, 12:20
fin [1] - 10:13
final [1] - 11:17
finally [1] - 14:16
financial [1] - 8:12
fine [1] - 21:3
fingertips [1] - 6:10
firm [1] - 6:10
first [6] - 5:8, 6:3, 7:7, 11:16, 12:7, 16:7
Fisher [1] - 1:10
five [1] - 5:14
Fla [1] - 10:7
flag [1] - 16:14
flagged [1] - 17:21
flexible [1] - 7:12
FLOOR [1] - 2:9
focus [3] - 6:1, 15:1, 17:1
folks [4] - 3:4, 3:12, 17:22, 19:22
follow [1] - 6:22
follow-up [1] - 6:22
followed [1] - 9:1
following [1] - 7:24
FOR [1] - 1:1
foregoing [1] - 23:4
foreign [1] - 4:9
forensic [1] - 16:17
Forex [1] - 8:15
former [2] - 6:8
formerly [1] - 11:14
forward [2] - 8:10, 17:25
fought [1] - 14:22
four [1] - 3:18
fraud [3] - 7:22, 9:24, 10:11

freeze [4] - 8:24, 10:21, 11:15, 13:12
freezes [1] - 10:9
front [1] - 5:15
frozen [6] - 7:23, 9:5, 9:15, 10:10, 10:11, 12:4
FTC [3] - 10:2, 10:6, 12:25
full [1] - 11:17
Funds [1] - 8:15
funds [5] - 5:22, 8:1, 12:7, 12:23, 18:15
future [2] - 9:23, 13:7
FUTURES [2] - 1:3, 1:15

G

gen [4] - 10:2, 10:14, 12:12, 13:5
generally [1] - 6:24
given [2] - 9:13, 15:22
Global [8] - 4:6, 4:11, 4:12, 4:16, 4:21, 8:18, 11:20, 12:19
GLOBAL [1] - 1:7
Global's [1] - 4:14
Government [1] - 17:16
grant [1] - 10:8
granted [1] - 5:3
granting [1] - 7:6
greater [1] - 9:20
GROUP [1] - 1:7
guys [7] - 17:10, 17:18, 17:24, 19:12, 21:2, 21:5, 21:17

H

habits [1] - 9:14
hand [1] - 16:24
hard [1] - 14:22
harm [1] - 14:11
Harris [1] - 7:2
hear [5] - 17:2, 17:9, 18:5, 18:12, 21:22
hearing [11] - 10:2, 14:1, 14:8, 15:4, 15:12, 15:17, 17:5, 17:7, 17:21, 18:2, 18:5
held [1] - 3:1
highly [1] - 5:11
himself [2] - 12:20, 16:14
hit [1] - 15:10
Honor [20] - 3:6, 15:18, 17:14, 18:4,

18:6, 18:7, 18:22, 19:16, 19:18, 19:20, 19:24, 19:25, 20:2, 20:14, 20:15, 20:24, 21:15, 22:2, 22:5, 22:8
Honor's [3] - 18:8, 20:1, 20:7
HONORABLE [1] - 1:13
Honorable [1] - 3:1
hopefully [3] - 6:12, 17:16, 17:24
hours [2] - 18:14
huge [1] - 18:16
hundred [2] - 5:11, 21:11
Hvizdzak [2] - 7:20, 10:9

I

iAB [1] - 10:7
Id [9] - 4:13, 4:15, 4:19, 4:24, 8:16, 9:13, 9:15, 9:21, 9:24
idea [1] - 11:13
identifies [1] - 21:6
identify [2] - 8:17, 15:7
identities [1] - 13:22
Ill [2] - 1:8, 2:2
Ill [1] - 13:2
Illinois [1] - 1:18
implausible [1] - 8:16
important [1] - 18:6
importantly [1] - 9:12
improper [1] - 20:21
INC [1] - 1:7
Inc [2] - 7:18, 10:2
include [1] - 12:20
includes [3] - 4:14, 4:16, 14:8
including [3] - 5:13, 6:2, 12:24
individuals [1] - 12:14
industries.(Compl [1] - 4:10
informal [4] - 3:19, 13:16, 13:23, 14:12
information [1] - 16:19
initial [1] - 8:8
injunction [8] - 5:3, 5:13, 5:18, 6:2, 10:2, 14:2, 14:10, 18:1
injunctive [1] - 7:7
injured [1] - 10:5
injuring [1] - 10:5

inserted [1] - 4:1
insists [1] - 9:5
instance [1] - 14:21
instead [1] - 4:21
instructed [2] - 5:21, 11:25
instructing [1] - 14:13
intend [2] - 6:7, 15:14
intention [1] - 5:8
intentions [1] - 21:22
interest [5] - 7:11, 7:24, 8:1, 14:12, 19:6
interests [2] - 11:23, 13:14
interim [1] - 12:7
intertwined [1] - 10:22
intervene [1] - 3:18
Intervene [1] - 13:10
investigation [1] - 13:5
investigator [1] - 16:17
investors [1] - 4:14
involved [1] - 19:9
irreparable [1] - 14:11
issue [3] - 17:17, 17:21, 19:14
issued [1] - 7:5
issues [9] - 13:6, 15:4, 15:6, 15:7, 17:3, 17:23, 17:25, 18:22, 21:19
items [1] - 5:20

J

JACKSON [1] - 1:17
Jan [1] - 7:21
JERSEY [1] - 1:1
Jersey [1] - 1:11
joint [2] - 3:16, 12:2
Joint [1] - 14:16
jointly [2] - 11:5, 15:23
Jose [1] - 6:7
JUDGE [1] - 1:13
judge [2] - 5:15, 6:8
Judge [7] - 3:2, 3:4, 5:15, 6:3, 6:11, 13:17, 21:12
Judges [1] - 6:8
jurisdictions [1] - 20:10

K

KATHERINE [1] - 1:17
Katie [1] - 15:18
Kazmi [7] - 8:15, 8:17, 9:9, 11:17, 12:14,

12:20, 16:13
KAZMI [1] - 1:7
Kazmi's [4] - 9:13, 11:23, 12:16, 13:4
kind [1] - 20:14
knows [1] - 20:15
KURT [1] - 2:8

L

lack [1] - 8:12
lacks [1] - 9:10
large [1] - 4:10
last [1] - 5:19
latitude [1] - 14:25
lawsuit [1] - 4:25
lawyer [1] - 6:10
learning [1] - 18:16
least [4] - 9:17, 17:18, 17:22, 21:24
leave [1] - 17:6
legal [3] - 10:1, 12:12, 17:1
less [2] - 5:12, 10:18
letters [1] - 6:22
license [1] - 14:25
likelihood [2] - 4:23, 14:10
likewise [1] - 12:13
limit [1] - 13:19
limited [2] - 8:24, 10:8
limiting [1] - 17:7
Linares [2] - 6:7, 6:11
line [1] - 15:20
Linton [1] - 7:14
liquidity [2] - 4:9, 4:18
list [1] - 15:6
listen [1] - 18:24
lives [1] - 16:2
living [2] - 10:12, 13:4
LIVINGSTON [1] - 2:4
LLC [2] - 2:2, 7:20
LLP [1] - 2:7
Local [1] - 3:23
LP [1] - 10:7
Ltd [1] - 7:2

M

MADISON [1] - 2:9
magistrate [2] - 5:15, 6:8
Magistrate [1] - 13:17
main [1] - 5:16
maintaining [1] - 11:15
management [1] - 12:2
maranowski [2] - 15:24, 16:16

marks [2] - 7:3, 7:15
Master [9] - 5:8, 6:7, 12:5, 13:6, 13:15, 15:5, 15:8, 21:20
materials [1] - 16:8
matter [3] - 11:1, 22:9, 23:5
Matthew [1] - 16:2
McCarter [1] - 6:9
McKay [3] - 1:23, 3:25, 23:11
McKay-Soule [3] - 1:23, 3:25, 23:11
MCMANIMON [1] - 2:2
meantime [1] - 12:6
mechanical [1] - 16:14
medical [1] - 12:16
meet [2] - 11:3, 14:9
Megan [3] - 1:23, 3:25, 23:11
Megan_McKay [1] - 1:23
Megan_McKay-Soule@njd.uscourts.gov [1] - 1:23
merits [2] - 14:11, 14:15
Mgmt [2] - 7:20, 10:9
MICHELE [1] - 2:3
might [2] - 8:7, 10:19
million [2] - 9:18, 9:21
mindful [2] - 11:1, 12:8
minimize [1] - 4:23
minutes [1] - 18:6
misplaced [1] - 10:19
misused [1] - 10:19
Mktg [1] - 10:7
Mo [1] - 10:3
modification [2] - 7:17, 8:9
modify [2] - 5:21, 8:4
Modify [6] - 3:15, 6:16, 7:4, 8:4, 8:7, 8:11
modifying [2] - 10:9, 13:9
moment [1] - 3:12
money [7] - 4:17, 9:14, 13:4, 20:4, 20:8, 20:11, 20:13
monopolize [1] - 6:5
months [1] - 5:12
moot [1] - 19:7
moreover [1] - 9:21
Morgan [1] - 7:2
Motion [11] - 3:15, 6:16, 7:4, 8:4, 8:6, 8:11, 13:10, 13:12,

13:13, 14:16
motion [14] - 3:16, 3:17, 3:19, 5:4, 5:13, 5:17, 6:1, 8:5, 13:16, 13:23, 14:1, 14:12, 15:25, 16:1
motions [4] - 3:14, 3:21, 5:14
move [1] - 17:25
moved [1] - 5:2
moving [3] - 6:17, 13:18, 14:18
Moving [4] - 6:17, 8:13, 8:22, 9:4
MR [9] - 3:6, 17:14, 19:23, 19:24, 20:23, 21:15, 22:2, 22:4, 22:8
MS [5] - 15:18, 18:3, 18:13, 19:2, 19:15
multiple [1] - 5:6
MURTUZA [1] - 1:7
must [1] - 7:23
mutual [1] - 20:19

N

N.D [2] - 7:19, 13:1
named [1] - 16:2
names [1] - 11:7
narrow [1] - 16:25
nature [2] - 7:11, 12:8
necessarily [2] - 9:23, 14:8
necessities [1] - 10:13
need [7] - 6:1, 8:25, 12:9, 14:8, 15:11, 17:13, 17:20
needed [2] - 5:22, 16:24
needs [2] - 11:16, 12:14
negotiate [2] - 20:3, 20:15
negotiated [2] - 18:14, 20:5
neutral [2] - 11:2, 19:10
NEW [1] - 1:1
new [6] - 9:22, 11:10, 11:12, 11:13, 11:24, 18:16
New [2] - 1:11, 2:10
Next [4] - 10:2, 10:14, 12:12, 13:5
next [2] - 5:1, 16:7
Next-gen [1] - 10:2, 10:14, 12:12, 13:5
NJ [1] - 2:5
no-conflict [1] - 6:12

no-nonsense [1] - 6:10
none [2] - 20:18, 20:20
nonsense [1] - 6:10
Nos [1] - 5:7
nothing [4] - 19:13, 19:23, 22:2, 22:5
notion [2] - 4:16, 8:14
November [4] - 4:6, 5:7, 15:12, 15:22
NUMBER [1] - 1:3
Number [17] - 3:16, 3:17, 3:18, 3:20, 6:17, 6:18, 6:19, 6:20, 6:22, 8:5, 13:9, 13:10, 13:18, 14:3, 14:18, 14:19
numbers [1] - 6:22
NY [1] - 2:10

O

objection [2] - 6:14, 21:21
obtain [1] - 3:23
obviously [1] - 12:19
Oct [1] - 7:8
October [4] - 1:11, 3:2, 15:13, 23:11
OF [2] - 1:1, 1:16
OFFICIAL [1] - 23:1
Official [1] - 1:23
old [1] - 5:12
omits [1] - 13:24
omitted) [2] - 7:3, 7:15
once [1] - 15:6
one [15] - 3:15, 6:5, 6:7, 6:14, 11:10, 11:24, 12:11, 12:15, 16:14, 17:10, 17:12, 17:16, 17:20, 19:24, 21:20
one-time [2] - 12:11, 12:15
opinion [4] - 15:3, 15:9, 21:1, 21:7
Opp'n [2] - 6:18, 9:8
Opp'n,") [1] - 6:20
opportunity [2] - 4:8, 4:13
opposed [2] - 13:19, 14:19
opposition [1] - 6:18
oral [3] - 3:21, 18:10, 21:5
Order [5] - 8:8, 13:9, 14:3, 15:3, 15:10
order [21] - 3:19, 4:1, 4:2, 5:3, 5:14, 8:24,

10:21, 12:11, 12:15, 13:16, 13:21, 13:24, 14:6, 14:13, 19:13, 20:3, 20:7, 20:16, 21:7
ordering [1] - 11:23
OSC [5] - 18:14, 20:3, 20:6, 20:7, 20:10
otherwise [1] - 9:3
Otherwise [1] - 17:22
outline [1] - 18:21
outstanding [1] - 15:7
overseas [1] - 16:2
oversight [1] - 12:2
ownership [1] - 11:22
owns [1] - 8:15

**P**

p.m [3] - 1:12, 3:3, 22:10
page [1] - 14:3
papers [3] - 13:18, 14:18, 18:11
part [2] - 5:10, 14:6
parte [5] - 5:2, 10:16, 10:24, 19:6, 19:11
particular [1] - 7:3
parties [9] - 4:4, 5:6, 5:18, 11:3, 11:4, 11:6, 12:3, 18:19, 20:18
parties' [4] - 8:3, 8:9, 13:17, 14:17
party [2] - 4:9, 4:18
pathway [1] - 6:11
Paulson [1] - 15:18
PAULSON [2] - 1:17, 15:18
pay [7] - 4:12, 10:12, 12:12, 12:16, 12:18, 13:7, 20:4
paying [1] - 4:20
payments [2] - 4:11, 20:6
pays [1] - 4:21
penalty [1] - 11:18
pending [4] - 3:13, 5:14, 6:1, 18:22
perjury [1] - 11:18
permits [1] - 13:21
personal [4] - 8:18, 8:20, 9:9, 11:19
PI [8] - 14:7, 15:4, 15:12, 15:16, 15:25, 16:1, 17:5, 18:5
picking [1] - 14:6
picture [1] - 5:20
pitch [1] - 4:14
place [2] - 7:7, 11:10
placed [2] - 17:5, 20:19
PLACONA [5] - 2:3, 18:3, 18:13, 19:2, 19:15
Placona [2] - 18:3, 18:25
Plaintiff [4] - 1:5, 1:19, 9:21, 17:6
plaintiff's [1] - 7:24
Plaintiff's [2] - 17:11, 17:19
plaintiffs [1] - 22:1
plan [2] - 16:12, 16:23
planned [2] - 15:23, 16:11
plenary [1] - 5:15
point [2] - 5:16, 18:4
portion [1] - 13:24
portions [1] - 16:6
possession [2] - 11:14, 11:25
potential [1] - 13:7
power [1] - 7:12
precondition [1] - 11:16
prefer [1] - 10:8
preliminary [8] - 5:3, 5:13, 5:17, 6:1, 10:2, 14:2, 14:10, 18:1
preparation [1] - 14:7
prepared [1] - 16:17
preparing [1] - 14:1
present [5] - 11:22, 15:14, 16:4, 16:9, 17:6
presenting [1] - 15:20
preserved [1] - 9:1
pressing [1] - 12:13
presume [1] - 21:17
private [1] - 7:13
Procedure [1] - 3:22
proceeding [1] - 7:10
Proceedings [1] - 1:25
proceedings [1] - 23:5
PROCEEDINGS [1] - 3:1
proceeds [2] - 4:20, 9:12
process [1] - 19:11
produced [1] - 1:25
professional [1] - 4:8
profitable [2] - 4:20, 4:23
proof [1] - 9:10
property [2] - 8:12, 8:19
propose [1] - 11:5
protecting [1] - 7:25
protective [4] - 3:19, 5:14, 13:16, 14:13
provide [3] - 4:5, 9:11, 18:6
provided [3] - 12:23, 15:13, 17:4
providers [2] - 4:9, 4:18
providing [1] - 12:1
public [2] - 7:11, 14:12
Publishers [1] - 13:1
purchases [1] - 8:19
purports [1] - 4:7
purpose [1] - 13:25
pursuant [3] - 3:22, 18:20
put [3] - 5:14, 8:19, 21:5

**Q**

qualifications [1] - 11:8
qualify [1] - 10:12
questions [1] - 14:14
QUINN [1] - 2:7
quo [1] - 9:2
quotation [2] - 7:3, 7:15
quote [2] - 14:1, 14:2
quoting [1] - 14:2
Quraishi [1] - 3:5
QURAISHI [2] - 1:13, 3:2

**R**

rather [1] - 4:20
RDR [1] - 23:11
reach [2] - 16:24, 17:16
read [4] - 3:13, 8:7, 15:9, 19:12
reading [1] - 3:25
reads [1] - 14:5
real [3] - 8:18, 8:19, 9:9
really [1] - 16:19
reasons [1] - 6:6
receive [1] - 4:11
received [1] - 9:9
Receiver [9] - 5:4, 6:19, 6:21, 10:23, 11:5, 11:10, 11:12, 11:14, 11:25, 18:16, 19:4, 20:19, 22:6
receiver [8] - 3:8, 3:9, 3:17, 11:2, 12:1,
18:17, 19:7, 19:10
receiver's [1] - 18:18
Receiver's [1] - 6:19
recognize [1] - 9:25
recognized [1] - 7:16
recognizes [3] - 10:22, 12:6, 12:13
reconsideration [2] - 8:6, 8:7
record [6] - 3:13, 5:10, 16:8, 17:5, 19:12, 23:5
recorded [1] - 1:25
reduce [1] - 8:23
reduced [1] - 8:25
regard [1] - 17:8
regarding [7] - 8:9, 17:10, 17:11, 17:21, 18:1, 18:15, 20:25
related [1] - 20:18
release [8] - 7:23, 10:10, 10:11, 12:6, 12:11, 12:15, 13:7, 20:8
released [6] - 5:23, 8:13, 8:22, 12:22, 13:4, 20:11
relevant [1] - 20:20
relied [1] - 16:1
relief [6] - 6:25, 7:4, 7:7, 7:18, 10:8, 13:15
remain [3] - 9:5, 11:10, 15:7
remaining [1] - 21:19
remedy [1] - 8:22
removing [1] - 9:2
replied [1] - 6:20
Reply [2] - 8:20, 9:3
reply [3] - 6:21, 8:16, 14:19
reply") [1] - 6:20
reporter [1] - 3:24
Reporter [1] - 1:23, 23:12
REPORTER'S [1] - 23:1
reports [1] - 18:19
represent [1] - 11:1
Republic [1] - 20:13
request [4] - 5:21, 8:8, 8:23, 14:10
requesting [1] - 16:18
requests [1] - 12:22
requirements [1] - 7:1
requires [1] - 13:4
reserving [1] - 13:13
resolve [2] - 5:18, 13:12
resolved [1] - 12:5
respect [2] - 12:22, 18:8
respectful [1] - 15:22
respectfully [1] - 18:4
respond [1] - 14:14
response [2] - 6:21, 19:19
responsibility [2] - 11:2, 11:4
rest [1] - 17:23
restitution [1] - 7:25
restraining [1] - 5:2
retained [2] - 9:17, 10:25
return [2] - 11:14, 11:25
review [1] - 21:8
reviewed [3] - 8:3, 13:17, 14:17
rhetoric [1] - 15:1
ripe [1] - 19:8
Robert [1] - 17:14
ROBERT [1] - 2:8
role [1] - 12:1
ROSELAND [1] - 2:5
Rule [2] - 3:22, 3:23

**S**

S.D [1] - 10:7
S.D.N.Y [1] - 7:2
salaries [1] - 12:19
sales [2] - 4:14, 9:12
SARI [1] - 2:3
Sari [1] - 18:3
satisfied [1] - 11:24
schedule [4] - 15:12, 15:14, 15:15, 17:4
scheduled [2] - 14:14, 16:7
school [1] - 20:5
scope [1] - 13:20
SCOTLAND [1] - 2:2
Scott [1] - 7:2
seal [1] - 4:25
SEC [1] - 7:20
second [1] - 16:8
securities [2] - 7:22, 10:11
See [3] - 7:1, 12:12, 12:20
see [7] - 7:20, 10:9, 10:13, 16:15, 16:23, 17:17, 19:19
seek [3] - 8:7, 13:15, 13:19
seize [1] - 5:4
seized [2] - 11:14, 12:1
seizure [4] - 8:24,

8:25, 10:21, 13:12
**seizure-type** [1] - 10:21
**selectively** [1] - 13:23
**selling** [1] - 8:17
**sensitive** [1] - 15:21
**separation** [1] - 12:24
**serious** [1] - 12:8
**seriously** [1] - 11:20
**set** [1] - 5:7
**several** [1] - 17:23
**shall** [2] - 11:22, 12:5
**show** [2] - 7:17, 9:6
**Sierra** [1] - 7:9
**sign** [1] - 18:2
**simply** [1] - 5:25
**slipped** [1] - 14:23
**SODONO** [6] - 1:8, 2:2, 19:24, 20:23, 21:15, 22:8
**Sodono** [5] - 10:23, 19:4, 19:25, 20:17, 22:7
**someone** [1] - 16:2
**somewhere** [1] - 17:24
**sought** [1] - 8:22
**Soule** [3] - 1:23, 3:25, 23:11
**Soule@njd.uscourts .gov** [1] - 1:23
**sources** [1] - 9:7
**sp** [1] - 16:16
**sp)** [1] - 16:2
**Special** [9] - 5:8, 6:6, 12:5, 13:6, 13:15, 15:5, 15:8, 21:20
**speed** [1] - 19:16
**spending** [1] - 9:13
**spent** [1] - 9:14
**spoken** [1] - 18:25
**SRO** [12] - 3:15, 5:3, 5:4, 5:5, 5:21, 6:16, 8:5, 8:9, 8:24, 9:1, 10:20, 18:20
**stake** [1] - 7:13
**STALTARI** [1] - 2:7
**standpoint** [1] - 16:20
**start** [1] - 17:24
**started** [2] - 4:6, 5:16
**State** [1] - 1:10
**States** [4] - 3:2, 4:7, 20:4, 20:12
**STATES** [2] - 1:1, 1:13
**status** [2] - 9:2, 18:21
**statutory** [1] - 5:2
**stenography** [1] - 1:25
**still** [1] - 17:10
**stipulation** [1] - 17:9

**Street** [1] - 1:10
**Stripe** [4] - 3:18, 13:10, 13:14, 20:16
**submissions** [2] - 13:17, 14:17
**submit** [3] - 11:7, 21:3, 21:18
**submitted** [1] - 15:25
**submitting** [1] - 16:5
**subsequently** [1] - 8:19
**substance** [1] - 15:2
**success** [1] - 14:10
**successful** [1] - 4:11
**suffering** [1] - 10:6
**sufficient** [1] - 9:10
**suitable** [1] - 11:5
**Suite** [1] - 1:18
**SUITE** [1] - 2:4
**SULLIVAN** [1] - 2:7
**summaries** [1] - 11:8
**Supp** [3] - 7:2, 7:14, 10:7
**supplement** [2] - 16:6, 16:8
**supplementing** [1] - 21:4
**support** [1] - 15:25

---

### T

**t]he** [1] - 8:14
**telephone** [1] - 3:1
**TELEPHONE** [1] - 1:5
**Temporary** [13] - 5:4, 6:19, 6:21, 10:23, 11:5, 11:10, 11:12, 11:13, 11:25, 18:15, 19:4, 20:19, 22:6
**temporary** [3] - 3:9, 3:17, 18:8
**territory** [1] - 14:24
**testimony** [7] - 16:1, 16:6, 16:22, 16:24, 17:1, 17:9, 17:12
**Tex** [1] - 7:19
**THE** [16] - 1:1, 1:13, 3:4, 3:7, 17:3, 17:18, 18:9, 18:24, 19:3, 19:21, 20:17, 21:1, 21:16, 22:3, 22:6, 22:9
**themselves** [1] - 12:9
**therefore** [8] - 8:6, 10:8, 11:4, 11:18, 12:10, 13:13, 14:12, 20:21
**they've** [1] - 19:5
**third** [2] - 4:9, 4:18
**third-party** [2] - 4:9,

4:18
**three** [2] - 3:17, 11:7
**Tmte** [3] - 7:18, 8:1, 13:2
**today** [3] - 4:3, 15:4, 20:7
**today's** [1] - 20:24
**together** [2] - 5:24
**tomorrow** [1] - 18:21
**tone** [1] - 15:1
**total** [3] - 9:18, 9:20, 12:23
**toward** [1] - 8:19
**Traders** [9] - 4:6, 4:11, 4:12, 4:14, 4:16, 4:21, 8:18, 11:19, 12:19
**TRADERS** [1] - 1:7
**traders** [1] - 4:8
**trades** [3] - 4:11, 4:19, 4:21
**TRADING** [2] - 1:3, 1:15
**trading** [2] - 4:13, 4:23
**transact** [1] - 4:18
**transactions** [2] - 4:8, 9:10
**transcript** [6] - 1:25, 3:24, 4:1, 19:12, 21:8, 23:4
**transcription** [1] - 1:25
**transferring** [1] - 9:2
**transition** [2] - 13:11, 13:13
**transitioning** [1] - 10:20
**Tree** [3] - 7:7, 10:13, 12:20
**tremendous** [1] - 18:17
**Trenton** [2] - 1:11, 21:24
**trying** [1] - 20:2
**tuition** [1] - 12:17
**turning** [1] - 6:16
**turns** [1] - 14:16
**two** [6] - 3:16, 5:12, 15:24, 16:7, 18:6, 20:10
**type** [1] - 10:21

---

### U

**U.S** [4] - 1:10, 1:15, 7:9, 12:11
**unable** [3] - 5:18, 5:24, 11:6
**under** [3] - 4:25, 7:5, 11:18

**unfreeze** [1] - 20:4
**unfreezing** [1] - 10:1
**United** [4] - 3:2, 4:7, 20:4, 20:12
**UNITED** [2] - 1:1, 1:13
**unlawful** [1] - 9:7
**unless** [1] - 20:8
**unlikely** [1] - 9:15
**unreasonable** [1] - 9:22
**unrelated** [2] - 8:18, 9:23
**untainted** [3] - 9:6, 9:11, 12:24
**unwilling** [1] - 5:24
**up** [3] - 6:22, 19:16, 20:9
**upcoming** [1] - 15:11
**update** [3] - 18:7, 18:9, 18:13
**URLs** [1] - 16:19
**URQUHART** [1] - 2:7
**uses** [1] - 4:22

---

### V

**various** [2] - 4:15, 4:22
**via** [2] - 3:1, 4:8
**view** [1] - 9:8
**violation** [1] - 20:11
**violations** [1] - 5:1
**virtually** [1] - 5:19
**voice** [2] - 19:7, 20:19

---

### W

**W.D** [2] - 7:21, 10:3
**wants** [1] - 15:16
**warranted** [2] - 12:7, 14:21
**wasting** [1] - 16:21
**website** [1] - 16:19
**week** [5] - 6:14, 11:6, 11:24, 16:7, 21:20
**weigh** [3] - 9:25, 11:3, 19:5
**willing** [1] - 11:13
**withdrawing** [1] - 9:2
**witness** [4] - 17:10, 17:12, 17:13, 17:20
**witnesses** [2] - 15:24, 16:12
**WL** [13] - 7:8, 7:19, 7:21, 8:2, 10:3, 10:10, 10:13, 10:14, 12:12, 12:20, 13:1, 13:2, 13:5
**WOLF** [2] - 2:8
**writing** [3] - 21:3,

21:6, 21:18

---

### Y

**York** [1] - 2:10

---

### Z

**ZAHID** [2] - 1:13, 3:2
**Zink** [1] - 17:15
**ZINK** [5] - 2:8, 3:6, 17:14, 19:23, 22:4

---

### ¶

**¶¶** [4] - 4:10, 4:13, 4:19, 4:24
**¶¶23-43** [1] - 4:15