# Exhibit "A"

**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III, Esq. (asodono@msbnj.com)
Michele M. Dudas, Esq. (mdudas@msbnj.com)
Sari B. Placona, Esq. (splacona@msbnj.com)
*Counsel to Anthony Sodono, III, Temporary Receiver*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TRADERS GLOBAL GROUP INC., a New Jersey corporation, d/b/a "My Forex Funds"; TRADERS GLOBAL GROUP INC., a Canadian business organization; and MURTUZA KAZMI, <br><br> Defendants. | Civil Action No. 3:23-cv-11808-ZNQ-TJB |

### REPORT OF ANTHONY SODONO, III, TEMPORARY RECEIVER
### PURSUANT TO CIV. RULE 66.1, *ET SEQ.*

Anthony Sodono, III, the temporary receiver ("Temporary Receiver") appointed pursuant to this Court's August 29, 2023, Statutory Restraining Order ("SRO") [ECF 13], hereby submits his initial report (the "Report"), summarizing his efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by the SRO pursuant to Civ. Rule 66.1, *et seq.*

Commodities Future Trading Commission ("Plaintiff") is the plaintiff in this matter. The defendants in the matter are Traders Global Group Inc., a New Jersey corporation, d/b/a My Forex Funds, Traders Global Group Inc., a Canadian business organization (collectively, "TGG") and Murtuza Kazmi ("Mr. Kazmi") (where appropriate, the TGG entities and Mr. Kazmi will be collectively referred to as "Defendants").[1] The Temporary Receiver is a neutral third-party appointed pursuant to the SRO.[2]

## **BACKGROUND FACTS**

Upon the Temporary Receiver's appointment, the following actions were immediately undertaken: (a) identification of assets of the Defendants, and corresponding attempts to secure the assets; (b) communication and interfacing with the OSC regarding the various freeze directives

---

[1] There is a proceeding pending in the Ontario Superior Court of Justice in Canada bearing the name In the Matter of Traders Global Group Inc., 15003865 Canada Inc. and Muhammad Murtuza Kazmi (the "Ontario Proceeding"). The Ontario Securities Commission ("OSC") is prosecuting the Ontario Proceeding. The OSC issued numerous freeze directives and has taken the position that all assets wherever located -- Canada, United States, Czech Republic or any other location are subject to the OSC's freeze order and nothing can be transferred or disbursed from any account. Attached as **Exhibit "A"** are various Freeze Directives issued in the Ontario Proceeding. Numerous communications were had by Norton Rose on the Temporary Receiver's behalf in the Ontario Proceeding, including with Defendants' Canadian counsel, to negotiate the release of funds for the benefit of Defendants.

[2] Pursuant to the Court's ruling on October 26, 2023, Plaintiff and Defendants are required to select a new Temporary Receiver by November 2, 2023, or provide the Court with three names of a proposed replacement temporary receiver if they cannot come to an agreement. Pursuant to comments made by the Court in its ruling, if the parties mutually agree, they may select the current Temporary Receiver. The Temporary Receiver also respectfully requests the Court continue the Temporary Receiver's appointment insofar as he and his team have spent an inordinate amount of time and has made significant process resulting in an agreement for the chargeback and payment of employees. Also, as detailed below, the Temporary Receiver and the Defendants have agreed in concept on expenses, however, the OSC prohibited the Temporary Receiver from entering into an agreement without OSC approval. As a result, the Temporary Receiver's Canadian counsel has worked diligently for more than a month negotiating an order with the OSC and Defendant's counsel in Canada.

issued in the Ontario Proceeding as it related to Canadian assets; (c) communication with GoDaddy to secure and take control of TGG's website; (d) communication with the Plaintiff and Defendants, jointly and individually, in an attempt to obtain access to, understand and address any urgent issues respecting the Defendants' assets or the TGG' business. The Temporary Receiver also negotiated a consent order with the defendants regarding (1) chargebacks and payment to contractors for same, and (2) payment for Defendants, Mr. Kazmi and his family's expenses.

That process evolved to countless calls and e-mails with all parties, particularly once Defendants retained Quinn Emanuel ("QE") as their defense counsel on or about September 5, 2023. Moreover, the Temporary Receiver has had numerous communications with Defendants' Canadian counsel (Defendants obtained new Canadian counsel a few weeks after the case was started). Thus, the Temporary Receiver, through his Canadian counsel, started negotiations anew with the Defendants' replacement counsel.

On September 7, 2023, the Temporary Receiver filed an Application to retain McManimon, Scotland & Baumann, LLC ("MSB") as his counsel and Eisner Advisory Group ("Eisner") as his accountants ("Retention Application"). [ECF 27]. No party objected to the Retention Application, which resulted in the Order approving MSB serving as counsel and Eisner serving as accountants to the Temporary Receiver. [ECF 35].

After unusual delay by the Internal Revenue Service in issuing the tax identification number ("Tax ID"), the Temporary Receiver was finally issued a Tax ID for the receivership estate on September 25, 2023, and the Temporary Receiver established bank accounts with Ascendia Bank for amounts up to $250,000, and with ConnectOne Bank[3] for any amount over $250,000 in order to protect the funds beyond the standard FDIC insured coverage. [ECF 89].

---

[3] ConnectOne Bank offers deposit solutions beyond FDIC limits at IntraFi Cash Service which is a network of banks beyond the standard $250,000 coverage through ICS and CDARS.

2

On September 22, 2023, the Court entered an Order Authorizing the Temporary Receiver to employ Norton Rose Fulbright US LLP and Norton Rose Fulbright Canada LLP as Special Counsel (collectively, "Norton Rose"). [ECF 64].  Norton Rose has been critical in communicating and interfacing with the OSC regarding the Ontario Proceeding and assisting the Temporary Receiver with establishing an account with Coinbase (regarding crypto currency in an account in the Czech Republic).  Norton Rose has had dozens of conversations with Defendants' counsel in Ontario and with the OSC.

The Temporary Receiver has served Subpoenas on each of the Defendants, QE as counsel to the Defendants (seeking information relating to the retainer agreement and retainer payment made – described in detail below) and Stripe, Inc. ("Stripe").

**List of Known/Disclosed Assets**

Below is an asset chart assembled by the Temporary Receiver's counsel based upon information obtained either independently by the Temporary Receiver's investigation or through disclosure by the Defendants:

| Asset Description | Owner/Account Holder | Estimated Value/Notes | Location |
|---|---|---|---|
| BMO Harris Bank N.A. ("BMO") | TGG | $0 ($860,461.67 on hand with Temporary Receiver is derived from) | US |
| Deel, Inc. | TGG | Unknown, but upon information and belief, payroll processor | US |
| Citizen's Bank | Kazmi | $238.67 $667.29 | US |
| CDO Markets ("CDO") | TGG | $617,963.57 | Vanuatu |
| Gemini | Kazmi | $0; closed account without access | US |
| Coinbase | | Unknown; account blocked/allegedly closed | US |

3

| Asset Description | Owner/Account Holder | Estimated Value/Notes | Location |
|---|---|---|---|
| TD Bank | TGG Kazmi TGG Unknown Unknown Unknown | Unknown; upon information and belief, first four accounts closed; last two accounts are trading accounts and listed as active | US |
| 2101 Bo Boulevard, Phillipsburg, NJ | Kazmi | $386,000 (estimated value per realtor.com) | US |
| Wise | | $63,894 USD | UK |
| Confirmo | TGG | 0.010000158 BTC 2793766.678 USD | Slovakia |
| BitBuy | TGG | $500,008.63 USD ($680,011.73 CA) 13,500,547.10544775 USDC ($18,360,744.06 CA) 623.3806774 BCH ($169,547.07 CA) 0.06731719 BTC ($2,367.00 CA) 1.03065997 ETH ($2,233.37 CA) 0.22288787 LTC ($18.151 CA) [may be additional holdings] | Canada |
| Bank of Montreal | | Unknown | Canada |
| Bank of Montreal | Kazmi | $152,330.18, as of 09/12/2023 | Canada |
| Canadian Imperial Bank of Commerce ("CIBC") | | $311,156.91 $147,078.41 $42,135.12 | Canada |
| CIBC | | $4,961.81 | Canada |
| Stripe | TGG | $6,200,000 (estimated) | Canada |
| Edward Jones | | Unknown; account locked | Canada |
| Real Property: 206-60 Absolute Avenue Mississauga, ON  L4Z 0A9 | | | Canada |

4

| Asset Description | Owner/Account Holder | Estimated Value/Notes | Location |
|---|---|---|---|
| Real Property: 206-60 Absolute Avenue Mississauga, ON  L4Z 0A9 | | | Canada |
| Real Property: 206-60 Absolute Avenue Mississauga, ON  L4Z 0A9 | | | Canada |
| Real Property: 65 Westwood Lane Richmond Hill, ON  L4C 6X6 | Kazmi | Purchased in mid-2022 for $12,600,000 | Canada |
| 2017 Infinity QX60 4 DR AED | Kazmi | | Canada |
| 2018 Ferrari 812 Superfast 2DR | Kazmi | | Canada |
| 2019 Lamborghini URUS 4DR AWD | Kazmi | | Canada |
| 2019 Bugatti | Kazmi | | Canada |
| 2021 BMW M5 Competition M xDrive 4DR AWD | Kazmi | | Canada |
| 2021 Porsche 911 Turbo S2DR Coupe AWD | Kazmi | | Canada |
| 2022 Lamborghini Aventador LP780 Ultimate 2D AWD | Kazmi | | Canada |
| 2023 Lamborghini Huracan Techica 2DR | Kazmi | | Canada |

The only funds currently on hand by the Temporary Receiver are $860,461.67 received from a BMO (Bank of Montreal) corporate account located in the United States, which BMO turned over directly to the Temporary Receiver upon demand.  Notwithstanding that the funds were in a US bank account, the OSC has taken the position that the funds are subject to its freeze directives and cannot be removed with a court order or OSC's consent.  The Temporary Receiver expects to receive additional funds from Confirmo, located in Slovakia, which will be paid in Stablecoin, since Confirmo advised payment by the United States dollar was not possible. The process of onboarding and establishing an account with Coinbase, which the Temporary

5

Receiver's special counsel advised was the most risk-adverse and one of the safest options, has finally been completed after multiple communications, and the Temporary Receiver received his "yubikey"[4] for the account on October 27, 2023.   The value of the Confirmo funds are approximately $2.8 million USD.

Login credentials for accounts of the Defendants were provided for the first time by Defendants on September 11, 2023, for GoDaddy, BMO, CIBC, Confirmo and BitBuy. Because of two (2) factor authentication settings on the accounts, they were not accessed until late in the evening on September 12, 2023, when Mr. Kazmi was available. Credentials for undisclosed accounts with CDO and Gemini were provided on September 15, 2023, but access to the accounts were not provided until September 20, 2023, and September 22, 2023. The last round of login credentials provided by Defendants for Citizen's Bank, Wise, Coinbase, Deel, and Edward Jones were made on the evening of September 26, 2023, and not accessed until October 2, 2023, based upon Mr. Kazmi's availability.

While Mr. Kazmi has provided logins, there are two-factor authentication issues for nearly every account except for BMO, and the Temporary Receiver was unable to simply login or change passwords or other account settings.   Each two-factor authentication request is sent to a phone number or e-mail belonging to Mr. Kazmi. That said, the accounts all appear to have a notation that they were suspended or other restriction.

The Defendants did not provide the login credentials for the hosting portion of Defendants' GoDaddy accounts, and only provided information which would allow the Temporary Receiver to have delegated access. That said, with the login credentials in hand, the Temporary Receiver

---

[4] A "yubikey" is a security token that enables users to add a second authentication factor to online services from tier 1 vendor partners, including Google, Amazon, Microsoft and Salesforce.  A yubikey, which stands for ubiquitous key, looks like a USB thumb drive.

4877-0135-7964, v. 1

worked with GoDaddy to be able to access the account for the limited purpose of changing the message on TGG's website, www.myforexfunds.com ("Website posted by Mr. Kazmi upon issuance of the SRO). The Temporary Receiver posted a new message on or about September 18, 2023, and came to an agreement with counsel to Defendants for the following language, which currently appears on the Website:

> On August 29, 2023, Anthony Sodono, III, Esq., was appointed as temporary receiver ("Temporary Receiver") pursuant to a Statutory Restraining Order ("SRO") entered in the civil action captioned Commodity Futures Trading Commission v. Traders Global Group Inc., et al., Case No. 3:23-cv-11808 ZNQ-TJB, pending in the United States District Court for the District of New Jersey, Trenton vicinage ("District Court"). We designed this website to provide convenient access to information about the Temporary Receivership and contact information for the Temporary Receiver. As our work progresses, we will update relevant information on this website. As a brief summary, the Commodity Futures Trading Commission ("CFTC") filed a civil enforcement action in Federal District Court against the following Defendants: Traders Global Group Inc., a New Jersey corporation d/b/a My Forex Funds; Traders Global Group Inc., a Canadian business (collectively, "Traders Global"); and Murtuza Kazmi (collectively, the "Defendants"). The CFTC alleges that Defendants violated certain provisions of the Commodities Exchange Act and CFTC regulations. Specifically, the CFTC alleges that Defendants engaged in fraud in connection with retail forex transactions, engaged in fraud in connection with off-exchange transactions in retail forex and retail commodities, acted as an unregistered retail foreign exchange dealer ("RFED"), acted as an unregistered RFED associated person, and engaged in off-exchange retail commodity transactions. The Defendants dispute the CFTC's allegations. There has not been any final determination by the court regarding Defendants' liability. Therefore, the Temporary Receiver has no authority at this time to return or to refund any money. We will continue to update this information as the case progresses. If you require further information not contained in this website, or have any information to present to the Receiver in connection with his investigation pursuant to the SRO, you may contact us using the form below.

The Website also has a contact form section for customers and/or potential victims of the Defendants to submit inquiries and other relevant information. As of October 26, 2023, there were 9,318 submissions.[5] Daily reports of the submissions have been provided by the Temporary

---

[5] This is the total number of submissions, without any analysis whether it is separate unique individuals or if there are any duplicative submissions. Regardless, the amount of submissions in a short time frame are massive.

Receiver to counsel to the Defendants. The same information is provided to the Plaintiff, but on a weekly basis, at the Plaintiff's request.

It was not until October 12, 2023, that the Defendants' books and records were produced but the production was limited. A majority of the files cover a range of corporate and legal aspects, including director appointments, by-laws, shareholder resolutions, share purchase agreements, shareholders ledgers and organizational decisions.

The financial documents received by the Temporary Receiver and reviewed by Eisner are as follows:

- Tax returns of Mr. Kazmi for the years of 2020-2022;
- Tax returns for TGG (CAN) for the years 2021 and 2022;
- Federal and State tax returns for TGG (US) for the years 2021;
- A Compilation engagement report for TGG (CAN) – Period from date of incorporation January 13, 2021 – December 31, 2021;
- A Compilation engagement report for TGG (US) – Period from date of incorporation April 22, 2021 – December 31, 2021; and
- TGG Transfer Pricing Support (This document needs to be analyzed and reconciled to additional financial information)

Eisner preliminarily reviewed the compilation engagement reports and has noted that certain financial information should be further analyzed and supported including, but not limited to, cash balances listed on the returns, amounts due to related parties, sales data, subcontracting fees and revenues, consulting fees, amounts due to shareholder, amounts due to related parties, dividends paid, and net earnings/revenue.

As of the issuance of this Report, the Defendants have not provided the Temporary Receiver with a list of known assets.[6]

---

[6] In connection with the Court's October 26, 2023, ruling on various motions, Mr. Kazmi was ordered to provide an affidavit that discloses all assets by November 2, 2023, including any present interest or contingent interest. [ECF 107]. It should also be noted that very recently the Defendants told the Temporary Receiver that he was using credit cards and that friends have been providing support. The Temporary Receiver is waiting for information as to how much is being borrowed and on what terms.

4877-0135-7964, v. 1

**Actions Required of Defendants Under SRO**

The following actions were required to be taken by the Defendants pursuant to the SRO,

along with an explanation as to what has been satisfied:

- At the request of the Temporary Receiver, Defendants and any other person who has possession, custody or control of any of Defendants' funds, assets, or other property shall transfer possession of all assets subject to this Order. SRO ¶ 19.
    - **Response:** The only assets of the Receivership Estate currently on hand are approximately $860,000 received from a BMO corporate account located in the United States, which BMO, and not the Defendants, turned over to the Temporary Receiver. The Temporary Receiver is still working with the Defendants to turn over any assets not recovered by the Temporary Receiver.

- Within ten business days of a request by the Temporary Receiver…provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants… SRO ¶ 28(a).
    - **Response**: Defendants have provided login credentials for certain financial accounts but did not turn over complete records for assets owned, controlled, managed or held by or on behalf of the Defendants.

- Cooperate with all reasonable requests of the Temporary Receiver…including transferring Defendants' funds at the Temporary Receiver's direction… SRO ¶ 28(b).
    - **Response:** The Temporary Receiver has not received any voluntary funds from Defendants.

- Provide the Temporary Receiver within five (5) business days from entry of the SRO with "a full detailed accounting of all assets including the assets inside and outside of the United States. . ." SRO ¶ 31(a).
    - **Response:** The Temporary Receiver has not received an accounting.

- Transfer to the territory of the United States and deliver to possession, custody and control of the Temporary Receiver, all records and assets (other than real property) located outside of the United States that are held by each and every Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly, except to the extent that doing so would violate the existing freeze, injunction or similar hold imposed by a foreign agency or regulator, including but not limited to the [OSC] or the courts of Canada. SRO ¶ 31(b).
    - **Response:** While the majority of the Defendants' assets are located in Canada and subject to the freeze directives of the OSC, the Defendants did not turn over the Confirmo funds in Slovakia (which the Temporary Receiver has arranged for compliance directly with Confirmo), and have

9

taken no action to transfer funds held in a previously undisclosed CDO account located in Vanuatu with an estimated value of $618,000 USD, or Wise account which, upon information and belief, is located in the United Kingdom, with an estimated value of $63,000 USD.

- Provide the Temporary Receiver with access to all records or accounts or assets of the Defendants held by any financial or brokerage institutions located within or outside the territorial United States by signing any necessary consent forms." SRO ¶ 31(c).
  - **Response:** Defendants have not executed consent forms.

- Defendants to prepare and deliver to the Temporary Receiver, within *twenty-four hours* of the issuance of the SRO, a "detailed and complete schedule of all passwords and identification (ID) numbers for all websites, cloud storage services, email and smartphone accounts, online chat and messaging services, social media sites, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which any of the Defendants have access in connection with their business activities and business and personal finances." SRO ¶ 32.
  - **Response:** Defendants have provided the Temporary Receiver with limited "delegated access" to two websites with GoDaddy. Defendants initially did not provide login information for hosting services, which would have provided access to the controls necessary. Without the cooperation of Defendants and with assistance from GoDaddy's legal department on September 18, 2023 after weeks of attempts to obtain access to the websites were made by the Temporary Receiver, the Temporary Receiver was able to change the message unilaterally posted by Defendants after the issuance of the SRO, and has provided a mechanism for customers and alleged victims of the Defendants to submit contact information, which reached 4,100 inquiries after the first day and currently exceeds 9,300 submission. No passwords and identification numbers have ever been provided for cloud storage services, email and smartphone accounts, online chat and messaging services, social media sites, which form, in part, the basis for the Temporary Receiver's joinder in the Emergency Motion for Contempt ("Contempt Motion") filed by the Plaintiff. [ECF 48]. Defendants have represented that they have provided login credentials to all financial institution and brokerage accounts.

- Within *twenty-four hours* of the issuance of the SRO, a detailed and completed schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Defendants in connection with their business activities and business and personal finances. SRO ¶ 33.
  - **Response:** Defendants have not provided this information.

- Deliver possession and custody of all assets of the Receivership Defendants, wherever situated, including those owned beneficially or otherwise, except to the extent

that doing so would violate an existing freeze, injunction, or other similar hold imposed by a foreign agency or regulator, including but not limited to the OSC or Canadian courts. SRO ¶ 34(a).

> o **Response:** Defendants have not delivered possession and custody of assets; in part, due to the OSC freeze directives.

• Deliver possession and custody of records of the Receivership Defendants in connection with their business activities and business and personal finances, including but not limited to, all records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other records of the Receivership Defendants. SRO ¶ 34(b).

> o **Response:** Defendants have not complied with this requirement, even after being served with a formal Subpoena by the Temporary Receiver.

• Deliver possession and custody of all assets belonging to members of the public now held by the Receivership Defendants, except to the extent that doing so would violate an existing freeze, injunction, or other similar hold imposed by a foreign agency or regulator, including but not limited to the OSC or Canadian courts. SRO ¶ 34(c).

> o **Response:** Defendants have not complied with this requirement.

• All keys, passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Receivership Defendants related to their business activities and business and personal finances, including, but not limited to, access to the Receivership Defendants' business premises, means of communication, accounts, computer systems, mobile electronic devices, or other property. SRO ¶ 34(d).

> o **Response:** Defendants have not complied which would have allowed the Temporary Receiver to "secure access" to any assets or records of the Defendants.

• Information identifying the accounts, employees, properties or other assets or obligations of the Receivership Defendants. SRO ¶ 34(e).

> o **Response:** Defendants have provided certain logins for financial institutions which Mr. Kazmi still controls because of two (2) factor authentication issues but otherwise has not complied.

The initial level of cooperation by the Defendants was not within the letter or spirit of the SRO, which is why the Temporary Receiver originally joined in the Contempt Motion filed by the CFTC [ECF 48], which was denied on October 26, 2023. [ECF 107].  To say the efforts to obtain information and assets has been difficult is an understatement.

**Stripe Chargebacks**

Within days of his appointment, the Temporary Receiver contacted Stripe and, after being initially informed that funds would be turned over the "next day," the Temporary Receiver was then informed that $6.,2 million in a reserve account was "secure" and would not be turned over. *See* ECF 66.   The Temporary Receiver continued to press as to when the funds would be transferred, however, Stripe eventually took the position that the funds were its property, not the Defendants, and there would be no turnover.

On September 19, 2023, the Defendants filed their Emergent Motion to Modify the SRO and for related relief ("Motion to Modify"). [ECF 42]. Stripe also filed an Objection to the proposed resolution reached with the Defendants [ECF 50].  The Defendants had never provided login credentials for this account, and any information was obtained directly from Stripe.  Through the Temporary Receiver's efforts and after lengthy negotiations with all parties, including the Defendants and Stripe, the issue was resolved by Stipulation and Consent Order filed on September 28, 2023, [ECF 75] and entered on September 29, 2023. [ECF 79].

The Defendants submitted that they were in the best position to dispute the chargebacks and, if they were in control, a group of sixty (60) contractors hired by the Defendants would work 24 hours a day for the first week (at the rate of $2,880 per day), reviewing 1,440 chargebacks a day, then decrease to $1,150 for the next three weeks of the interim period, which currently expired on October 29, 2023.

As of October 23, 2023, the actual work being performed was a significantly smaller percentage of the daily estimates, despite the full $2,880 continuing to be invoiced by Traders Global Generation ("Generation") per day for nearly the entire month.  The Defendants insisted that the contractors be in control of the process, because it was the "most efficient and cost-

effective way to mitigate chargeback losses." Defendants also represented that the majority of the chargebacks were untimely, and only having been made by the customers of the Defendants after allegedly learning of the within litigation. Defendants however, represented that a large percentage of chargeback challenges have been rejected, relative to the average success rate before this case began. Counsel to Defendants also previously acknowledged that there were "inefficiencies" with the experience of the contractors hired by TGG at the outset.

Specifically, as of October 18, 2023, the Defendants advised that there were 3,170 chargeback submissions, and 686 were lost and 6 were won. The total number of claims as of the third week of work was the number of claims that were expected to be reviewed into the third day of work. These statistics were not promising, and any benefit appears to be outweighing the cost to the receivership estate.

The Temporary Receiver's counsel contacted certain credit card networks and credit card issuers to request a stay of the chargeback review and dispute time-period for any chargeback made from the issuance of the SRO on August 29, 2023, until October 20, 2023, for a period of sixty (60) days. As of the date of the Report, the Temporary Receiver has not received a definitive response from any card network as to the request to suspend chargeback processing.

Through special counsel and based upon estimates of provided by the Defendants, Norton Rose negotiated with the OSC the release of funds in an amount not to exceed $46,610 USD. Norton Rose continues discussion for the release of additional funds, but they are currently capped based upon the OSC Position (defined below).

**Expenses and Negotiations with Defendants**

Since his initial communications with Defendants' counsel, the Temporary Receiver made numerous good faith communications with the Defendants to negotiate a consensual resolution of

payment of certain living expenses of Mr. Kazmi and his family members.  Information relating to certain expenses were not provided by Defendants until September 21, 2023, and the information was limited.  The Temporary Receiver also made repeated inquiries of Mr. Kazmi to disclose any income or support received by the Kazmi family, which was not responded to until Defendants filed their Reply to the Opposition to their Motion to Modify on September 26, 2023. [ECF 73].

The Temporary Receiver also inquired whether Mr. Kazmi had any cash, because admissions were made to the Temporary Receiver that certain cash payments were made (*i.e.*, to his children's nanny), and for a verified statement as to whether his parents or in-laws work or receive governmental support (since Mr. Kazmi requested $4,000 monthly allowance for parental support). The Defendants did not initially provide this information. It was discovered by the Temporary Receiver and his counsel that Mr. Kazmi has been relying on his personal credit card to pay expenses without any authority from the Court.

Similarly, a "friend" of Mr. Kazmi, Rafi Alvi ("Mr. Alvi"), allegedly loaned him $500,000 for Defendants' counsel's retainer but neither the Defendants nor the "friend" have provided any information as to whether his "friend" ever did business with the Defendants or received any money from the Defendants, family or affiliates.  It was not until September 21, 2023, that any information was provided about Mr. Alvi, however, there was no disclosure of the terms of the $500,000 loan – interest rate, security, default terms; instead Mr. Alvi states that "Mr. Kazmi agreed to repay this amount to me when he is able." See ECF 94-3.[7]

On October 18, 2023, counsel to the Defendants, knowing the OSC Position (defined below), made demand for payment of certain alleged business expenses of TGG.   Given the OSC

---

[7] In a recent filing with the Court on October 19, 2023, Mr. Kazmi revealed that the loan was increased to $750,000.

Position and limited funds on hand, the Temporary Receiver advised that payment of TGG's expenses would not be made. The October 18, 2023, letter alleged that a vendor, MetaQuotes, stored electronic data of the Defendants and there was concern that non-payment would result in the destruction of the data. While there was no specific known threat by MetaQuotes, the Temporary Receiver issued a demand to MetaQuotes, located in Cyprus, that any data of the Defendants be preserved.

The Defendants and Temporary Receiver were able to negotiate expenses, however, as outlined below, the OSC took the position that no expenses could be paid unless an order or consent from a Canadian authority was authorized. As a result, the Temporary Receiver along with his Canadian counsel Norton Rose worked tirelessly with OSC to release funds to the Defendants. This put the Temporary Receiver in a difficult position. On the one hand, the Temporary Receiver worked with the Defendants to negotiate a Consent Order for expenses, but the OSC stated the Temporary Receiver would violate its directives if the Temporary Receiver entered into such order and make payment for expenses.

**OSC Position**

Further complicating matters, late in the day on September 27, 2023, the parties, including the Temporary Receiver, learned for the first time that the OSC took the position that the release of any funds, including for the Stripe chargeback issues or payment of personal expenses of Mr. Kazmi, would violate the freeze directives issued by the OSC, despite the fact that the funds of the Receivership Estate came from US sources, unless and until there was a reciprocal agreement for the payment of said funds from the OSC (the "OSC Position"). On the very same day, the Temporary Receiver and his counsel, particularly Norton Rose (Linda Fuerst, Esq. is the attorney at Norton Rose handling the majority of the negotiations with OSC and Defendants' Canadian

4877-0135-7964, v. 1

counsel), began communications with the OSC to resolve the issues and concerns, and continue through this date. The Temporary Receiver and his professionals have worked tirelessly to resolve the issue with the OSC. It is the Temporary Receiver's understanding that only upon substitution of counsel have Canadian counsel for the Defendants started to actively engage in those discussions. Ms. Fuerst was specifically told by OSC that the freeze direction that was issued to Mr. Kazmi and Traders Global (US and Canada) prohibited the Temporary Receiver from dealing with their assets unless the OSC consented or there was an order by the Ontario Superior Court varying the freeze direction. That extended to the assets in the US including the BMO bank account and the Confirmo crypto currency in the account in Slovakia. Therefore, the Temporary Receiver was prevented from finalizing any negotiations with Defendants and Ms. Fuerst and the Temporary Receiver began negotiating with the OSC to obtain consent.

Moreover, based upon the discussions with the OSC, their consideration of the release of any funds is to preserve the assets of the estate, and not in consideration of Mr. Kazmi's living expenses, which further complicates matters. The Temporary Receiver's consideration was to balance funds requested by Mr. Kazmi for support and as directed by this Court and preservation of assets.

On October 13, 2023, Norton Rose obtained a Consent to Release Funds from Freeze Direction in the Ontario Proceeding ("Consent"). The Consent authorized the Temporary Receiver to use up to $46,610 USD to pay for the contractors. Norton Rose intended to seek the Temporary Receiver's recognition in the Ontario Proceeding, although that will be moot if his appointment is not continued by mutual consent of the parties or further order of the Court.

Norton Rose was also preparing a collection of documents that support the expenditures that the Temporary Receiver is prepared to request be permitted.

4877-0135-7964, v. 1

## <u>CONCLUSION</u>

The Temporary Receiver shall continue to administer the Defendants' estate and act in accordance with the SRO until he is formally substituted and/or discharged by the Court or if the Court authorizes the Temporary Receiver to continue.


October 30, 2023                                      /s/ Sari B. Placona
                                                     Sari B. Placona

                                                     MCMANIMON, SCOTLAND & BAUMANN,
                                                     LLC
                                                     75 Livingston Avenue, Suite 201
                                                     Roseland, New Jersey 07068
                                                     (973) 622-1800
                                                     splacona@msbnj.com

4877-0135-7964, v. 1

# EXHIBIT "A"



| Ontario Securities Commission | Commission des valeurs mobilières de l'Ontario | 22nd Floor 20 Queen Street West Toronto ON M5H 3S8 | 22e étage 20, rue queen ouest Toronto ON M5H 3S8 |

---

### IN THE MATTER OF TRADERS GLOBAL GROUP INC., 15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI

### FREEZE DIRECTION
### (Subsections 126(1)(c))

**TO:**   Muhammad Murtuza Kazmi
65 Westwood Ln, Richmond Hill, ON L4C 6X6

Traders Global Group Inc. (c/o Muhammad Murtuza Kazmi)
9131 Keele Street, Unit A4 Vaughan, ON L4K 2N1

15003865 Canada Inc. (c/o Muhammad Murtuza Kazmi)
9131 Keele Street, Unit A4 Vaughan, ON L4K 2N1

**RE:**   Proceeds of Sale of Securities of or Investments in Traders Global Group Inc.

   **TAKE NOTICE** that pursuant to subsection 126(1)(c) of *Securities Act*, RSO 1990, c S.5, as amended (the **Act**), you are directed to maintain funds, securities or property that constitute or are derived from the proceeds of, or are otherwise related to the sale of securities of or investments in Traders Global Group Inc., doing business as myforexfunds.com, and you are directed to refrain from disposing of, transferring, dissipating or otherwise dealing with or diminishing the value of those funds, securities or property until the Ontario Securities Commission in writing revokes or varies this Direction or consents to release a particular fund, security or property from this Direction or until the Ontario Superior Court of Justice orders otherwise.

   **AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to all vehicles owned by and/or registered in the name of Muhammad Murtuza Kazmi or 15003865 Canada Inc. at the Ontario Ministry of Transportation as of the date of this Freeze Direction, including:

| Description | 22 LAMO |
| --- | --- |
| VIN | ███████████████1612 |
| License Plate | ██████████ |

| Description | 19 BUGA |
| --- | --- |
| VIN | ███████████████5174 |
| License Plate | ██████████ |

| Description | 21 PORS |
|---|---|
| VIN | 7131 |
| License Plate | |

| Description | 18 FERR |
|---|---|
| VIN | 2699 |
| License Plate | |

| Description | 21 BMW |
|---|---|
| VIN | 0517 |
| License Plate | |

| Description | 17 INFI |
|---|---|
| VIN | 9606 |
| License Plate | |

| Description | 23 LAMO |
|---|---|
| VIN | 6560 |
| License Plate | |

**DATED** at Toronto, this 29th day of August, 2023.



| Ontario Securities Commission | Commission des valeurs mobilières de l'Ontario | 22nd Floor 20 Queen Street West Toronto ON M5H 3S8 | 22e étage 20, rue queen ouest Toronto ON M5H 3S8 |
| --- | --- | --- | --- |

## IN THE MATTER OF TRADERS GLOBAL GROUP INC., 15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI

### FREEZE DIRECTION
### (Subsection 126(1))

**TO:**

Rosette Kassar
Branch Manager
Canadian Imperial Bank of Commerce
10 Disera Drive, Suite 180
Thornhill, ON  L4J 0A7

Tel: (905) 881-4142 ext. 222
Email: rosette.kassar@cibc.com

CIBC Corporate Security
Attention: Bruna Durigon
PO Box One – Stn Commerce Court
Toronto, ON  M5L 1A2

Email: CorpSecurity.Mailbox@CIBC.com

**RE:**      Traders Global Group Inc. and Muhammad Murtuza Kazmi

**TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC.** or **MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)**, including any funds, securities or property on deposit in accounts with the following numbers:

| ███ (Transit ███) |
| --- |
| ███ (Transit ███) |
| ███ (Transit ███) |

or any other account, and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for Canadian Imperial Bank of Commerce and the last known

address of the parties named in this Freeze Direction in the records of Canadian Imperial Bank of Commerce.

**DATED** at Toronto, this 29th day of August, 2023.



| | Ontario<br>Securities<br>Commission | Commission des<br>valeurs mobilières<br>de l'Ontario | 22nd Floor<br>20 Queen Street West<br>Toronto ON M5H 3S8 | 22e étage<br>20, rue queen ouest<br>Toronto ON M5H 3S8 |

**IN THE MATTER OF TRADERS GLOBAL GROUP INC.,**
**15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI**

**FREEZE DIRECTION**
**(Subsection 126(1))**

**TO:**

Tara Singh
Manager Client Advice
Canadian Imperial Bank of Commerce
199 Bay St., Toronto ON  M5L 1G9

Tel: (416) 980-7777 ext. 339
Email: taramattie.singh@cibc.com

CIBC Corporate Security
Attention: Bruna Durigon
PO Box One – Stn Commerce Court
Toronto, ON  M5L 1A2

Email: CorpSecurity.Mailbox@CIBC.com

**RE:**   Traders Global Group Inc. and Muhammad Murtuza Kazmi

**TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC.** or **MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)**, including any funds, securities or property on deposit in accounts with the following numbers:



or any other account, and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for Canadian Imperial Bank of Commerce and the last known address of the parties named in this Freeze Direction in the records of Canadian Imperial Bank of Commerce.

**DATED** at Toronto, this 29th day of August, 2023.



| Ontario Securities Commission | Commission des valeurs mobilières de l'Ontario | 22nd Floor 20 Queen Street West Toronto ON M5H 3S8 | 22e étage 20, rue queen ouest Toronto ON M5H 3S8 |

**IN THE MATTER OF TRADERS GLOBAL GROUP INC.,
15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI**

**FREEZE DIRECTION**
**(Subsection 126(1))**

**TO:**

Iqbal Haer
Senior Branch Manager
Bank of Montreal
100 King St. West
Toronto, ON  M5X 1A3

Tel: (416) 867-2232
Email: Iqbal.haer@bmo.com

Jan Brigham Tan
Branch Manager
Bank of Montreal
100 King St. West
Toronto, ON M5X 1A3

Tel: (416) 643-1906
Email: JANBRIGHAM.TAN@bmo.com

Suzy.MeloBelchior@bmo.com
Sobia.Qureshi@bmo.com
Megan.Vizena@bmo.com

**RE:**    Traders Global Group Inc. and Muhammad Murtuza Kazmi

 **TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC.** or **MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)**, including any funds, securities or property on deposit in accounts with the following numbers:

| ▮▮▮-995 (Transit ▮▮▮) |
| ▮▮▮-921 (Transit ▮▮▮) |
| ▮▮▮-188 (Transit ▮▮▮) |
| ▮▮▮-280 (Transit ▮▮▮) |
| ▮▮▮-299 (Transit ▮▮▮) |
| ▮▮▮-104 (Transit ▮▮▮) |

 or any other account, and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for Bank of Montreal and the last known address of the parties named in this Freeze Direction in the records of Bank of Montreal.

**DATED** at Toronto, this 29th day of August, 2023.



| | | | |
|---|---|---|---|
| Ontario Securities Commission | Commission des valeurs mobilières de l'Ontario | 22nd Floor 20 Queen Street West Toronto ON M5H 3S8 | 22e étage 20, rue queen ouest Toronto ON M5H 3S8 |

**IN THE MATTER OF TRADERS GLOBAL GROUP INC.,
15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI**

**FREEZE DIRECTION
(Subsection 126(1))**

**TO:**

Nita Patel
Branch Manager
Bank of Montreal
100 King St. West
Toronto, ON  M5X 1A3

Tel: (416) 867-2859
Email: Nita.patel@bmo.com

Andrea Brown-McNeil
Regional Director Operations
BMO Private Wealth, Transit 3213
100 King Street West, 42nd Floor
Toronto, ON  M5X 1H3

Tel: (416) 359-7517
Email: Andrea.BrownMcNeil@bmo.com

**RE:**     Traders Global Group Inc. and Muhammad Murtuza Kazmi

      **TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC.** or **MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)**, including any funds, securities or property on deposit in accounts with the following numbers:



-947 (Transit          )

      or any other account, and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

      **AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

      **AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for Bank of Montreal and the last known address of the parties named in this Freeze Direction in the records of Bank of Montreal.

**DATED** at Toronto, this 29th day of August, 2023.



| Ontario Securities Commission | Commission des valeurs mobilières de l'Ontario | 22nd Floor 20 Queen Street West Toronto ON M5H 3S8 | 22e étage 20, rue queen ouest Toronto ON M5H 3S8 |
|---|---|---|---|

---

**IN THE MATTER OF TRADERS GLOBAL GROUP INC.,
15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI**

**FREEZE DIRECTION
(Subsection 126(1))**

TO:

Isaac Zhu
Registered Supervisor, Town Centre
Court Branch
Edward Jones
Sussex Centre, Suite 902
90 Burnhamthorpe Rd. West
Mississauga, ON  L5B 3C3

Tel: (905) 306-8582
Email: isaac.zhu@edwardjones.com

Carl A Dubicki
Senior Compliance Manager
Edward Jones

Tel: (905) 306-8611
Email: carl.dubicki@edwardjones.com

RE:   Traders Global Group Inc. and Muhammad Murtuza Kazmi

**TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC.** or **MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)**, including any funds, securities or property on deposit in accounts with the following numbers:

| | |
|---|---|
| ▇ 7-1-5 CAD (▇▇▇▇ t) | |
| ▇ 7-1-5 USD (▇▇▇▇ ) | |
| ▇ 3-1-3 CAD (▇▇▇▇ ) | |
| ▇ 3-1-3 USD (▇▇▇▇ ) | |
| ▇ 5-1-5 CAD (▇▇▇▇ ) | |
| ▇ 5-1-5 USD (▇▇▇▇ t) | |
| ▇ 7-1-8 CAD (▇▇▇▇ ) | |
| ▇ 7-1-8 USD (▇▇▇▇ ) | |
| ▇ 6-1-6 TFSA CAD (▇▇▇▇ t) | |
| ▇ 6-1-6 TFSA USD (▇▇▇▇ ) | |
| ▇ 8-1-1 RRSP CAD (▇▇▇▇ ) | |

| ████ 8-1-1 RRSP USD (█████████) |
| ████ 5-1-3 USD (███████) |

or any other account, and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for Edward Jones and the last known address of the parties named in this Freeze Direction in the records of Edward Jones.

**DATED** at Toronto, this 29th day of August, 2023.

**IN THE MATTER OF TRADERS GLOBAL GROUP INC.,**
**15003865 CANADA INC. and MUHAMMAD MURTUZA KAZMI**

**FREEZE DIRECTION**
**(Subsection 126(1))**

**TO:**    Torstein Braaten
Head of Regulatory Affairs & Chief Compliance Officer
BitBuy Technologies Inc. (**BitBuy**)
341-110 Cumberland St. Toronto, ON
torstein@bitbuy.ca

Alex Davis
Director, Legal
alex.davis@wonder.fi

**RE:**    Traders Global Group Inc. and Muhammad Murtuza Kazmi

**TAKE NOTICE** that as of the date of this freeze direction pursuant to paragraph 126(1) of the *Securities Act*, R.S.O. 1990, c. S.5, as amended (the **Act**), you are hereby directed to retain all funds, securities or property that you may have on deposit or under your control or for safekeeping in the name of or otherwise under the control of **TRADERS GLOBAL GROUP INC. or MUHAMMAD MURTUZA KAZMI (a.k.a. MURTUZA KAZMI)** and hold them until the Ontario Securities Commission (the **Commission**) in writing revokes or varies this Freeze Direction or consents to release a particular fund, security or property from this Freeze Direction or until the Ontario Superior Court of Justice orders otherwise.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction applies to any and all funds, securities or property in a recognized clearing agency and to any and all securities in the process of transfer by a transfer agent.

**AND TAKE FURTHER NOTICE THAT** this Freeze Direction may be served by e-mail or courier to the above-noted address for BitBuy and the last known address of the parties named in this Freeze Direction in the records of BitBuy.

**DATED** at Toronto, this 17th day of September, 2023.

_____