UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-cv-11808 |
| | ) | |
| v. | ) | |
| | ) | Judge Zahid N. Quraishi |
| Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi, | ) ) ) ) ) ) ) | The Parties' Joint Proposed Rule 26(f) Discovery Plan |
| Defendants. | ) | |

1.  The name of each attorney appearing, the firm name, address and telephone number of each, designating the party represented, is set forth in the signature block below.

2.  Brief description of the case, including the causes of action and defenses asserted:

| CFTC's Description of Causes of Action |
|---|
| Plaintiff CFTC has brought claims against Traders Global Group Inc., a New Jersey corporation, Traders Global Group Inc., a Canadian business organization (together, "Traders Global"), and Murtuza Kazmi (collectively, "Defendants") for the following violations of the Commodity Exchange Act ("Act") and CFTC Regulations ("Regulations"): <ul><li>fraud in connection with retail forex and retail commodity transactions, pursuant to 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3) (Counts I and II);</li><li>acting as counterparty to retail foreign exchange transactions without registration as a retail foreign exchange dealer ("RFED"), in violation of 17 C.F.R. § 5.3(a)(6)(i) (Count III);</li></ul> |

- soliciting orders from retail forex customers without Defendant Kazmi having been registered as an associated person of an RFED, in violation of 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) and 17 C.F.R. § 5.3(a)(6)(ii) (Count IV); and

- off-exchange trading in retail commodity transactions, in violation of 7 U.S.C. § 6(a) (Count V).

The CFTC's claims arise from Defendants' "My Forex Funds" program, in which Defendants offered retail customers, in return for the payments of various fees, the opportunity to become "professional traders," using Defendant Traders Global's money to trade against third-party "liquidity providers" and sharing in any profits. Traders Global assured customers that "your success is our business," and "we only make money when you do."

In reality, Defendant Traders Global was the counterparty to substantially all customer trades. Traders Global did not, therefore, make money when customers made money; Traders Global lost money when customers made money. Traders Global paid customers who traded successfully, but did so using fees paid by other customers, and not from the proceeds of profitable trading against "liquidity providers."

Traders Global used various devices to minimize the likelihood or amount of profitable trading by customers and reduce the "profits" Traders Global had to pay successful customers. Those devices included the use of specialized software to delay the execution of customer orders, or execute the orders at worse prices than appeared to the customer at the time the customer's orders were sent.

Defendant Kazmi is the CEO of Defendant Traders Global, and is liable as a controlling person for Traders Global's violations of the Act or Regulations, pursuant to 7 U.S.C. § 13c(b).

The CFTC seeks, *inter alia*, injunctive relief pursuant to 7 U.S.C. § 13a-1, in the form of an order enjoining Defendants from: (a) the conduct described in the complaint, i.e., My Forex Funds or another similar venture; (b) trading in commodity interests, or on or subject to the rules of a registered exchange; or (c), applying for registration with the CFTC or acting as principal of an entity required to be registered with the CFTC, or exempt from registration as provided in the Act or Regulations.

The CFTC seeks monetary relief pursuant to 7 U.S.C. § 13a-1(d)(3) in the form of restitution for customer losses proximately caused by Defendants' violations of the Act and Regulations, and disgorgement in the amount of gains Defendants received in connection with their violations. The CFTC currently estimates disgorgement to be approximately $151 million. The CFTC also seeks civil

| |
|---|
| penalties against Defendants in an amount not to exceed triple Defendants' monetary gains from their violations, per 7 U.S.C. § 13a-1(d)(1). |
| Defendants' Description of Defenses |
| The CFTC's claims lack merit for the following reasons.<br><br>1. The Commodity Exchange Act and its corresponding Regulations do not apply to the conduct alleged.<br>   a. None of Traders Global's customers ever invested any money in, with, or through Traders Global, and no customer of Traders Global was ever party to any contract or agreement to buy, sell, or trade any commodities, contracts for difference, or foreign currencies.<br>   b. All commodity and foreign exchange contracts were either simulated or entered into by Traders Global itself using its own capital. Therefore, Traders Global was never a "counterparty" to any trade with any of its customers.<br>2. The CFTC's fraud allegations will fail.<br>   a. Contrary to the CFTC's allegations, Traders Global never represented to its customers that all customer trades would be executed against third-party liquidity providers, or that all customers would be permitted to trade with Traders Global's capital. Traders Global disclosed that its customers would trade within simulated environments so that their trading and risk management skills could be evaluated.<br>   b. Traders Global's motto, "Your success is our business," is accurate; the business existed to cultivate profitable trading skills and to identify profitable traders so that both Traders Global and the traders can make money.  The phrase, "we only make money if you make money," appears exactly once on Traders Global's website in the context of describing the lack of minimum trading volume requirements for Traders Global's "Accelerated" program, which allows traders to skip the evaluation process and start trading immediately based on live market conditions.<br>   c. Traders Global always paid its customers, as agreed, for profitable trading—whether simulated or not.<br>   d. Traders Global truthfully disclosed to customers that their accounts would be subject to drawdown limits, which are industry-standard mechanisms intended to mitigate risk and discourage reckless trading.<br>   e. Because none of Traders Global's customers invested money with Traders Global, none of the alleged misstatements could have been material to commodity of forex investment decisions.  To date, the |

           CFTC has not provided evidence from a single customer to show that the alleged misstatements were material.
- f. Traders Global disclosed the commissions that would be assessed against its customers' accounts.
- g. Traders Global implemented delay, slippage, and other settings on its simulated trading platform to mirror real market conditions. These industry-standard adjustments did not impact customers' decisions to do business with Traders Global.
- h. Traders Global disclosed that abusive trading practices, such as latency arbitrage and tick scalping, were strictly prohibited. Traders Global responded to abuse by implementing remedial measures on its trading platforms, consistent with widespread practice in the industry.
- i. Traders Global disclosed that most customers who advance to trading on "live" accounts do not trade prudently and perform poorly as a result.
- j. Traders Global consistently acted in good faith to respond to abusive trading practices and to treat its traders fairly. Even where Traders Global suspected abuse, it gave its traders the benefit of the doubt, and when it believed its traders were disadvantaged by errors in the trading platform, it took corrective action. Traders Global cooperated with Canadian regulators and would have done the same with the CFTC had it deigned to contact Traders Global prior to filing its complaint. There is no evidence of scienter.

3. The CFTC's registration allegations will fail.
   - a. Traders Global did not enter into, offer to enter into, or serve as a counterparty to any transaction with any person who was not an eligible contract participant. The only commodities or foreign exchange contracts Traders Global entered were between itself, an eligible contract participant, and CDO Markets, another eligible contract participant.

4. The CFTC knowingly misrepresented material facts to the Court.
   - a. The CFTC's lead investigator swore under penalty of perjury that over $31.5 million CAD had been transferred from Traders Global's corporate account to Mr. Kazmi's personal account, even though the investigator and the CFTC's lead counsel had been explicitly informed that the $31.5 million transfer was a lawful tax payment. The CFTC continued to rely on this knowing misrepresentation to argue that all of Mr. Kazmi's personal assets should remain frozen pending trial.
   - b. Despite repeated opportunities to correct the record, the CFTC has not been forthright with the Court about its misrepresentations and should be sanctioned.

Defendants seek dismissal of all causes of action alleged against them.

4

3. The parties have engaged in preliminary settlement discussions. Counsel for the CFTC is working to formulate, and obtain authority from the CFTC's Division of Enforcement to make, a provisional settlement offer, i.e., a settlement offer subject to approval by vote of the Commission.

4. The parties have met pursuant to Fed. R. Civ. P. 26(f). The meeting took place on December 13, 2023.

5. The parties have not yet exchanged the information required by Fed. R. Civ. P. 26(a)(1), but have agreed to exchange such information by the deadline set forth below, subject to the parties' right to update, supplement, correct, or revise such disclosures as may be permitted or required under Fed R. Civ. P. 26(e).

6. The parties do not anticipate any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).

7. The parties have not filed any disclosure of third-party litigation funding per Local Rule 7.1.1 because there is no third-party litigation funding in this matter.

8. The parties have conducted discovery other than the above disclosures, pursuant to the Court's earlier order on the CFTC's motion for expedited discovery (ECF 10), and by agreement. Pursuant to the Court's order dated November 14, 2023 (ECF 135), discovery shall now proceed under the standard rules set forth in the Federal Rules of Civil Procedure and this Court's Local Civil Rules.

9. Proposed joint discovery plan:

   a. The parties state that discovery is needed on the following subjects, without prejudice to either party's right to seek discovery on additional subjects relevant to claims or defenses in the above-captioned action, and subject to each party's right to object to discovery relating to any of the following subjects:

| Subjects for Discovery by Plaintiff |
|---|
| Defendants' documents and communications relating to My Forex Funds, including internal communications, and communications with customers and prospective customers; |
| Defendants' marketing of, public statements relating to, and social media or message board posts about, My Forex Funds; |
| Defendants' solicitation and receipt of fees or other income from customers; |

5

| |
|---|
| The source and nature of payments made by Defendants in connection with My Forex Funds, including payments to customers, staff, and consultants; <br><br> Defendants' internal operations relating to My Forex Funds, including payroll and infrastructure, as well as identities of employees, contractors, and agents; <br><br> Defendants' trading of commodity interests relating to My Forex Funds; and <br><br> Identities and involvement of third-parties in My Forex Funds, including third-party risk, technical, and marketing consultants, agents and service providers. |
| Subjects for Discovery by Defendants |
| All evidence supporting the CFTC's allegations in the Complaint; <br><br> All evidence supporting the declarations and oral testimony submitted by the CFTC's counsel, investigators, and agents in connection with this case; <br><br> Communications between the CFTC and the Ontario Securities Commission ("OSC") regarding this case; <br><br> Communications between the CFTC and any of Traders Global's customers; <br><br> Communications between the CFTC and any of Traders Global's third-party vendors, consultants, or service providers; <br><br> Documents and communications related to the CFTC's investigation of the conduct alleged in the Complaint, including "Investigatory Materials" as defined in 17 C.F.R. § 10.42(b); <br><br> Documents the CFTC obtained from any non-party in connection with the case; and <br><br> Written statements and transcripts of oral testimony the CFTC obtained from any non-party in connection with this case. |

      b.  Discovery should not be conducted in phases or be limited to particular issues.

c. Proposed schedule:

| Item | Deadline |
|---|---|
| E-Discovery conference pursuant to L. Civ. R. 26.1(d) | January 16, 2024 |
| Fed. R. Civ. P. 26(a)(1) disclosures | February 5, 2024 |
| Earliest date for service of initial written discovery | February 5, 2024 |
| Motions to amend or to add parties to be filed by | June 3, 2024 |
| Factual discovery to be completed by | October 20, 2024[1] |
| Plaintiff's expert report(s) due on | Thirty days after the completion of fact discovery |
| Defendants' expert report(s) due on | Thirty days after Plaintiff's expert report(s) is/are served |
| Rebuttal expert report(s) due on | Thirty days after Defendants' expert report(s) is/are served |
| Expert depositions to be completed by | Thirty days after rebuttal report(s) is/are served |
| Dispositive motions to be served within the following number of days following completion of expert discovery | Sixty |

d. With respect to "special discovery mechanisms or procedures:"

   i. To the extent either party seeks evidence from non-party witnesses located outside of the United States, the party seeking the evidence may seek letters rogatory or other judicial relief, including pursuant to the Convention of 18 March 1970 on the Taking of

---

[1] The maximum number of interrogatories to be served or depositions to be taken shall be as provided in the Federal Rules of Civil Procedure, subject to the parties' agreement, or right to seek permission from the Court, to serve additional interrogatories or take additional depositions.

7

        Evidence Abroad in Civil or Commercial Matters (commonly referred to as the "Hague Convention") or other applicable law;

    ii.    The Parties agree that all subpoenas and other discovery requests to non-parties will be served contemporaneously on counsel of record for all Parties.  Further, the Parties agree that after having received any evidence from non-parties, including documents and transcribed oral testimony, the Parties will share the evidence as soon as practicable with counsel of record for all Parties.

    iii.    The Parties agree to accept e-mail service of all discovery documents in this case.  Service of discovery documents via e-mail service shall be treated the same as personal service for response deadline purposes.

  e.    A pretrial conference may take place no later than thirty days before the trial.

  f.    Trial date: TBD (Jury Trial)

10.    The parties anticipate there will be depositions of out-of-state witnesses conducted remotely by video, e.g., Zoom or Teams, and that such depositions will be recorded stenographical and by audiovisual means.  The parties agree to conduct depositions in this manner, and do not expect to seek intervention of the Court on the means or method of conducting depositions.

11.    The parties do not anticipate any issues about disclosure or discovery of electronically stored information ("ESI").  The parties agree to produce all ESI in native format, unless such ESI is not available in native format, as well as in a format that is "load-ready" for standard e-discovery platforms, e.g., Relativity.  The ESI shall be transmitted via file transfer protocol ("FTP") site.  If such transfer is impractical, ESI shall be transmitted via physical hard drive or between cloud-based servers, as determined by the parties on a production-by-production basis.

    The parties agree that documents identified in the parties' Rule 26(a) Initial Disclosures or responsive to Rule 34 document requests will be produced on a rolling basis, without undue delay, after they have been located, Bates numbered, and reviewed for privilege.  The Parties agree to work with reasonable diligence in searching for, reviewing, and producing such documents.

12.    The parties anticipate the entry of a Discovery Confidentiality Order in a form yet to be determined.

13.    The parties do not at this juncture anticipate any problems with discovery.  However, Defendants request the Special Master's assistance in

resolving the parties' disagreement as to whether the proposed discovery limitations outlined below should apply.

**Defendants' Position**: In addition to the standard limitations set forth in the Federal Rules, Defendants propose the following limitations on discovery. Defendants contend that these limitations are appropriate because substantial discovery has already taken place, including the deposition of Mr. Kazmi, the deposition of Mr. Chichester, and the production of millions of documents procured by the CFTC from third parties. For the purpose of these proposed limitations, the CFTC would constitute one "side" and Defendants collectively would constitute the other "side." These proposed limitations could be modified by written stipulation of the parties or order of the Court.

- Each side may serve a maximum of 30 Requests for Admission regarding substantive facts. Requests for Admission regarding the authenticity of documents shall not be subject to this limit.

- Each side may serve a maximum of 30 Requests for Production of Documents.

- Each side shall be limited to a maximum of 7 hours on the record for any deposition testimony taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

**CFTC's Position**: The CFTC does not agree to Defendants' proposed additional limitations, since they are not called for by or consistent with the Federal Rules of Civil Procedure, nor are they warranted under facts of the case. Further, any potential dispute regarding the number or scope of discovery requests remains theoretical because discovery has not commenced. Therefore, the CFTC does not believe that the issue is ripe for consideration by the Special Master.

14. The parties do not believe that this matter is appropriate for voluntary arbitration. Plaintiff's position is that a formal resolution of this matter is required because (a) it is an enforcement action brought by a government regulatory agency in the public interest, and (b) the action involves policy concerns relating to the application of the Act and Regulations. The parties do not believe that this matter is appropriate for mediation at this juncture. Counsel for the parties have engaged in preliminary settlement discussions, and expect to engage in further communications regarding a potential resolution of this matter.

15. This case is not appropriate for bifurcation.

16. An interim status/settlement conference should be held in June 2024.

17. Defendants do not consent to the trial being conducted by a Magistrate Judge.

18. The parties are currently aware of no other issues that should be addressed at the Rule 16 Scheduling Conference.

December 15, 2023

s/ *Ashley J. Burden*

Commodity Futures Trading Commission
Plaintiff
77 West Jackson Blvd., Suite 800
Chicago, IL 60604

Ashley J. Burden
Senior Trial Attorney
Division of Enforcement
Office: (312) 596-0693
Cell: (312) 995-0779
aburden@cftc.gov

Katherine S. Paulson
Trial Attorney
Division of Enforcement
Office: (312) 554-4559
kpaulson@cftc.gov

Elizabeth M. Streit
Chief Trial Attorney
Division of Enforcement
Office: (312) 596-0537
estreit@cftc.gov

*[Defense counsel signature block on next page.]*

| | |
|---|---|
| December 15, 2023 | By */s/ Anthony J. Staltari*<br>Anthony J. Staltari (Attorney ID. No. 233022017)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel.: (415) 875-6600<br>anthonystaltari@quinnemanuel.com<br><br>Robert A. Zink (*pro hac vice*)<br>Avi Perry (*pro hac vice*)<br>Kurt Wolfe (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1300 I Street, NW, Suite 900<br>Washington, D.C. 20005<br>Tel.: (202) 538-8000<br>robertzink@quinnemanuel.com<br>aviperry@quinnemanuel.com<br>kurtwolfe@quinnemanuel.com<br><br>Dakota Speas (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Tel.: (213) 443-3000<br>dakotaspeas@quinnemanuel.com<br><br>Craig Carpenito (Attorney ID No. 027102000)<br>Thomas J. Scrivo (Attorney ID No. 307552019)<br>KING & SPALDING LLP<br>1185 Avenue of the Americas, 34th Floor<br>New York, NY 10036<br>Tel.: (212) 556-2142<br>ccarpenito@kslaw.com<br>tscrivo@kslaw.com<br><br>*Attorneys for Defendants* |