UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRADERS GLOBAL GROUP INC., *et al.*,<br><br>Defendants. | Civil Action No. 23-11808 (ZNQ) (TJB)<br><br>OPINION AND ORDER OF SPECIAL MASTER |

**LINARES, J.**

This matter comes before the Special Master by way of the Motion to Approve Interim Fees and Expenses through October 31, 2023 to: (1) McManimon, Scotland & Baumann, LLC, Counsel to Temporary Receiver ("MS&B"); and (2) Norton Rose Fulbright US LLP and Norton Rose Fulbright Canada, LLP (collectively, "NRF"), Special Counsel to Temporary Receiver (the "Motion") filed by Anthony Sodono, III, Temporary Receiver ("Temporary Receiver") for Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi. (ECF No. 131.)  In response to the Motion, Defendants requested that Plaintiff be ordered to pay half of the total amount of fees and expenses of the receivership.  For the reasons set forth below, the Special Master hereby **GRANTS** the Motion of the Temporary Receiver and **DENIES** the request of Defendants.

I. **Procedural and Factual Background**

The Special Master presumes the parties' familiarity with the factual background and procedural posture of this matter.  Accordingly, the Special Master will only recite the facts relevant to the disposition of the subject dispute.

Plaintiff Commodity Futures Trading Commission ("CFTC") commenced this action against defendants Traders Global Group Inc., a New Jersey corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi ("Defendants") for injunctive relief, civil monetary penalties and other relief, alleging that Defendants engaged and continue to engage in a large-scale fraud scheme involving leveraged, margined or financed retail foreign exchange and retail commodity transactions in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1–26, and accompanying Commission Regulations, 17 C.F.R pts. 1–190 (2022). CFTC also filed a motion for an *ex parte* Statutory Restraining Order freezing Defendants' assets. (ECF No. 7.) By Order entered on August 29, 2023 ("SRO"), the District Court, *inter alia*, restrained and enjoined Defendants from withdrawing, transferring or dissipating any assets and appointed a Temporary Receiver. (ECF No. 13.)

Thereafter, CFTC filed a Motion for Statutory Restraining Order and Preliminary Injunction ("PI Motion"). (ECF No. 14.) By Order entered on November 14, 2023, the District Court granted in part and denied in part CFTC's PI Motion, ordering that Corporate Defendants' assets in the amount of $12,080,000 shall remain frozen, but releasing all other assets frozen under the SRO and discharging the Temporary Receiver. (ECF No. 135.)

In this pending Motion, the Temporary Receiver seeks an Order allowing and authorizing (i) payment to MS&B in the amount of $173,361.53 ($171,557.20 for compensation for services through October 31, 2023 (the "Fee Period") and $1,804.33 for reimbursement of expenses incurred during the Fee Period) and (ii) payment to NRF in the amount of $92,252.40 for compensation for services during the Fee Period. Neither party has objected to the amount of fees and costs sought. (ECF No. 131.) Rather, Defendants filed a Response to the Motion, requesting that CFTC be ordered to pay half of the total amount of fees and costs. (ECF No. 139.)

CFTC filed a Reply, arguing that sovereign immunity precludes assessment of fees and costs against CFTC. (ECF No. 148.) Both parties requested permission to file respective sur-replies. (ECF

Nos. 150, 156.) Because neither party has objected to the total amount of fees and costs sought by the Temporary Receiver, the only issue to be determined is whether CFTC should pay for half of the fees and costs, or whether Defendants are solely responsible for the fees and costs of the Temporary Receiver.

## II.     ANALYSIS

In support of their request that CFTC should be ordered to pay for half of the costs of the Receivership, Defendants argue that because CFTC relied upon an erroneous statement in the Declaration of CFTC investigator Matthew Edelstein (ECF No. 33-44) in its initial *ex parte* application for a Statutory Restraining Order and Temporary Receiver, and because the Court, after appointing a Temporary Receiver, determined thereafter to discharge the Temporary Receiver, no receiver was ever necessary, and thus CFTC should pay for half the cost. (ECF No. 139 at 2.) In other words, because the CFTC procured the Receiver "wrongfully" through a "materially false" declaration, the Court should order CFTC to pay half the costs.

The error in the allegedly "materially false" declaration involved a statement in Mr. Edelstein's Declaration characterizing a $31.5 million transfer as being made to "unknown Kazmi accounts." (ECF No. 148 at 4.) CFTC acknowledges that the transfer was actually comprised of two tax payments to the Canadian tax authority on behalf of Defendant Traders Global. (*Id.*) Defendants argue that CFTC failed to disclose and correct that error, and continued to rely on information it knew to be false in arguments to the Court to modify or continue the SRO.[1]

In response, CFTC essentially sets forth two arguments: (1) sovereign immunity precludes the assessment of costs of the Receivership against CFTC and (2) the Receivership was not "wrongfully procured."

---

[1] Counsel for CFTC acknowledged that it "should have corrected this error, and regrets failing to do so." (ECF No. 148 at 4.)

On the first point, CFTC argues that as an agency of the United States government, CFTC is protected by sovereign immunity, and further, there has been no waiver of sovereign immunity that would allow costs of the Receivership to be assessed against the CFTC. CFTC is correct, and Defendants appear to agree, that as an agency of the United States government, CFTC enjoys the protection of sovereign immunity, and that in order to assess costs here, there must be an express waiver of sovereign immunity. *See Suarez v. Commodity Futures Trading Comm'n*, No. 18-cv-2983, 2018 WL 10323029, at *1 (S.D.N.Y. Apr. 20, 2018); *SEC v. Indep. Drilling Corp.*, 595 F.2d 1006, 1008 (5th Cir. 1979) (reversing order directing SEC to pay fees and expenses of receivership on basis of sovereign immunity); *Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 305 (9th Cir. 1996) ("Money awards may be imposed against the United States only if there has been an express waiver of sovereign immunity.").

Defendants rely on the waiver of sovereign immunity in 28 U.S.C. § 2412(a), referred to as the Equal Access to Justice Act. This Act provides that a "judgment for costs . . . may be awarded to a prevailing party in any civil action brought by or against the United States or any agency [thereof]." 28 U.S.C. § 2412(a); *see also United States v. Horn*, 29 F.3d 754, 762 (1st Cir. 1994) ("[s]everal courts have held that monetary sanctions for litigation abuse are not barred by sovereign immunity in certain classes of cases on the theory that an enacted statute, typically the Equal Access to Justice Act . . . serves to waive the government's immunity.").

CFTC argues that Defendants are not a "prevailing party" within the meaning of 28 U.S.C. § 2412(a) because Defendants have not prevailed on the merits of any claim. (ECF No. 148 at 3 n.1 (citing *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 293 (3d Cir. 2016).) Defendants counter that they are the "prevailing party" because the Court discharged the Temporary Receiver in ruling on CFTC's PI Motion. (ECF No. 150 at 1.) Defendants cite *Frankwell Bullion* in support of their argument that the CFTC should be made to pay half the costs of the Receivership. (ECF No. 139 at 3 (citing *Frankwell*

*Bullion*, 99 F.3d 299 at 306).)  In *Frankwell Bullion*, however, the court assessed seventy-five percent of the receivership costs against the CFTC after a motion for summary judgment was granted against the CFTC.  *Frankwell Bullion*, 99 F.3d 299 at 301.  That is not the case here.

In order to be a "prevailing party," there must be a "material alteration of the legal relationship of the parties" which requires that a party receive some relief on the merits of its claims.  *Raab v. Ocean City*, 833 F.3d at 292–93.  In addition, "interim relief—such a obtaining a preliminary injunction to maintain the status quo—that is not in some way merit-based will not confer prevailing party status." *Id*. at 293.

While Defendants are correct that the Court's Order on the PI Motion discharged the Temporary Receiver, the Court also found that CFTC made a *prima facie* showing that Defendants engaged in fraud in connection with leveraged retail forex and retail commodity transactions with its customers, by, *inter alia*, knowingly misrepresenting to customers that they could trade capital in so-called "live accounts" when in fact substantially all customer trading in live accounts was simulated.  The Court also found that CFTC made a *prima facie* showing that Defendants entered into retail foreign exchange transactions without required registration and engaged in impermissible off-exchange retail commodity transactions. (ECF No. 134 at 16–21.)  While the Court limited the scope of the asset freeze to $12 million, the Court enjoined Defendants from further similar violations of the Commodity Exchange Act and CFTC Regulations. (ECF No. 134 at 22–23.)  On the issue of the Receiver, the Court concluded that a receiver was no longer necessary, "given that the frozen assets may be set aside and that Defendants are represented by experienced counsel." (ECF No. 134 at 28.)

As CFTC also points out, in those cases in which costs or fees were awarded under 28 U.S.C § 2412, such relief was awarded at the conclusion of each case, following a victory on the merits by the party seeking the costs or fees.  (*See* ECF No. 156 at 2–3.)

Accordingly, it cannot be said at this stage of the litigation that the Defendants are the "prevailing party" on the merits of any claims such that a waiver can be found under 28 U.S.C. § 2412. In the absence of a waiver of sovereign immunity, the costs of the Receivership cannot be assessed against the CFTC.

On the second point, CFTC argues that an error in a single line item in the Edelstein declaration does not vitiate any element of Defendants' fraud or unlawful trading violations, and further that CFTC did not cite to the $31.5 million transfer in its complaint or motion for the initial Statutory Restraining Order, which led to the establishment of the Temporary Receivership. Clearly, though, the error was part of the Declaration submitted by the CFTC in support of the initial Statutory Restraining Order application. More troubling, as Defendants detail in their sur-reply (ECF No. 150 at 5–9), is the timeline of the discovery and subsequent correction of the error. Both Mr. Edelstein and CFTC were notified by the Ontario Securities Commission by email dated August 17, 2022, before the filing of the Declaration on August 28, 2023, that the transfer at issue was comprised of tax payments. (ECF No. 148 at 5, n. 2; ECF No. 148-1, Ex. A.) While the Special Master shares the Court's concern about the timeline[2], Defendants have pointed to no other authority, other than waiver of sovereign immunity under 28 U.S.C. § 2412, and cases cited in support, for the imposition of costs against CFTC at this time.[3]

Accordingly, the Special Master concludes that sovereign immunity precludes the assessment of costs of the Receivership against CFTC. The Special Master grants the Motion of the Temporary Receiver to Approve Interim Fees and Expenses, and denies the Defendants' request to allocate a portion

---

[2] As expressed in the November 6, 2023 hearing transcript cited by the Court in its November 14, 2023 PI Motion Opinion (ECF No. 134 at 23–25) and by Defendants (ECF No. 150 at 8).

[3] Defendants make reference in a footnote to the Court's authority to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, but state that Defendants' initial request for apportionment did not invoke Rule 11. (ECF No. 150 at n.1.) Accordingly, the issue of sanctions is not before the Special Master on this Motion.

of those fees and expenses to CFTC.  Defendants are responsible for payment of the fees and expenses of the Temporary Receiver.

### III.  ORDER

**IT IS** on this 12th day of January 2024;

**ORDERED** that the Temporary Receiver's Motion to Approve Interim Fees and Expenses through October 31, 2023 is **GRANTED**; and it is further

**ORDERED** that interim compensation and expenses for the period through October 31, 2023 (Fee Period) are allowed as follows:

> 1. To MS&B, the sum of $171,557.20 for compensation for services rendered during the Fee Period and the sum of $1,804.33 for reimbursement of expenses incurred during the Fee Period, for a total award of $173,361.53 during the Fee Period;
>
> 2. To NRF, the sum of $92,252.40 for compensation for services rendered during the Fee Period; and it is further

**ORDERED** that Defendants' request that CFTC be required to pay for half of the fees and costs of the Temporary Receiver is **DENIED**.

**SO ORDERED**.

                                        __/s/ *Jose L. Linares*_____

                                        Hon. Jose L. Linares, U.S.D.J. (Ret.)