

**COMMODITY FUTURES TRADING COMMISSION**

Ralph Metcalfe Federal Building
77 West Jackson Blvd, Suite 800
Chicago, IL 60604
www.cftc.gov

Division of
Enforcement

March 15, 2024

    **Re:**   *CFTC v. Traders Global Group Inc., et al.*, No. 3:23-cv-11808-ZNQ-TJB

Dear Judge Quraishi:

    The Commodity Futures Trading Commission (hereinafter, "the CFTC"), respectfully submits this letter in response to Defendants' letter on their proposed motion to dismiss. The CFTC defers to the Court on whether a pre-motion conference would be fruitful, but Defendants' anticipated arguments lack merit.

### I. Introduction

    The CFTC's Complaint alleges, with specificity, how Defendants' business, operating as an unregistered Retail Foreign Exchange Dealer ("RFED"), perpetrated a large-scale fraud against its customers. At least 135,000 customers paid Defendants $310 million in fees for the purported opportunity to become "professional traders" for Defendants and trade retail leveraged forex and commodities contracts against third-party "liquidity providers" using Defendants' money and sharing the profits. In reality, by Defendants' design, the vast majority of customers always remained in a simulated trading environment; even when a customer thought they were trading live funds against third-party liquidity providers, they were actually trading *against* Defendants. What is worse, Defendants controlled the simulated environment, secretly handicapping customers' trades by applying artificial slippage, widening spreads, and delaying trade execution to stack the deck against customers. Further, there were no commissions from third-party liquidity providers, yet Defendants still charged "commissions" against customers' accounts to draw down account balances.

    Defendants' letter raises three arguments for dismissal: (1) their fraud was not "in connection" with retail forex or commodity transactions because customers' trades were executed in Defendants' controlled environment and customers did not "invest"; (2) Defendants cannot qualify as a "counterparty" because the trades were simulated; and (3) the CFTC failed to adequately plead fraud.

    Defendants' arguments have no merit. Before summarizing why, however, two points bear noting. First, Defendants state that they also "intend to challenge the sufficiency of the CFTC's complaint on other grounds" not raised in their letter. (ECF 173 at 1.) The CFTC respectfully requests that the Court limit Defendants' motion to the arguments raised in their letter. Defendants' plan to add arguments

will only abuse and frustrate this Court's pre-motion conference process. Instead of promoting expeditious resolution of issues, it will simply give Defendants the benefit of the CFTC's letter response and additional time from the automatic stay to contrive new arguments. The CFTC filed this case over six months ago and has consented to multiple extensions to the responsive pleading deadline. (ECF 57, 96, 163.) Defendants had more than ample time to analyze bases for dismissal.

Second, Defendants insist that their letter outlines new arguments "not before the Court at the PI stage." (ECF at 1.) Not so. Defendants already raised these arguments in opposition to the Motion for Preliminary Injunction. (ECF 114 at 19 (arguing CFTC cannot establish "in connection with" element), 37 (arguing Defendants not a "counterparty"), 27 (arguing not material), 32 (arguing no scienter).) And the Court's Opinion considered and rejected them all.  (ECF 134 § IV.A–IV.F.) Defendants' arguments failed under the heightened preliminary injunction standard and they will also fail on a motion to dismiss.

## II.     The Complaint Satisfies the "In Connection" Requirement

Counts I and II allege that Defendants committed fraud in connection with leveraged retail forex and commodity transactions in violation of Section 4b(a)(2)(A), (C) of the Commodity Exchange Act (hereinafter, "Act"), 7 U.S.C. § 6b(a)(2)(A), (C) and Regulation 5.2(b)(1). Defendants argue that these provisions do not apply to their fraud, however, because the fraud was not "in connection" with retail forex or retail commodity transactions. Defendants insist that none of the leveraged forex or commodity trades their customers executed qualify as retail forex or retail commodity transactions because (1) they were in Defendants' simulated environment; and (2) customers did not invest their own money.

Defendants are wrong. A retail forex transaction is defined through Regulation 5.1(m), 17 C.F.R. § 5.1(m), and Section 2(c)(2)(C)(i), 7 U.S.C. § 2(c)(2)(C)(i). Retail commodity transaction is defined in Section 2(c)(2)(D)(i), 7 U.S.C. § 2(c)(2)(D)(i). Under these plain definitional terms, the customers' trades qualify as retail forex and commodity transactions. It is of no moment that the trades were, unbeknownst to customers, almost always executed in Defendants' controlled environment.[1] That simply means that customers entered into these retail forex and commodity transactions *with Traders Global as their counterparty*. Further, nothing in the definitions requires an "investment." Nor is that requirement found in Section 4(b) or Regulation 5.2(b)(1), the provisions Counts I and II charge Defendants with violating.[2]

---

[1] The full extent of Defendants' manipulation of that environment is also a matter that necessitates fact discovery and cannot be disposed of on the pleadings.

[2] Defendants cite two cases: *Tatum v. Legg Mason Wood Walker, Inc.*, 83 F.3d 121 (5th Cir. 1996) and *Crummere v. Smith Barney, Harris Upham & Co, Inc.*, 624 F.

### III. The Complaint Adequately Alleges Defendants Were Counterparties

Defendants also argue that Counts III, IV, and V fail because Defendants did not "make, or offer to make, any trades with customers," so they did not act as a counterparty to customers' trades. (ECF 173 at 2.) This argument also lacks merit. True, Defendants did not *tell* customers they were counterparties, but they were so acting. When customers traded profitably, Traders Global paid them from corporate assets (*i.e.*, other customers' fees). When a customer lost and fell below drawdown limits, Traders Global terminated their accounts and kept their fee. This is the conduct of a counterparty. The only things Defendants cite to support their position is a deposition comment from Mr. Chichester, a non-attorney who works for the company that helped Traders Global manage its trading environment. (ECF 173 at 2–3.) Mr. Chichester's lay commentary on Defendants' legal status does not control; nor is it proper for Defendants to rely on it on a Rule 12(b)(6) motion. *See, e.g., DG3 N. Am., Inc. v. Labrador Regulated Info. Transparency, Inc.*, No. 15-5123, 2014 WL 5844340, at *2–3 (D.N.J. Nov. 12, 2014) (holding that, "with few and narrow exceptions, matters extraneous to the pleading may not be considered in determining whether a claim meets" the federal pleading standard).

### IV. The Complaint Adequately Alleges Fraud

Finally, Defendants argue that the Complaint does not adequately plead materiality or scienter. The Complaint alleges, in detail, Defendants' misstatements and omissions. Defendants ignore nearly all of them. For example, they ignore the myriad ways they secretly manipulated the trading environment they controlled. (*See* ECF 1 ¶¶ 59–63.) And, while they acknowledge one misstatement on their website (although they try to minimize it), there were many other alleged misstatements and omissions. (*See, e.g.,* ECF 1 ¶¶ 25–28, 32, 35–36, 40–41.) Defendants also insist it was all immaterial. They are wrong and, regardless, that is for a trier of fact to decide. *See, e.g., In re Burlington Coat Factory Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997) (holding materiality is for a trier of fact unless the alleged misstatements and omissions "are obviously so unimportant that the courts can rule them immaterial as a matter of law.").[3] As to scienter, they insist the allegations are "conclusory." But, the Complaint sets out many detailed facts evidencing scienter. (*See, e.g., id.* ¶¶ 79–99.) Overall, the Complaint adequately pleads the elements necessary to support the fraud claims.

---

Supp. 751 (S.D.N.Y. 1985). Neither is relevant here. In *Tatum*, the plaintiffs did not know of the commodity transactions at issue. *Id*. And, in *Crummere*, the misrepresentations occurred *after* the transactions at issue. *See* 624 F. Supp at 755.

[3] Defendants also cite *CFTC v. Gorman*, No. 21 CIV. 870 (VM), 2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023), to suggest they had no duty to disclose. But "once the accused has spoken on the issue or topic," the accused "must tell the whole truth." *Id.*, at *13. Defendants had a duty to disclose.

3

        Sincerely,

        /s/ <u>Katherine S. Paulson</u>

        Katherine S. Paulson
        Nina Ruvinsky
        Elizabeth N. Pendleton
        Division of Enforcement
        Commodity Futures Trading Commission
        O: (312) 554-4559
        kpaulson@cftc.gov
        nruvinsky@cftc.gov
        ependleton@cftc.gov

        *Counsel for Plaintiff Commodity Futures Trading Commission*

cc:    All Counsel of Record via Automatic ECF Notification;
       Special Master Jose Linares via email