Anthony J. Staltari
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

March 8, 2024

Hon. Zahid N. Quraishi, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 4W
Trenton, NJ 08608

The Court has reviewed the parties' letters [173] and [175], and hereby WAIVES the pre-motion conference. Defendant shall file its Motion to Dismiss, limited to the arguments in its pre-motion letter, by no later than 04/12/2024, to be made returnable 05/06/2024. **IT IS SO ORDERED** this **18th** day of **March 2024**.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

Re: <u>CFTC v. Traders Global Group Inc., Case No. 3:23-cv-11808-ZNQ-TJB</u>

Dear Judge Quraishi:

We represent Defendants Traders Global Group Inc. (New Jersey), Traders Global Group Inc. (Canada) (together, "Traders Global" or "TGG"), and Murtuza Kazmi in this action. We respectfully submit this letter to request a pre-motion conference on Defendants' proposed motion to dismiss. Defendants acknowledge that the Court previously made certain findings at the preliminary injunction ("PI") stage, ECF 134, but Defendants' motion to dismiss would raise threshold questions about the CFTC's authority to bring this action, as well as the sufficiency of its pleadings, that were not before the Court at the PI stage.

**Background**

Defendants operated a simulated trading platform known as "My Forex Funds" ("MFF"). For a fee, MFF customers could access an electronic trading platform that offered simulated market conditions. Customers did not deposit funds with MFF. After paying registration fees, they traded only virtual capital visible in the MFF dashboard. No accounts were funded with customer money, and customers did not trade against external market participants with real funds. Customers could earn monetary rewards if their simulated trades were successful. More than 90% of customers traded in so-called "demo" accounts, which they knew were simulated. The gravamen of the CFTC's complaint is that Defendants failed to disclose to customers who traded so-called "live accounts" that they, too, were trading in a simulated environment, and not in the real market.

Defendants now seek to file a motion to dismiss raising threshold questions about the CFTC's authority to bring this action that were not squarely before the Court at the PI stage, where the Court made only preliminary findings under a relaxed "prima facie" standard. Defendants also intend to challenge the sufficiency of the CFTC's complaint on other grounds.

**Anticipated Motion to Dismiss**

I. <u>The Alleged Misconduct Falls Outside of the CFTC's Delegated Authority.</u>

This action, involving only simulated trades, exceeds the CFTC's authority to police retail forex and commodities markets. Proprietary trading ("prop") firms and trading simulators similar to MFF have existed for many years, and until now the CFTC has never brought an action like this against such a firm. That is for good reason: the Commodity Exchange Act is designed to protect retail investors when they risk their own capital in forex or commodities transactions—*real* transactions. This action, involving only simulated trades, exceeds the CFTC's authority to police retail forex and commodities markets. The CFTC's position that the agency has regulatory and enforcement jurisdiction over simulated trading is not supported by the law or agency precedent. Where there are no forex or commodities transactions, the CFTC does not have authority to act.

    A.   <u>Counts I and II fail because there were no retail forex or commodities transactions.</u>

The CFTC's authority extends only to fraud that occurs "in connection with" retail forex or commodities transactions. *See Tatum v. Legg Mason Wood Walker, Inc.*, 83 F.3d 121, 123 (5th Cir. 1996) (in the absence of a "sale of a commodity," plaintiffs "do not satisfy the 'in connection with' requirement"); *Crummere v. Smith Barney, Harris Upham & Co., Inc.*, 624 F. Supp. 751, 755 (S.D.N.Y. 1985) (where alleged misrepresentations were unrelated to securities transactions at issue, plaintiff did not satisfy the "in connection with" requirement). To satisfy the "in connection with" requirement, the alleged deceptions must relate to the purchase or sale of "*specific* securities" (or here, commodities). *Crummere*, 624 F. Supp. at 755 (emphasis added).

Counts I and II allege that Defendants engaged in fraud *in connection with* "retail forex transactions" and "retail commodities transactions." Compl. ¶¶ 102–128, ECF 1. But none of Defendants' customers were ever parties to specific retail forex or commodities transactions. No customers traded with their own money—or any *real* money, for that matter—on MFF's simulated trading platform. And less than 0.3% of customers' orders were even transmitted to a third-party liquidity provider (and even those trades were executed in TGG's own margin account at CDO Markets; customers were not parties to those transactions). The fact that customers paid fees for a chance at a potential payout from simulated trading does not make the simulated transactions "real." Because there was no real trading on the MFF platform, the CFTC cannot demonstrate that Defendants engaged in fraud "in connection with" retail forex or commodities transactions. Therefore, the CFTC has no authority to act here. Counts I and II must be dismissed.

    B.   <u>Counts III, IV, and V fail because TGG was not a counterparty to any transactions.</u>

Counts III and IV allege that Defendants acted as an unregistered retail foreign exchange dealer ("RFED") and/or "associated person" of an RFED. Compl. ¶¶ 129–150. An RFED is "any person that is, or that offers to be, the counterparty to a retail forex transaction." 17 C.F.R. § 5.1(h)(1). TGG was not a "counterparty" to simulated trades on the MFF platform, and TGG customers were not parties to trades executed via CDO Markets.

TGG did not actually make, or offer to make, any trades with customers. Rather, TGG gave customers the opportunity to engage in simulated trading on the MFF platform; a small fraction of customers' trades were mirrored in TGG's brokerage account, using TGG's own funds to trade against third parties. TGG customers did not have any money in the MFF platform that they could place on the opposite side of a (simulated) trade with any party. The CFTC's investigative

interview of Matthew Chichester confirms the model. The CFTC asked Mr. Chichester whether TGG "essentially has the opposite position from the trader who executed the trade?" Chichester Tr. 48:20–23, ECF 23-43. He responded, "I would say that would be true if it was the customer's own money that they had deposited." *Id*. at 48:20-49:2. But it was *not*: "ultimately that's not the client depositing that money." *Id*. at 70:2-12.[1] TGG was not a counterparty to any simulated trade.

Similarly, Count V's allegation that "Traders Global entered into and offered to enter into retail commodity transactions with customers" off-exchange, Compl. ¶ 154, fails because TGG did not enter into or offer to enter into any transactions with customers.

II.     The Complaint fails to state a claim for additional reasons.

The CFTC's complaint also fails to adequately plead the elements of its fraud claims. The elements of the fraud claims, which must be pleaded with particularity, are "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018); *see CFTC v. Gorman*, 587 F. Supp. 3d 24, 39 (S.D.N.Y. 2022) (heightened pleading standard under Rule 9(b)).

*First*, Counts I and II do not adequately allege materiality or, with respect to the alleged omissions, a duty to disclose. "A statement or omission is material if 'a reasonable investor would consider it important in deciding whether to make an investment.'" *CFTC v. WorldWideMarkets, Ltd.*, No. CV2120715KMLDW, 2022 WL 3535993, at *13 (D.N.J. Aug. 18, 2022) (cleaned up). Furthermore, an omission is actionable only if the defendant had a "duty to disclose," which may arise from a fiduciary relationship or the defendant's own prior speech on an issue. *See CFTC v. Gorman*, No. 21 CIV. 870 (VM), 2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023).

Here, customers were not "investing" on the MFF platform in the first place (as discussed above), but even apart from that fundamental defect, the complaint does not adequately allege materiality or a duty to disclose. For example, the CFTC claims that TGG made statements such as "your success is our business" on its website, *see, e.g.*, Compl. ¶ 36, but the CFTC does not specify where on the website those statements appear or who allegedly was deceived by them. Nor can it, having interviewed none of Defendants' customers. And the CFTC alleges that TGG failed to disclose that "commissions are assessed by Traders Global, not a third-party liquidity provider," Compl. ¶ 107(e), but given that the amount of the commission was fully disclosed, the CFTC does not adequately allege why the particular mechanism of assessment would be material to a customer. Nor does the CFTC allege any duty to disclose that information.

*Second*, Counts I and II do not adequately allege scienter. For example, after recounting various alleged misrepresentations and omissions, the complaint simply asserts in conclusory fashion, "Defendants did so with scienter—*i.e.*, knowingly or recklessly." Compl. ¶¶ 109, 123.

\*     \*     \*

---

[1] Mr. Chichester's interview transcript is integral to the complaint because CFTC clearly relied on it in drafting the complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (noting that "[i]n deciding a Rule 12(b)(6) motion," a court may consider "undisputedly authentic documents if the . . . claims are based upon these documents").

We thank the Court for its consideration and look forward to the opportunity to present these arguments in support of our motion to dismiss.

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/  Anthony J. Staltari*

Anthony Staltari

cc:   Hon. Jose L. Linares (Ret.) Special Master (via email)

All counsel of record via CM/ECF